# EXHIBIT A

# AGREEMENT BETWEEN
# BOSTON PUBLIC HEALTH COMMISSION, AND
# BOSTON EMERGENCY PHYSICIAN FOUNDATION, INC.

This Agreement is made as of July 1, 2010, (the "Effective Date"), by and between the Boston Public Health Commission ("BPHC"), a body politic and corporate and political subdivision of the Commonwealth of Massachusetts located at 1010 Massachusetts Avenue, Boston, Massachusetts 02118, and Boston Emergency Physician Foundation, Inc. ("Faculty Practice Plan" or "FPP"), a Massachusetts nonprofit entity located at 88 East Newton Street, Boston, Massachusetts 02118.

NOW THEREFORE, in consideration of the mutual covenants contained in this Agreement, the parties agree to the following terms and conditions.

I. OBLIGATIONS OF THE BPHC

A. The BPHC engages the FPP to make available, on a part-time basis, Emergency Medicine Physicians (sometimes referred to as "Physicians") to provide the services to the BPHC as described in Attachment A, Scope of Services (the "Services").

B. The BPHC agrees that the Physicians' professional freedom will be respected in the care of patients.

C. The BPHC agrees to provide the necessary supplies and equipment for the Physicians to provide effectively the Services.

D. [INTENTIONALLY OMITTED]

E. The BPHC shall create and maintain patient medical records in accordance with all applicable requirements of law. All medical records of patients seen by the Physicians are and shall continue to be the exclusive property of the BPHC. Subject to all applicable laws, the FPP and the Physicians shall have reasonable access to medical records in order to perform the Services or in order to defend against a claim, denial, investigation or legal or administrative inquiry or proceeding. The provisions of this paragraph shall survive termination of the Agreement.

F. The BPHC shall, at its sole expense, obtain and maintain in full force on behalf of all of its agents and employees (but not the Physicians) professional liability insurance providing coverage against liability arising from services rendered by such agents or employees in connection with or related to services rendered by the Physicians under this Agreement in limits of at least one million ($1,000,000) dollars per occurrence and three million ($3,000,000) dollars aggregate per year purchased from a commercial carrier with an A.M. Best rating of A or **provided by an actuarially sound self insured program.** Evidence of such insurance shall be provided to the FPP at the time of the signing of this Agreement and upon such other reasonable written request for same. Nothing contained in this paragraph shall be understood to imply that the BPHC shall provide insurance coverage to the Physicians. This provision of this paragraph shall survive termination of this Agreement.

II. OBLIGATIONS OF THE FPP

A. The FPP agrees that it shall make Emergency Medicine Physicians available to provide the Services in accordance with a schedule to be mutually agreed to by the BPHC and the FPP.

B. [INTENTIONALLY OMITTED]

C. The FPP agrees that the Physicians shall be responsible for maintaining all records, reports and information in accordance with all applicable local, state, and federal laws governing medical record documentation including, but not limited to, the medical records and billing policies and procedures of the BPHC.

D. The Physicians shall have sole discretion and shall exercise independent professional judgment in the care of patients and neither the FPP nor the BPHC shall exercise control or direction over the manner in which the Physicians practice medicine. The FPP agrees that the Physicians shall abide by all applicable rules, guidelines, policies, and procedures established by or applicable to the BPHC, including, but not limited to, the BPHC's written policies and procedures that relate to the federal False Claims Act and similar state laws and an employee's right to be protected as a whistleblower, as well as policies and procedures for detecting and preventing fraud, waste and abuse in state and federal health care programs.

E. The FPP agrees that the Physicians shall maintain professional liability insurance in limits of at least one million ($1,000,000) dollars per occurrence and three million ($3,000,000) dollars aggregate per year. In the event that the required insurance is maintained on a "claims made" basis, the coverage shall be maintained in full force and effect during the entire term of this Agreement and for a time at least seven (7) years following the later of the last performance of services under this Agreement or termination of this Agreement. If the Physicians discontinue insurance coverage for any reason, then the FPP shall obtain "tail" coverage for any event that may have occurred during the time that services were performed under this Agreement, to cover any and all remaining time on the 7-year requisite period. The Physician shall notify the BPHC if such insurance is discontinued for any reason. Evidence of such insurance shall be provided to the BPHC at the time of the signing of this Agreement and upon such other reasonable written request for same. This provision of this paragraph shall survive termination of this Agreement.

## III. QUALIFICATIONS AND DUTIES OF THE PHYSICIANS

At all times during the term of this Agreement, the Physicians shall be duly licensed to practice medicine in the Commonwealth of Massachusetts, and be board certified in the United States in the Physicians' specialties. In the event that the Physicians fail to meet or have a change of status with regard to any of these qualifications, the FPP shall provide prompt written notice to the BPHC.

## IV. COMPENSATION AND PAYMENT

As sole and exclusive compensation for the Services and duties to be rendered and performed by the FPP pursuant to this Agreement, the BPHC shall compensate the FPP on a monthly basis in accordance with Attachment B. The parties agree that the compensation paid reflects the fair market value of the Services in light of the time, energy, training, experience and skill required, the availability of persons with that skill, training, and experience, and general economic conditions. The fees have not taken into account the volume or value of any referrals or business generated between the parties, which are reimbursed under Medicare, Medicaid, or private health insurance.

## V. TERM AND TERMINATION

A. This Agreement shall be in effect for one (1) year, commencing on the Effective Date (the "Initial Term"). After the Initial Term, this Agreement shall automatically renew for one-year terms under the same terms that applied at the end of the immediately preceding term unless either party provides written notice in advance of the renewal date of new terms, which the parties shall mutually

2

agree upon, or of its desire not to renew the Agreement. Notwithstanding the foregoing, this Agreement may be terminated sooner as set forth below.

B. This Agreement may be terminated for any reason at any time by any party upon written notice to the other party at least sixty (60) days in advance of the effective termination date; provided, however, that in the event this Agreement is terminated under this provision prior to the expiration of the Initial Term (or prior to the expiration of any renewal term as to which the provisions of this Agreement relating to compensation were amended), the parties shall not enter into the same or substantially the same agreement during the annual term in which this Agreement was terminated.

C. The BPHC may terminate this Agreement with cause upon twenty (20) days prior written notice (which shall include the details of the nature and extent of the breach and specify the effective date of termination) if the FPP materially breaches this Agreement and does not cure the material breach to the satisfaction of the BPHC within the twenty (20) day period. The FPP may terminate this Agreement with cause upon twenty (20) days prior written notice (which shall include the details of the nature and extent of the breach and specify the effective date of termination) if the BPHC materially breaches this Agreement and does not cure the material breach to the satisfaction of the FPP within the twenty (20) day period.

D. This Agreement shall terminate automatically (i) under the circumstances described in Section VII (I); (ii) in the event that any party fails to maintain all necessary licenses and accreditations; (iii) in the event that any party fails to maintain the required insurance coverage; or (iv) in the event either the FPP or the BPHC ceases to conduct business.

E. Any party may terminate this Agreement immediately in the event of fraud or misrepresentation on the part of the other party.

F. Any party may terminate this Agreement immediately by giving written notice of termination to the other party if it is determined by that party in good faith that the welfare or safety of patients is likely to be jeopardized by continuing this Agreement.

G. As of the effective date of termination of this Agreement, neither party shall have any further rights or obligations under this Agreement except for rights and obligations accruing prior to the effective date of termination, or arising as a result of any breach of this Agreement. Any provision of this Agreement creating obligations beyond the terms of this Agreement shall survive the termination of this Agreement, regardless of the reason for the termination. Termination in accordance with the terms of this Agreement shall not affect any rights or obligations arising prior to the effective date of termination.

## VI. STATUS OF THE PARTIES

A. None of the provisions of this Agreement shall be interpreted to conflict with the parties' intent that the legal status between the BPHC and the FPP and between the BPHC and the Physician shall at all times be that of independent contractors. Except as may be otherwise expressly provided in this Agreement (i) the BPHC shall not have the right or authority to assume or create any obligation, expressed or implied, on behalf of the FPP or to bind the FPP in any way, and (ii) the FPP shall not have the right or authority to assume or create any obligation, expressed or implied, on behalf of the BPHC or to bind the BPHC in any way.

B. The FPP shall be solely responsible for complying with all laws and regulations concerning its employment of the Physicians, including, but not limited to, provisions concerning the payment of

worker's compensation wages and insurance and all relevant benefits and taxes arising from the compensation paid under this Agreement, including, but not limited to, the withholding of income taxes, social security, or any other withholding required by law. The FPP shall not have any claim under this Agreement against the BPHC for any employee benefits, including, but not limited to, medical expense benefits, vacation pay, paid sick leave, retirement benefits, worker's compensation, social security, health and unemployment insurance benefits.

C. In the event the Internal Revenue Service or any other governmental agency questions or challenges the independent contractor status of the Physicians with respect to the BPHC, or any of the BPHC's employees with respect to the FPP, all parties shall have the right to participate in any discussion or negotiation occurring with the agency or agencies, regardless of with whom or by whom the discussions or negotiations are initiated.

D. The provisions of this Section VI shall survive termination of this Agreement.

## VII. MISCELLANEOUS

A. **Confidentiality.** Each party shall maintain the confidentiality of information of patients treated pursuant to this Agreement to the extent required by law. It is understood that certain proprietary information and trade secrets relating to the operations of each party may be made available to the other parties. The parties agree that, except as necessary to effect the purposes of this Agreement, no party shall disclose to any other person or entity any confidential information concerning the other party without that party's prior consent, unless the information is in the public domain or unless disclosure is required by law. The parties agree to retain any confidential information in the strictest confidence, and, as applicable, to require their respective directors, officers, employees, consultants and other agents to do the same. The provisions of this paragraph shall survive termination of this Agreement.

B. **Books and Records.** Until the expiration of four years after the furnishing of services called for by this Agreement, or longer if legally required, each party shall make available, upon written request, to the United States Department of Health and Human Services ("HHS") and the United States Comptroller General, or their duly authorized representatives, this Agreement and all other books, documents and records as are necessary to verify the nature and extent of the costs incurred by any party in purchasing services under this Agreement, and if any party carries out the duties of this Agreement through a subcontract with a value or cost of $10,000 or more over a twelve month period with a related organization, the subcontract also shall contain a clause permitting access by HHS and the United States Comptroller General, or their duly authorized representatives, to books, documents and records to the related organization as necessary to verify the nature and extent of the costs. The provisions of this paragraph shall survive termination of this Agreement.

C. **Notices.** All notices, requests, and other communications to any party shall be in writing and shall be addressed to the receiving party's address set forth below or to such other address a party may designate by notice under this Agreement, and shall be either (i) delivered by hand, (ii) sent by recognized overnight courier, or (iii) sent by certified mail, return receipt requested, postage pre-paid, as follows:

4

| | |
|---|---|
| If to the BPHC: | Boston Public Health Commission<br>1010 Massachusetts Avenue<br>Boston, Massachusetts 02118<br>Attn: Barbara Ferrer, PhD, MPH, MEd, Executive Director |
| With a copy to: | Boston Public Health Commission<br>1010 Massachusetts Avenue<br>Boston, Massachusetts 02118<br>Attn: Nakisha L. Skinner, General Counsel |
| If to the FPP: | Boston Emergency Physician Foundation, Inc.<br>818 Harrison Avenue<br>Boston, Massachusetts 02118<br>Attn: Jonathan Olshaker, M.D., President |
| With a copy to: | The Office of the General Counsel<br>Boston Medical Center<br>One Boston Medical Center Place<br>Boston, Massachusetts 02118<br>Attn: General Counsel |

All notices, requests and other communications shall be deemed to have been given (i) if by hand, at the time of the delivery to the receiving party at the address of the party set forth above, (ii) if sent by overnight courier service, on the next business day following the day notice is delivered to the courier service, or (iii) if sent by certified mail, when delivered to recipient.

  D. Successors and Assigns. This Agreement shall inure to each of the parties, their parent and affiliated corporations and their respective successors and permitted assigns. Assignment by any party of any right or obligation under this Agreement is expressly prohibited without the express written consent of the other party, and any assignment, transfer, or delegation by any party without consent of the other party shall be null and void.

  E. Waiver. The failure by a party at any time to require performance of any provision of this Agreement shall not constitute a waiver of the provision and shall not affect the right of the party to require performance at a later time.

  F. Amendment. This Agreement supersedes all prior agreements, whether written or oral, between the parties and represents the entire agreement and understanding between the parties with respect to the subject matter of this Agreement. This Agreement may not be amended except by the written agreement of both parties.

  G. Governing Law. This Agreement shall be governed by and construed in accordance with laws of the Commonwealth of Massachusetts, without regard to conflict of law provisions.

  H. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

  I. Compliance. Each party agrees that it will comply with all laws and regulations and with all contracts, policies, procedures and requirements of all third-party payors (including, but not limited to, Medicare, Medicaid, or any other public or private health care program). Each party represents and warrants to the other party that it has not been excluded from participating in Medicare, Medicaid, or

5

other federal health care program. Each party agrees that it will notify the other party immediately in the event it is excluded from Medicare, Medicaid, or any other federal health care program during the term of this Agreement or in the event a party is under an investigation which could lead to exclusion. In addition, each party agrees to notify immediately the other party of the initiation of legal process or any reviews, audits, investigations, or actions initiated by the federal or state government, any governmental or quasi-governmental regulatory agency, any Medicare-contracted fiscal intermediary or carrier, any third party payor, or private billing company of that party's professional services or billing therefor. If any party is excluded from participating in Medicare, Medicaid, or any other federal health care program, this Agreement shall terminate automatically effective as of the date of exclusion.

J.   Further Compliance Provision. The parties represent, warrant, agree, and acknowledge that, to the best of their several knowledge and belief, no amount paid under this Agreement is intended to be, nor will it be construed to be, an inducement or payment for referral of patients to the FPP or to the BPHC, or their related entities. The parties acknowledge their mutual intent and agreement that the terms and provisions of this Agreement shall be interpreted, construed, and enforced as complying in all respects with the Medicare and Medicaid Anti-Kickback Statute, set forth in 42 U.S.C. 1320a-7b(b), and the so-called Stark law, set forth in 42 U.S.C. 1395nn, and with their corresponding regulations, if any. If the terms and provisions of this Agreement are finally determined by a court of competent jurisdiction or by the parties to be a violation of those provisions of federal law, the parties agree to the reasonable reformation of this Agreement to the extent necessary to cure the violation(s).

K.   Non-Exclusivity. The current arrangement is on a non-exclusive basis.

L.   Survival. In the event of termination of this Agreement for any reason, all obligations of the parties to each other shall cease with the exception of those that have accrued prior to the termination date and with the exception of those noted or which by their terms continue after the termination of the Agreement, as well as any other provisions that are necessary for the full enforcement of the rights of the parties, or the pursuit of any legal remedy or right arising out of a breach of this Agreement.

M.   Headings. The headings contained in this Agreement are for convenience of reference only and are not intended to define, limit, or describe the scope or intent of any provision.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

BOSTON PUBLIC HEALTH COMMISSION

By: _____
John M. Townsend   9-27-11
Director of Administration & Finance

Approved as to form (BPHC)

_____
Timothy J. Harrington, Esq.
Assistant General Counsel

BOSTON EMERGENCY PHYSICIAN
FOUNDATION, INC.

By: _____
Jonathan Olshaker, M.D.
President

6

## ATTACHMENT A

## SCOPE OF SERVICES

The FPP will make available, on a part-time basis, Emergency Medicine Physicians to:

1. Handle the responsibilities of the Medical Director of Boston EMS, as well as related administrative duties and any other duties assigned to her by the Executive Director of BPHC or by the Chief of Boston EMS. The BPHC and the FPP agree that Sophia Dyer, M.D., shall serve as the Medical Director so long as she is available and able to perform those duties in accordance with this Agreement.

2. Handle the responsibilities of Associate Medical Director of Boston EMS, as well as related administrative duties and any other duties assigned to her by the Executive Director of BPHC or by the Chief of Boston EMS. The BPHC and the FPP agree that Lori Harrington, M.D., shall serve as the Medical Director so long as she is available and able to perform those duties in accordance with this Agreement.

3. Provide emergency medicine services for Boston EMS, as well as related administrative duties and any other duties assigned to him by the Executive Director of BPHC or by the Chief of Boston EMS. The BPHC and the FPP agree that Ricky Kue, M.D., shall provide the emergency medicine services so long as he is available and able to perform those duties in accordance with this Agreement.

## ATTACHMENT B

## COMPENSATION

As sole and exclusive compensation for the Services, the BPHC shall compensate the FPP as follows:

For each year of this Agreement, the BPHC shall pay the FPP a total amount equal to $▮▮▮▮▮

The BPHC shall pay the FPP in monthly increments of one-twelfth (1/12th) of the total amount per month.

Payment shall commence on the effective date of this Agreement and shall be made in arrears monthly upon receipt of an invoice on or before the fifteenth (15th) day of each month following the month in which services were rendered.

Checks shall be made payable to the Boston Emergency Physician Foundation, Inc., and sent to:

Boston Emergency Physician Foundation, Inc.
Attn: Diane Barry
818 Harrison Avenue
Boston, Massachusetts 02118

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HOPE COLEMAN, individually and as the )
legal representative of the ESTATE OF )
TERRENCE J. COLEMAN, )
      Plaintiff, )
       )
v. )
       ) C.A. NO.: 1:18-cv-10646-MLW
       )
SOPHIA DYER, M.D., individually and in her )
official and supervisory capacities as the )
Medical Director for the Boston Police )
Department and Boston Emergency Medical )
Services, et. al. )
      Defendants. )

## AFFIDAVIT OF K. SOPHIA DYER, M.D.

I, K. Sophia Dyer, M.D., depose and state that the following is true to the best of my knowledge and understanding:

1. I am a physician licensed to practice medicine in the Commonwealth of Massachusetts.

2. I am board-certified in Emergency Medicine, with subspecialty certifications in Medical Toxicology and Emergency Medical Services.

3. I am an active Emergency Medicine physician practicing at Boston Medical Center, and an Associate Professor of Emergency Medicine at the Boston University School of Medicine. My employer is Boston Emergency Physician Foundation, Inc.

4. Pursuant to a contract between Boston Emergency Physician Foundation, Inc. and the Boston Public Health Commission ("BPHC"), I have served as the Medical Director of Boston Emergency Medical Services ("Boston EMS") since 2009. My professional responsibilities under that agreement are limited to duties prescribed by the BPHC and the Chief of Boston EMS.

5. My role as Medical Director of Boston EMS also affords me the title of Medical Director of the Boston Police Department ("BPD").

6. My involvement with the BPD has been very limited. Examples of my work with BPD include the following:

   a. I have provided medical advice to assist BPD with its Naloxone program, including consulting with BPD administrators regarding their use of Naloxone products; and

   b. I have consulted with BPD administrators regarding the use of automatic external defibrillators.

7. I occasionally provide input to BPD on medical issues as requested, but I have never been asked nor required to provide any input on the appropriate response by BPD to an EDP2 call.

8. I have never supervised or trained BPD officers as it pertains to responding to an EDP2 911 call, or otherwise.

Signed under the pains and penalties of perjury this 27 day of Feb , 2019.

K. Sophia Dyer, M.D.

# EXHIBIT C

## Advice of Insurance

**BOSTON MEDICAL CENTER INSURANCE COMPANY, LTD.**
**P. O. BOX 1159**
**GRAND CAYMAN KY1-1102**
**CAYMAN ISLANDS**

Coverage provided as respects the Insured named herein applies only while such Insured is acting within the scope of his professional responsibilities for the Named Insured (Boston Medical Center, The Faculty Practice Foundation, Inc. and Subsidiaries).

**INSURED:** Kathryn Sophia Dyer,, MD

**EFFECTIVE DATE:** June 30, 2017

**POLICY NUMBER:** BMCIC – PR – A – 17

**INSURANCE CARRIER:** Boston Medical Center Insurance Company, Ltd.

**POLICY PERIOD:** June 30, 2017 to June 30, 2018 at 12:01 a.m. EST

**LIMITS OF LIABILITY: Professional Liability**
   **$2,000,000.00 Each Medical Event**
   **$6,000,000.00 Aggregate**

This confirmation form is not an insurance policy. Complete terms and conditions of coverage are set forth in policy number **BMCIC – PR – A – 17.**

Date: 4/19/2017

Authorized by :

Seamus Tivnan
Authorized representative