Exhibit 9

**Amy Barsky**

---

| | |
|---|---|
| **From:** | Erika Reis <erika.reis@boston.gov> |
| **Sent:** | Monday, December 7, 2020 9:00 AM |
| **To:** | Sophia Hall |
| **Cc:** | Nicole Loughlin; Daniel Marx; William Fick; Amy Barsky; Raza, Batool; Alexander E. Terry |
| **Subject:** | Re: Coleman Matter - Internal Affairs Investigation production |

Hi Sophia,
As I mentioned on Friday, I believe that an IA was opened in this matter, as they typically are whenever there is a Rule 303.
We will get you the documents as soon as possible, assuming that the IA is closed. We do not turn over pending Internal Affairs investigations.
I will let you know one way or the other, hopefully in the next day or so.
Thanks.

Erika P. Reis
City of Boston Law Department
Senior Assistant Corporation Counsel
617-635-4031 (Phone)
617-635-3199 (Fax)

On Mon, Dec 7, 2020 at 7:58 AM Sophia Hall <shall@lawyersforcivilrights.org> wrote:
Hi Erika,

I want to follow up on the brief conversation that we had last Friday during Commissioner Gross' deposition. I need confirmation regarding whether there was an internal affairs investigation related to this incident for any BPD employees. If there was an investigation, I need the related files produced immediately. Although discovery has taken longer than one might expect due to the pandemic, this case has been ongoing for two and a half years and the City has never made reference to these documents, not in the discovery responses, privilege log, or initial disclosures. Feel free to call my cell phone number if you need to discuss. 216-323-0093. Thanks.

**Sophia L. Hall, Esq.**
Supervising Attorney

**Advancing Equality and Justice**
**Lawyers for Civil Rights**
61 Batterymarch Street, 5th Floor
Boston, MA 02110
**Tel** 617 984 0274
www.lawyersforcivilrights.org



FICK & MARX LLP

24 Federal Street, Fourth Floor, Boston, MA 02110

**Amy Barsky**
TEL: 857-321-8360
FAX: 857-321-8361
ABARSKY@FICKMARX.COM

February 12, 2021

**_BY EMAIL_**
Erika P. Reis, Esq.
Nicole M. O'Connor, Esq.
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

      **Re:**    ***Coleman v. City of Boston, et al.***, 18-cv-10646-MLW

Dear Counsel:

      In light of the deposition testimony of former Commissioners William Evans and William Gross, we write seeking discovery of additional information we believe to be responsive to our first set of discovery requests, served on Defendants City of Boston, William Evans, Garrett Boyle, and Kevin Finn on September 6, 2019, as set forth below.

I. DEFENDANT CITY OF BOSTON (COB)

<u>Requests for Production of Documents</u>

**<u>Request Number 6 to COB</u>**
**All documents relating to the matters described in the First Amended Complaint and/or any investigation thereof.**

A. Approximately a year and a half into the present litigation, and after multiple requests, the City on December 12, 2020 produced a memorandum written by Lt. Det. Adrian Troy of the "Internal Investigations Unit," dated April 30, 2018. COB 3621-3628. The memorandum concerns potential violations of BPD Rule 303 by Officer Garrett Boyle. With respect to any investigation by Internal Affairs, the "Internal Investigations Unit," or the Bureau of Professional Standards, please provide:

    i. All reports, documents, or communications regarding whether Officer Boyle violated any BPD rules or policies *other* than Rule 303. If there was no investigation into possible violations of any other rules, please so state in writing.

    ii. All reports, documents, or communications regarding possible violations of any BPD rules or policies by Officer Finn. If no internal affairs[1] investigation was conducted into whether Officer Finn violated any BPD rules or policies, please so state in writing.

    iii. All materials reviewed by the Internal Investigations Unit, Internal Affairs, or the Bureau of Professional Standards in connection with the events alleged in the First Amended Complaint ("FAC").

    iv. All documents generated by the Internal Investigations Unit, Internal Affairs, or the Bureau of Professional Standards in connection with the events in the FAC. This includes but is not limited to communications involving Lt. Det. Adrian Troy, who authored the memorandum, Deputy Supt. Jeffery Walcott, who "Noted" the contents, COB 3627, and Supt. Frank Mancini, who was listed as a BPD official to "Note[]" and Approve" the contents but did not sign the document.

    v. The Internal Affairs files of both Officers Boyle and Finn as well as any other Internal Affairs file(s) associated with the events in the FAC. If the memorandum discussed above constitutes the entirety of the files and documentation possessed by Internal Affairs, please so state in writing.

B. Please provide all documents, including but not limited to communications, regarding the return to duty of Officers Boyle and Finn after the events alleged in the FAC. Please include any documents regarding mental health, peer counseling, Employee Assistance, or other evaluation, treatment, or services that were offered or provided to Officers Boyle and Finn. *See* Evans Tr. at 278-286 (testifying, regarding the officers' return to duty, "if they came back, I would have signed"); *id*. at 285 ("I sign a lot of return to duties").

C. Please provide all documents, including communications, regarding the return of service weapons to Officers Boyle and Finn after the events alleged in the FAC.

## Request Number 8 to COB
**Any and all documents comprising or relating to communications relating to the matters described in the First Amended Complaint (FAC), including without limitation communications on personal devices such as text messages and emails.**

A. Please provide all statements drafted or published by the BPD's Media Relations Department concerning the events alleged in the FAC. *See* Evans Tr. at 238-39.

---

[1] By "internal affairs," Plaintiff refers to investigations into possible violations of BPD rules, policies or directives.

B. Please provide all or communications, including statements or interviews, between Officers Finn and Boyle and the Boston Police Patrolmen's Association ("Union") regarding the events alleged in the FAC.

C. Please provide all documents, instructions, or directives given by the BPD to Officers Boyle and Finn regarding the preservation of evidence and communications concerning the events alleged in the FAC, including data on their personal devices. If no documents, instructions, or directives were given by the BPD to preserve evidence and communications, please so state in writing.

D. Please provide an update regarding the third-party subpoenas issued to Verizon, AT&T, Instagram, and Facebook for relevant communications by Defendants Boyle and Finn.

**Request Number 11 to COB**
**All documents concerning or comprising, for the last 10 years, any and all regulations, policies, customs, practices, programs, and/or procedures concerning investigation of and response to officer-involved shootings, study or analysis of officer-involved shootings, and prevention of officer-involved shootings.**

A. Defendant Evans testified, at several points during his deposition, to rules governing FDIT investigations. Plaintiff is aware of BPD Rule 303. Please provide all other rules, policies, memoranda, directives, or guidance concerning FDIT investigations. If there are none, please so state in writing.

B. Please provide all policies or guidance regarding Internal Affairs investigations at BPD. If the BPD has no written policies or guidance regarding when and how to conduct Internal Affairs investigations, please so state in writing.

C. Please provide all policies or guidance regarding the sequestration of witnesses following an Officer-Involved Shooting (OIS). If the BPD has no written policies or guidance regarding the sequestration of witnesses, including officers, after an OIS, please so state in writing.

D. Please provide all policies or guidance regarding the interviewing of officer-witnesses after an OIS, including the timing of such interviews. Please include any Union-related documents that bear on the subject. If the BPD has no written policies or guidance regarding the interviewing of officer-witnesses after an OIS, please so state in writing.

E. Please provide all documents concerning the right of officers involved in shootings to consult with Union representatives before and/or during interviews. If no such document exists, please state so in writing.

F. Please provide all rules or policies regarding the preservation of evidence, including electronic evidence, after an OIS or in connection with any BPD investigation. If BPD has no such rules or policies regarding the preservation of evidence, please so state in writing.

G. Please provide all rules, policies, procedures, guidance, or practices regarding the clearance of officers to return to duty after involvement in shootings, including deadly shootings. *See* Evans Tr. at 278-285 (including stating, regarding the officers' return to duty, "if they came back, I would have signed"). If the BPD has no written policies regarding the clearance of officers to return to duty after involvement in shootings, please so state in writing.

H. Please provide all rules, policies, procedures, guidance, or practices regarding officers receiving their service weapons back after an OIS. Defendant Evans testified in general about a process by which officers may receive their weapons back after an OIS. If the BPD has no written policies regarding the return of service weapons to officers involved in deadly shootings, please so state in writing.

I. Please provide all rules, policies, memoranda, guidance, directives, or any other documents, other than BPD Rule 101, concerning the writing of BPD incident reports and/or Form 26s. Defendant Evans also testified to rules governing the writing of BPD incident reports. *See* Evans Tr. at 223-26 (stating, of incident reports, "[w]e usually just put a brief scenario, and all that other critical detain is put into a Form 26 that goes to Internal Affairs and the FDIT Team"); *id*. at 228 (suggesting, regarding the incident report in this case, that "if he's assigned in the FDIT team, that may be the way they do it").

## Request Number 13 to COB
**All documents concerning or comprising, for the last 10 years, any and all rules, regulations, policies, customs, practices, programs, and/or procedures concerning training and supervision of police officers and/or EMTs relating to interactions with disabled and/or emotionally disturbed persons, including without limitation training and supervision relating to reasonable accommodations and the Americans with Disabilities Act ("ADA").**

A. Please provide all materials related to the research, writing, publication or production of Melissa S. Morabito, Jenna Savage, Lauren Sneider & Kellie

Wallace (2018), "Police Response to People with Mental Illnesses in a Major U.S. City: The Boston Experience with the Co-Responder Model," *Victims & Offenders*, 13:8, 1093-1105, DOI: 10.1080/15564886.2018.1514340, an article regarding the BPD's use of the BEST program.

B. Commissioner Evans testified that he was "not sure" if BPD tracked statistics concerning BPD's interactions with EDPs, but that he was "sure if [he] wanted to, [he] could pull them up." Please provide these statistics and documents for the years 2011-2016. *See also* Interrogatory Numbers 17, 18, & 20 to COB.

Interrogatories

**Interrogatory Number 2 to COB**
**Identify each and every person who was a witness to, or has any knowledge or information concerning, any occurrence, event, fact, or circumstance relating to the matters described in the First Amended Complaint, specifying to which occurrence, event, fact, or circumstance each such person was a witness or has knowledge.**

A. Defendant Evans testified that when he arrived at 245 Shawmut Avenue, he was briefed by at least four "supervisors": two BPD supervisors and two BEMS supervisors. *See* Evans Tr. at 251. Please identify these four individuals and all others who briefed or spoke with Commissioner Evans at the scene.

B. Please identify the Legal Advisor whose signature appears on the Internal Affairs memorandum, *see* COB Bates 3628, by name and position.

**Interrogatory Number 4 to COB**
**Identify any and all documents, created by you or within your possession, custody or control, including without limitation notes and electronic communications, relating to the matters described in the First Amended Complaint.**

A. To the extent that Defendants Evans, Boyle, or Finn are aware of, but no longer possess, any responsive communication or document that may have been lost, deleted, or destroyed, please identify each missing communication or document and the timing and circumstances under which it was lost, deleted, or destroyed. *See* Instructions 13 and 14. *See also* Interrogatory Number 10 to Defendants Finn and Boyle (seeking "any and all statements by you… relating to the matters described in the First Amended Complaint"); *id*. Number 11 (seeking "any … documents, created by you or within your

possession, custody or control, including ...notes and electronic communications").

## Interrogatory Number 7 to COB
**Identify, for the last 10 years, all rules, regulations, policies, customs, practices, programs, and/or procedures concerning investigation of and response to officer-involved shootings, study or analysis of officer-involved shootings, and prevention of officer-involved shootings.**

A. Please identify all rules or policies governing FDIT investigations, other than BPD Rule 303. If BPD has no other rules or policies regarding FDIT investigations, please so state in writing.

B. Please identify all rules or policies governing Internal Affairs investigations. If the BPD has no written policies regarding when and how to conduct Internal Affairs investigations, please so state in writing.

C. Please identify all rules or policies regarding the clearance of officers to return to duty after involvement in deadly shootings. Please also identify any services offered or required, including with regard to officers' mental and physical fitness to return to duty after involvement in shootings. *See* Evans. Tr. at 282 (referring to the Employee Assistance Program and department psychologists). If the BPD has no services or policies regarding the clearance of officers to return to duty after an OIS, please so state in writing.

D. Please identify all rules, policies, and procedures regarding the return of officers' service weapons after an OIS. If the BPD has no policies regarding officers re-gaining their weapons after an OIS, please so state in writing.

E. Please identify all rules, policies, or procedures regarding the preservation of evidence, including electronic evidence, following an OIS. If the BPD has no rules or policies regarding the preservation of evidence following an OIS, please so state in writing.

F. Please identify all rules, policies, procedures, guidance, or practices regarding the sequestration of witnesses, including officer-witnesses, after an OIS. *See, e.g.*, Evans Tr. at 257 ("I'm sure there is a policy. I don't think it's in writing, but I know the FDIT Team and everyone tries to keep, in any shooting, all the different parties separate"). If the BPD has no policies regarding sequestration or communication between witnesses after an OIS, please so state in writing.

G. Please identify all rules, policies, procedures, guidance, or practices regarding the timetable for interviewing officers involved in shootings, including any

Union-related rights, policies or contracts. *See, e.g.* Evans Tr. at 307 ("the protocol is sometimes we will get them some medical care, and then when events settle down, they will interview them as soon as we can"). If the BPD has no policies governing the interviewing of officer-witnesses after an OIS, please so state in writing.

H. Please identify all policies that give officers the right to consult with Union representatives after an OIS and/or to have Union representation during interviews.

I. Please identify all policies governing the writing of BPD incident reports and Form 26s.

J. Please identify all rules, procedures or policies regarding the rendering of first aid or emergency medical assistance to civilians injured during OISs.

## II. DEFENDANT WILLIAM EVANS

<u>Requests for Production of Documents</u>

**<u>Request Number 7 to Defendant Evans</u>**
**All … communications relating to the matters described in the First Amended Complaint….**

A. Defendant Evans testified that he used his BPD-issued cell phone to communicate regarding the events at issue in the FAC. Please produce all written communications from that phone, including text messages, chats, and emails, from the date of the shooting until the end of Evans' tenure at BPD. Plaintiff requests all voicemails regarding the events in question, from the date of the shooting until the end of Evans' tenure. And she requests call logs from the phone for the 30-day periods following each of the following events: (1) the October 30, 2016 shooting; (2) the issuance of District Attorney Conley's report on August 31, 2017; and (3) the filing of the initial Complaint in this case on April 4, 2018. *See also* Request for Production Number 7 to William Evans (requesting communications regarding the matters in the FAC).

B. In his deposition testimony, Defendant Evans referred multiple times to "ongoing discussions" between BPD and BEMS regarding the reluctance of EMS personnel to respond to EDP 911 calls due to safety concerns. Please produce all documents, communications and records related to such conversations, including but not limited to discussions in which Defendant Evans personally participated.

C. Defendant Evans testified that he met with the director of the Massachusetts Department of Mental Health (DMH) regarding the policing of individuals with mental health conditions. Please produce all documents, including but not limited to agendas, presentations, notes, and calendar entries, related to any and all such meetings, as well as communications between Defendant Evans (or his designees) and the DMH regarding BPD's work with EDPs.

**Request Number 8 to Defendant Evans**
**All documents, for the last ten years, concerning or comprising training in which you participated related to interactions with disabled persons, interactions with emotionally disturbed persons, compliance with the Americans with Disabilities Act ("ADA"), the use of deadly force, and de-escalation.**

A. Defendant Evans testified that he attended multiple conferences and events each year at which he learned about (or taught about) issues regarding police response to EDPs, including the Major City Chiefs Conference and one or more programs organized by the Police Executive Research Foundation. Please provide any and all documents regarding each conference that Evans attended for from 2006 through 2016, including but not limited to expense reports, travel receipts, conference agendas and materials, and documents regarding any remarks given or sessions taught by Commissioner Evans.

B. Defendant Evans indicated that he worked with the Ruderman Foundation on issues related to policing and mental health or EDPs. Please provide all documents related to Evans' work with the Ruderman Foundation.

C. Please provide the Massachusetts Municipal Police Training Committee's guidelines, and any trainings that the Committee provided to BPD, regarding EDPs, mental illness, the ADA, or de-escalation and use of force. *See* Evans Tr. at 19 (testifying that the BPD "went well beyond what the Mass. Municipal Training Committee had called for [with regard to addressing people with mental health issues]"); *id*. at 36 (same with regard to ADA compliance); *id*. at 51 (referencing a training mandated by the Mass. Municipal Training Committee regarding persons with mental health issues); *id*. at 55 (same); *id*. at 64 (referencing E-Learning training by Mass. Municipal regarding same).

Interrogatories

**Interrogatory Number 9 to Defendant Evans**
**Identify, for the last 10 years, all training in which you have participated relating to interactions with disabled persons, interactions with**

emotionally disturbed persons, the use of force, including deadly force, de-escalation, and/or compliance with the Americans with Disabilities Act. In your response, please identify the date(s) of training, the subject matter(s) of training, and the content covered.

    A.  Please identify all conferences, events, or trainings attended by Commissioner Evans from 2006 through 2016 which addressed issues concerning the use of force and/or mental health, including but not limited to those referenced in his testimony:  the Major City Chiefs Conference, programs organized by the Police Executive Research Foundation, or programs organized by the Ruderman Foundation.

## III. DEFENDANTS BOYLE AND FINN

Requests for Production of Documents

**Request Number 6 to Defendants Boyle and Finn**
**All documents concerning any injuries sustained by you in relation to the matters described in the First Amended Complaint.**

    A.  Defendant Evans testified that Officers Boyle and Finn would have received counseling or mental health consultation or treatment following the events alleged in the FAC, whether by psychologists associated with or outside the BPD. Please provide all records concerning any physical or mental health treatment offered to or received by Officers Boyle and/or Finn in connection with the events in the FAC.

Interrogatories

**Interrogatory Number 10 to Defendants Boyle and Finn**
**Identify any and all statements by you, whether oral or in writing, relating to the matters described in the First Amended Complaint, identifying as to each statement the date, time, location, and witnesses to the statement.**

    A.  Please identify all medical, mental health, or counseling treatment providers you consulted with or received services from, in connection with the events alleged in the FAC, including peer counselors or other support services, including but not limited to providers employed by or associated with the BPD.

        Thank you for your attention in this matter and please let me know if you have any questions.

February 12, 2021
Page 10 of 10

Sincerely,

*/s/ Amy Barsky*

cc:    Sophia Hall, Esq.
       William Fick, Esq.
       Daniel Marx, Esq.
       Oren Sellstrom, Esq.
       Batool Raza, Esq.
       Timothy Harrington
       Alexander Terry, Esq.
       Michael B. Barkley, Esq.



**Amy Barsky**
TEL: 857-321-8360
FAX: 857-321-8361
ABARSKY@FICKMARX.COM

April 22, 2021

<u>**BY EMAIL**</u>
Erika P. Reis, Esq.
Nicole M. O'Connor, Esq.
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

**Re:**   ***Coleman v. City of Boston, et al.***, 18-cv-10646-MLW

Dear Counsel:

In light of the recent depositions of Defendants Finn and Boyle, EMT MacKinnon, and Thomas Pratt, we write to request the following documents which we believe to be outstanding.

<u>Request for Production Number 6 to COB</u>
**All documents relating to the matters described in the First Amended Complaint (FAC) and/or any investigation thereof.**
*Please provide*:

    A. All "Form 26" reports by Boyle and Finn (these were not included in the City's disclosure of Form 26s, *see* COB -701-86, or in the City's 3d Supplemental Response, *see* COB 3618-20).

    B. All evidence preservation notices provided to Boyle and Finn. *See* KF Tr. at 25-26; GB Tr. at 117.

    C. All documents regarding the firearms that Boyle and Finn testified they received from the Boston Police Department, at the Boston Police Department Firearms Range ("the range"), at the encouragement of Pat Rose, following the October 30, 2016 shooting. *See* TP Tr. at 59 ("someone would need an order before a weapon was handed out. They just wouldn't hand out a firearm to somebody").

    D. All documents regarding Finn and Boyle's licenses to carry firearms and applications seeking such licenses.

    E. All documents, including communications, involving Pat Rose and/or Thomas Antonino regarding the events described in the FAC or otherwise reflecting their involvement in those events.

Request for Production Number 8 to COB

**Any and all documents comprising or relating to communications relating to the matters described in the First Amended Complaint, including without limitation communications on personal devices such as text messages and emails.**

*Please provide:*

    A. Text messages and other communications that are available from any cloud backup of any personal cellphones or devices that Finn and Boyle used and that relate to the events described in the FAC or any investigation thereof.

    B. Unredacted (or less redacted) copies of the call logs for Boyle and Finn (received by the City in response to its subpoenas) which permit identification of their calls with other BPD or BPPA personnel. We are available to meet and confer regarding steps that the City may believe are warranted to protect the privacy of personal telephone numbers.

Request for Production Number 11 to COB

**All documents concerning or comprising, for the last 10 years, any and all regulations, policies, customs, practices, programs, and/or procedures concerning investigation of and response to officer-involved shootings, study or analysis of officer-involved shootings, and prevention of officer-involved shootings.**

*Please provide:*

    A. All training materials, attendance records, and tests, regarding FDIT investigations and how to conduct such investigations. *See* TP Tr. at 25 ("we all went through…. I believe it's160 hours of comprehensive curriculum in investigations"; "we also had a 40-hour in-service training at the police academy with the FDIT team"); *id.* at 26 ("after the 160 hours…. [t]here was another 40 hours for … people who were going to be put on the FDIT team"); *id.* at 29-31 (referencing a training at the "Haige school").

Interrogatory Number 2 to COB

**Identify each and every person who was a witness to, or has any knowledge or information concerning, any occurrence, event, fact, or circumstance relating to the matters described in the First Amended Complaint, specifying to which occurrence, event, fact, or circumstance each such person was a witness or has knowledge.**

*Please provide:*

    A. Please identify who from the BPD interviewed EMTs MacKinnon and/or Mentele at the hospital on the night of October 30, 2016, and produce all documents reflecting that interview (or interviews). *See* MacKinnon Tr. at

April 22, 2021
Page 3 of 3

213 ("I remember speaking with a Boston police detective in the ER….
[T]hey just asked me some basic details about what had happened").

Please let me know if you have any questions.

Sincerely,

*/s/ Amy Barsky*

cc:   Sophia Hall, Esq.
      William Fick, Esq.
      Daniel Marx, Esq.
      Oren Sellstrom, Esq.
      Batool Raza, Esq.
      Timothy Harrington
      Alexander Terry, Esq.
      Michael B. Barkley, Esq.



# FICK & MARX LLP

24 Federal Street, Fourth Floor, Boston, MA 02110

**Amy Barsky**
TEL: 857-321-8360
FAX: 857-321-8361
ABARSKY@FICKMARX.COM

July 14, 2021

**<u>BY EMAIL</u>**
Erika P. Reis, Esq.
Nicole M. O'Connor, Esq.
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

> **Re:** ***Coleman v. City of Boston, et al.*, 18-cv-10646-MLW**

Dear Counsel:

I write in response to your request for clarification of some of the topics we provided for the City's upcoming deposition under Fed. R. of Civ. P. 30(b)(6). Those topics are contained in Attachment A to the deposition notice, served on March 30, 2021.

It is my understanding that you do not need further clarification on topics 1 (the shooting of Terrence Coleman on October 30, 2016), 7 (FDIT investigations), or 8 (Internal Affairs (IA) investigations). To the extent the City plans to designate Sergeant Pratt to address any of these topics, please note that when he previously appeared as a fact witness and also a Rule 30(b)(6) witness, he was unprepared or unable to answer a number of questions, including questions regarding:

- BPD rules, policies, directives, audits, "special orders," or other guidance concerning the investigation of officer-involved shootings (OIS), *see, e.g.,* Pratt Tr. at 45 ("there have been directives and special audits"), *id.* at 53;

- Any review that has been done of BPD's Rule 303, FDIT procedures, and/or internal investigative procedures, and any comparison to procedures used by other departments, *see id.* at 46 ("I don't know the exact date"), *id.* at 137-40;

- Whether BPD officers who discharge firearms are supposed to be armed while the investigation into the discharge is pending, *see id.* 90 ("[that's] [n]ot my decision");

- Whether the FDIT investigation in this case considered potential violations of BPD rules, *contrast, e.g., id.* at 85 ("[the goal of a FDIT investigation is to

make sure that] the officer involved in the shooting … did not break any Boston police rules or regulations or procedures"); *id*. at 112 (stating, regarding the purpose of FDIT investigation, "Has there been a rule or reg violation[?]"); *id*. at 117 ("[i]f there was a rule or reg violation, my five-day report would have something the th[at] effect"); *with id*. ("I would not do the rule and reg violation. I may identify the rule and reg violation but I wouldn't investigate the rule and reg violation"); *id*. at 123 ("[the] FDIT team … investigate[s] the discharge of a Boston police officer's firearm … for the Suffolk County [DA's] office"); *id*. at 125 ("I'm working for the district attorney at that point");

- The collection of evidence in this case, *see id*. at 180-81 ("I wasn't there. I can't answer for the supervisor that was on scene collecting evidence. I can't answer that question"); *see generally id*. at 179-84;

- The guarding of the knife at 245 Shawmut Ave. after the shooting, *see id*. at 171-73;

- The procurement and execution of the search warrant in this case, *see id*. at 198-201;

- The issuance of firearms to the officers following the shooting, *see id*. at 56-60 ("I wouldn't make that decision. That's way above my pay grade"); and

- The Internal Affairs investigation conducted in this case, *see id*. at 278 ("I don't know what Internal Affairs [does]"); *id*. at 279 ("I have not seen this document before. This is the first time I'm laying my eyes on it. So I'm just trying to read and take everything in off the [IA] report").

Although Sergeant Pratt was unable to answer these questions, his testimony makes clear that others within BPD possession responsive information, and Hope Coleman is entitled to discovery that evidence. *See, e.g., id*. at 42-43 (suggesting that Captain Greeley, Detective Larkin, or the bureau chief of the Bureau of Investigative Services would be able to answer questions about directives governing FDIT investigations); *id*. at 137-140 (suggesting the "bureau chief" and the "homicide commander" would be able to answer questions about changes to and evaluation of BPD investigation procedures). We request that you produce an adequately prepared witness who can answer questions on behalf of the City, as a defendant in this case, about the shooting of Terrance Coleman and the BPD's response to and investigations of that shooting.

With regard to topic 9 (the BPD's response to officer-involved shootings, including officers' return to work), we seek information about the BPD's handling of the officers' return to work after the shooting in this case, including the leave status

of the officers and the issuance of firearms to the officers. With regard to topic 10 (the involvement of the Boston Police Patrolmen's Association), we seek information regarding the role of Union officials in this case, the City's communications with Union officials, and the involvement of Union officials in the procurement of firearms for the officers following the shooting. Although Ms. Coleman has issued a subpoena to the Union and obtained some information from it, that fact in no way absolves the City, as a defendant, of its independent obligation to provide discovery.

With regard to topic 2 (training), we seek information regarding all training Defendants Kevin Finn and Garrett Boyle received in the areas of de-escalation, use of force, mental health, and EDPs, including the materials covered, the development of those materials, attendance, and testing. Although the City has produced information about training in generally, Ms. Coleman is entitled to know what specific training, if any, Officers Finn and Boyle received.

With regard to topic 3 (the Americans with Disabilities Act (ADA)), we seek information regarding what steps the BPD took to comply with the ADA and what written rules, policies, or guidance the BPD had in place to ensure compliance. If the City is willing to stipulate that BPD took no steps and has no relevant materials, we would accept a verified, written response so stating, in lieu of a live witness, and are available to discuss this option at your convenience.

In topic 5 (BPD's coordination with Boston EMS (BEMS)), we seek information regarding the policy decisions of the City about coordination with BEMS, including "ongoing discussions" regarding the care of EDPs, *see* Evans Tr. at 21-23, "ongoing attempts to coordinate with Boston EMS [regarding BEST program]," *id.* at 130-134 & Ex. 5 at 2 (COB 3014), and the use of the Medical Director. If BPD did not coordinate with BEMS, we would accept a verified, written response so stating, in lieu of a live witness, and are available to discuss this option at your convenience.

With regard to topic 12 (organizational structure), we want to understand the organizational structure of the BPD. We would accept an organization chart in lieu of a live witness (we have obtained the partial charts on the Boston police website).

With regard to topic 13 (BPD's Office of Research and Development (ORD)), we agree to limit this topic to ORD's work related to EDPs and the BEST program, including the inception, funding, and development of the program, the involvement of Jenna Savage, and the production of the article Melissa S. Morabito, Jenna Savage, Lauren Sneider & Kellie Wallace, "Police Response to People with Mental Illnesses in a Major U.S. City: The Boston Experience with the Co-Responder Model," 13:8 Victims & Offenders 1093-1105 (2018).

July 14, 2021
Page 4 of 4

   Lastly, with regard to topic 4 (911 dispatch), we agree to limit this to dispatch issues related to EDPs and would like to put this topic last on the priority list.

   We are agreeable to conducting the deposition(s) after your trial in early August, 2021, with the understanding that you would join a request for more time if one is needed.

   Please let me know if you have any questions.

     Sincerely,

     */s/ Amy Barsky*

cc: Sophia Hall, Esq.
  William Fick, Esq.
  Daniel Marx, Esq.
  Oren Sellstrom, Esq.



# FICK & MARX LLP

24 Federal Street, Fourth Floor, Boston, MA 02110

**Amy Barsky**
TEL: 857-321-8360
FAX: 857-321-8361
ABARSKY@FICKMARX.COM

July 14, 2021

**_BY EMAIL_**
Erika P. Reis, Esq.
Nicole M. O'Connor, Esq.
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

Re:    _**Coleman v. City of Boston, et al.**_, 18-cv-10646-MLW

Dear Counsel:

I write in response to your request for clarification of some of the topics we provided for the City's upcoming deposition under Fed. R. of Civ. P. 30(b)(6). Those topics are contained in Attachment A to the deposition notice, served on March 30, 2021.

It is my understanding that you do not need further clarification on topics 1 (the shooting of Terrence Coleman on October 30, 2016), 7 (FDIT investigations), or 8 (Internal Affairs (IA) investigations). To the extent the City plans to designate Sergeant Pratt to address any of these topics, please note that when he previously appeared as a fact witness and also a Rule 30(b)(6) witness, he was unprepared or unable to answer a number of questions, including questions regarding:

- BPD rules, policies, directives, audits, "special orders," or other guidance concerning the investigation of officer-involved shootings (OIS), _see, e.g.,_ Pratt Tr. at 45 ("there have been directives and special audits"), _id._ at 53;

- Any review that has been done of BPD's Rule 303, FDIT procedures, and/or internal investigative procedures, and any comparison to procedures used by other departments, _see id._ at 46 ("I don't know the exact date"), _id._ at 137-40;

- Whether BPD officers who discharge firearms are supposed to be armed while the investigation into the discharge is pending, _see id._ 90 ("[that's] [n]ot my decision");

- Whether the FDIT investigation in this case considered potential violations of BPD rules, _contrast, e.g., id._ at 85 ("[the goal of a FDIT investigation is to

make sure that] the officer involved in the shooting … did not break any Boston police rules or regulations or procedures"); *id*. at 112 (stating, regarding the purpose of FDIT investigation, "Has there been a rule or reg violation[?]"); *id*. at 117 ("[i]f there was a rule or reg violation, my five-day report would have something the th[at] effect"); *with id*. ("I would not do the rule and reg violation. I may identify the rule and reg violation but I wouldn't investigate the rule and reg violation"); *id*. at 123 ("[the] FDIT team … investigate[s] the discharge of a Boston police officer's firearm … for the Suffolk County [DA's] office"); *id*. at 125 ("I'm working for the district attorney at that point");

- The collection of evidence in this case, *see id*. at 180-81 ("I wasn't there. I can't answer for the supervisor that was on scene collecting evidence. I can't answer that question"); *see generally id*. at 179-84;

- The guarding of the knife at 245 Shawmut Ave. after the shooting, *see id*. at 171-73;

- The procurement and execution of the search warrant in this case, *see id*. at 198-201;

- The issuance of firearms to the officers following the shooting, *see id*. at 56-60 ("I wouldn't make that decision. That's way above my pay grade"); and

- The Internal Affairs investigation conducted in this case, *see id*. at 278 ("I don't know what Internal Affairs [does]"); *id*. at 279 ("I have not seen this document before. This is the first time I'm laying my eyes on it. So I'm just trying to read and take everything in off the [IA] report").

Although Sergeant Pratt was unable to answer these questions, his testimony makes clear that others within BPD possession responsive information, and Hope Coleman is entitled to discovery that evidence. *See, e.g., id*. at 42-43 (suggesting that Captain Greeley, Detective Larkin, or the bureau chief of the Bureau of Investigative Services would be able to answer questions about directives governing FDIT investigations); *id*. at 137-140 (suggesting the "bureau chief" and the "homicide commander" would be able to answer questions about changes to and evaluation of BPD investigation procedures). We request that you produce an adequately prepared witness who can answer questions on behalf of the City, as a defendant in this case, about the shooting of Terrance Coleman and the BPD's response to and investigations of that shooting.

With regard to topic 9 (the BPD's response to officer-involved shootings, including officers' return to work), we seek information about the BPD's handling of the officers' return to work after the shooting in this case, including the leave status

of the officers and the issuance of firearms to the officers. With regard to topic 10 (the involvement of the Boston Police Patrolmen's Association), we seek information regarding the role of Union officials in this case, the City's communications with Union officials, and the involvement of Union officials in the procurement of firearms for the officers following the shooting. Although Ms. Coleman has issued a subpoena to the Union and obtained some information from it, that fact in no way absolves the City, as a defendant, of its independent obligation to provide discovery.

With regard to topic 2 (training), we seek information regarding all training Defendants Kevin Finn and Garrett Boyle received in the areas of de-escalation, use of force, mental health, and EDPs, including the materials covered, the development of those materials, attendance, and testing. Although the City has produced information about training in generally, Ms. Coleman is entitled to know what specific training, if any, Officers Finn and Boyle received.

With regard to topic 3 (the Americans with Disabilities Act (ADA)), we seek information regarding what steps the BPD took to comply with the ADA and what written rules, policies, or guidance the BPD had in place to ensure compliance. If the City is willing to stipulate that BPD took no steps and has no relevant materials, we would accept a verified, written response so stating, in lieu of a live witness, and are available to discuss this option at your convenience.

In topic 5 (BPD's coordination with Boston EMS (BEMS)), we seek information regarding the policy decisions of the City about coordination with BEMS, including "ongoing discussions" regarding the care of EDPs, *see* Evans Tr. at 21-23, "ongoing attempts to coordinate with Boston EMS [regarding BEST program]," *id.* at 130-134 & Ex. 5 at 2 (COB 3014), and the use of the Medical Director. If BPD did not coordinate with BEMS, we would accept a verified, written response so stating, in lieu of a live witness, and are available to discuss this option at your convenience.

With regard to topic 12 (organizational structure), we want to understand the organizational structure of the BPD. We would accept an organization chart in lieu of a live witness (we have obtained the partial charts on the Boston police website).

With regard to topic 13 (BPD's Office of Research and Development (ORD)), we agree to limit this topic to ORD's work related to EDPs and the BEST program, including the inception, funding, and development of the program, the involvement of Jenna Savage, and the production of the article Melissa S. Morabito, Jenna Savage, Lauren Sneider & Kellie Wallace, "Police Response to People with Mental Illnesses in a Major U.S. City: The Boston Experience with the Co-Responder Model," 13:8 Victims & Offenders 1093-1105 (2018).

July 14, 2021
Page 4 of 4

Lastly, with regard to topic 4 (911 dispatch), we agree to limit this to dispatch issues related to EDPs and would like to put this topic last on the priority list.

We are agreeable to conducting the deposition(s) after your trial in early August, 2021, with the understanding that you would join a request for more time if one is needed.

Please let me know if you have any questions.

Sincerely,

*/s/ Amy Barsky*

cc:  Sophia Hall, Esq.
     William Fick, Esq.
     Daniel Marx, Esq.
     Oren Sellstrom, Esq.



*City of Boston*
*Mayor Kim Janey*
*Law*

August 18, 2021

***VIA EMAIL***
William W. Fick, Esq.
Daniel N. Marx, Esq.
Amy Barsky, Esq.
Fick & Marx, LLP
100 Franklin Street – 7th Floor
Boston, MA  02110

Oren M. Sellstrom, Esq.
Sophia L. Hall, Esq.
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA  02110

Re:   Hope Coleman (individually and as the legal representative of the Estate of Terrence J. Coleman) v. City of Boston, Boston Public Health Commission, William Evans, Sophia Dyer, M.D., Garrett Boyle, and Kevin Finn
      **USDC Docket No. 18-cv-10646**

Dear Amy:

Please let this correspondence serve as a response to your letter dated April 22, 2021 in which you sought information you believed to be responsive to your first set of discovery requests. While some of the information you requested in your letter is responsive to your first set of discovery requests (and, accordingly, has been or will be produced by way of supplemental responses served under separate cover), some of the information is not responsive to your first set of discovery requests.

A detailed response, indicating which items we will produce and which items we believe are not responsive to your requests, is set forth below.

Request for Production Number 6 to COB
**All documents relating to the matters described in the First Amended Complaint (FAC) and/or any investigation thereof.**

A. These reports will be produced if they exist.
B. See COB3673-3675 produced with the City's Fifth Supplemental Documents Responses.
C. These documents are not responsive to Request No. 6 and, in any event, we would object to producing them.
D. These documents are not responsive to Request No. 6 and, in any event, we would object to producing them.



*City of Boston*
*Mayor Kim Janey*
*Law*

   E.  See COB 2783 produced with Detective Finn's Supplemental Document Responses. Officer Boyle and Detective Finn's emails are being reviewed to determine if there are any communications with Pat Rose.  If there are, they will be produced.

<u>Request for Production Number 8 to COB</u>
**Any and all documents comprising or relating to communications relating to the matters described in the First Amended Complaint, including without limitation communications or personal devices such as text messages and emails.**

   A.  All responsive records in the City's possession, custody, or control have been produced.
   B.  The only telephone numbers that have been redacted from the subpoena responses are those of Officer Boyle and Detective Finn.  Accordingly, any potential phone calls by or between Officer Boyle and/or Detective Finn and the BPD or BPPA would be apparent from the records.

<u>Request for Production Number 11 to COB</u>
**All documents concerning or comprising, for the last 10 years, any and all regulations, policies, customs, practices, programs, and/or procedures concerning investigation or and response to officer-involved shootings, study or analysis of officer-involved shootings, and prevention of officer-involved shootings.**

   A.  These documents are not responsive to Request No. 11 and, in any event, we would object to producing them.

<u>Interrogatory Number 2 to COB</u>
**Identify each and every person who was a witness to, or has any knowledge or information concerning, any occurrence, event, fact, or circumstance relating to matters described in the First Amended Complaint, specifying to which occurrence, event, fact, or circumstance each such person was a witness or has knowledge.**

   A.  Sgt. Det. John Broderick

Please feel free to contact me with any questions, comments, or concerns.

Very truly yours,

*Nicole M. O'Connor*

Nicole M. O'Connor
Senior Assistant Corporation Counsel
617-635-4039



**FICK & MARX** LLP

24 Federal Street, Fourth Floor, Boston, MA 02110

**Amy Barsky**
TEL: 857-321-8360
FAX: 857-321-8361
ABARSKY@FICKMARX.COM

September 27, 2021

**_BY EMAIL_**
Erika P. Reis, Esq.
Nicole M. O'Connor, Esq.
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

Re:   ***Coleman v. City of Boston, et al.***, 18-cv-10646-MLW

Dear Counsel:

We write to express our serious concerns regarding the lack of preparation and knowledge displayed by the witnesses whom the City has designated thus far to testify on its behalf, pursuant to Fed. R. Civ. P. 30(b)(6). We request that the City designate substitute witnesses who are able to answer our questions.

It may be helpful to note the history of our correspondence. We noticed the City's deposition nearly six months ago, on March 30, 2021, listing 13 topics on which we wished to ask questions. On June 11, Attorney Reis reached out, via email, seeking clarification of the topics. On behalf of the City, she asserted that Topics 3, 5, 8, 12, and 13 were "too broad." In addition, the City "objected" to Topics 9 and 10 and stated, with regard to Topics 1 and 7, that Sgt. Pratt "covered these topics" and no other witness "would have much more to add." June 11 email from E. Reis to A. Barsky. Attorney Reis and I then had several phone calls to discuss the topics, after which we sent the City a letter, dated July 14, responding to the June 11 request for clarification.

With regard to Topics 1 and 7, our letter listed numerous ways in which Sgt. Pratt was unprepared or unable to answer questions about the shooting of Terrence Coleman, the investigation into the shooting, and FDIT investigations generally. *See* July 14 Letter at 1-2. In email correspondence from Attorney O'Connor, during the days leading up to the September 1 continuation of the City's Rule 30(b)(6) deposition, the City stated that Topic 1 "has already been covered by Sgt. Det. Pratt," and that "to the extent you have outstanding questions regarding FDIT procedures in general, those questions would be best answered by Sgt. Det. Sullivan." Aug. 30 Email from N. O'Connor to W. Fick. To this, we responded that we did not agree that Topic 1 "was exhausted by Pratt," referred the City to the

September 27, 2021
Page 2 of 5

deficiencies listed in our July 14 letter, and stated that we would "address those [questions] to Sullivan in the first instance and proceed from there." *Id.*

It was surprising, then, when Attorney Fick attempted to question Sgt. Sullivan about the BPD's investigation into the shooting of Terrence Coleman and Sgt. Sullivan was unable to answer basic questions. You stated, on the City's behalf, that he was not prepared to answer questions about the investigation of the Terrence Coleman shooting in particular, because he was designated only to speak to FDIT issues in general. The witness admitted that he knew nothing about the Terrence Coleman matter. It is unacceptable for the City to designate a witness to answer questions about FDIT investigations but fail to prepare him to answer questions about *this* FDIT investigation.[1] We are entitled to have an adequately prepared witness who can answer questions on Topic 1, the shooting of Terrence Coleman and the FDIT investigation of that shooting. We request that you produce a substitute witness who can answer the questions that both Sgt. Pratt and Sgt. Boyle could not.

The City's other designees have also been inadequately prepared. Sgt. Boyle, designated to testify on Topic 11 (BPD media communications, including public statements by the Commissioner or other BPD representatives, regarding the shooting of Mr. Coleman"), was unable to answer basic questions about media communications regarding the shooting of Terrence Coleman, such as: whether or when the BPD rule governing Media Relations was updated, T.15-16; whether press releases or other emails were sent out about the shooting of Terrence Coleman, T.12; whether there were communications between Media Relations and the Commissioner regarding the shooting of Terrence Coleman, T.11-12; whether Media Relations was notified of the shooting of Terrence Coleman or communicated with command staff, T.21-23; whether anyone from Media Relations was at the scene at 245 Shawmut Ave., T.24; where Commissioner Evans got the information used in his public comments to the media shortly after the shooting, T.24; or who Commissioner Evans spoke with on the night of the shooting, T.24.

Similarly, Sgt. Sullivan was designated to address Topics 7 (FDIT), 9 (BPD response to officer-involved shootings, including this one), and 10 (involvement of the BPPA). As far as his preparation to testify on behalf of the City, Sgt. Sullivan only "met with the lawyer yesterday and just reviewed the rule." T.7. He spoke with no one else. *Id.* Sgt. Sullivan did not know whether the FDIT team considered the issue of de-escalation in connection with the shooting of Terrence Coleman. He

---

[1] As a matter of common sense, all of the topics must be understood to include the specified subject both "generally, and in connection with the Terrence Coleman shooting, specifically." That we did not include such a boilerplate locution in each topic does not make it reasonable to read the topics as if divorced from the case.

stated that he "personally d[idn't] know," he "had very limited involvement in that investigation," and he did not talk to anyone to find out about it. T.11-12. Although you asserted, on behalf of the City, that Sgt. Sullivan was "not designated for Topic 1" or to discuss the "specifics of the Coleman investigation," T.12-14, he also did not know what efforts, if any, were undertaken to review or modify Rule 303, T.19; whether the City ever looked at national standards or best practices regarding police shooting investigations in formulating its policies, T.19; or whether there was a sequestration or separation of the officer-witnesses after the shooting, T.20. Sgt. Sullivan had "no idea" the leave or work status of Officers Boyle and Finn after the shooting, T.23-24; how it came about that the officers obtained new, BPD-issued firearms after the shooting, T.26; or whether the Commissioner signed off on the issuance of those firearms to the officers, T.26-27. He did not know what role BPPA Pat Rose played in the issuance of the firearms or whether the officers had licenses to carry. T.27.

Officer Owens was designated to address Topic 2 (training, excluding training concerning EDPs and mental health) and 3 (ADA compliance). T.12-13; Aug. 30 Email from N. O'Connor to W. Fick. With regard to the City's compliance with the ADA, however, Officer Owens testified that he was not able to speak to the issue of reasonable accommodation of people with mental health disabilities because that involves a training issue, T.17-18; he was not sure who is responsible for ADA compliance at the BPD, T.18; he was not sure if the BPD had an ADA coordinator, T.18; he was not sure if the BPD has a written ADA compliance policy, T.18-19 ("I'm not sure. I didn't bring that to today's deposition"), and he suggested someone in human resources might know, T.19. He also did not know whether the BPD has a written ADA transition plan, T.19; who the ADA coordinator is for the City, T.19-20; whether there was any regular communication between the BPD and the City's ADA coordinator or who would be able to answer that question, T.21; whether any ADA complaints have been filed concerning the BPD, or where such complaints would go. T.26. With regard to training, Officer Owens did not know whether or where the training officers' evaluations of probationary officers are kept, although he thought Sgt. Blake or Lt. Eblan would know, T.31-32; what the in-service training requirements were from 2014 through 16, T.33-34; whether there have been any efforts to ensure that BPD training comports with national standards and best practices, T.36; what the Tactical Communications training (the academy de-escalation training) consisted of, how long it was, whether there was written material from that course, T.45-46; whether his own training, titled "De-Escalation," was given to BPD Academy Class #54-14, T.47; whether Officers Finn and Boyle received any use of force or de-escalation training after they graduated from the Academy, T.55-56; or anything about the Police Response to Mental Illness training materials, T.57-59 (which you indicated would be covered by a different designee).

   Dr. Savage, the City's designee for Topics 6 (the BEST program) and 13 (the Office of Research and Development), testified that she was not asked to produce or review numerous kinds of notes, minutes, and communications related to the BEST program. *See, e.g.*, T.56-57 (notes or minutes from meetings with chief of police and district captains about the BEST program); T.65 (notes, emails, or minutes from meetings regarding difficulties with the BEST program in D-4); T.72-73 (notes, emails, or minutes from meetings with the head of BFS and the chief of police); T.78-81, 87-88 (minutes from the Co-Responder Committee meetings). Similarly, she had not reviewed the grant applications to fund the BEST program at BPD, because she was never asked to retrieve or review those documents. T.56-57. Those documents, moreover, have not been produced to us, notwithstanding numerous requests for all such materials. Dr. Savage was unable to provide data regarding the volume of EDP calls that the BPD responds to each year, even though collecting and analyzing such data is a basic function of the Office of Research and Development. And separately, the City wrongfully instructed her not to answer the question "whether police use of force against people with mental illness is a problem," on the ground that the question was "beyond [the] topics." T.100-01.

   Supt. Walcott, the City's designee to address Topic 8 (Internal Affairs and its investigations), was unable to answer even the most basic questions about Internal Affairs generally, or the Internal Affairs investigation concerning the shooting of Terrence Coleman. *See, e.g.*, T.13 ("Q. Did you interview any witnesses? A. I'm perusing the report now. I believe that would be no"). To the question whether the officers violated any rules in leaving the scene, he answered "I don't know." T.15. He similarly did not know whether IA ever asked to see Officer Boyle's and Finn's phones, which likely contained contemporaneous evidence from phone, text, and email communications, T.25, or whether Internal Affairs reviewed the transcripts of the FDIT interviews of witnesses, T.27. When pressed on his lack of preparation and inability to answer questions, he stated that he was only informed on the previous day that he needed to testify on behalf of the City in this case, that he was taken away from his family in order to prepare, that he was "a very busy person," and that he "do[es] the best [he] can." T.28.

   Pursuant to Fed. R. Civ. P. 30(b)(6), the City is required to produce witnesses who are adequately knowledgeable and adequately prepared to "give knowledgeable and binding answers" for the City as a defendant in this case. *Calzaturficio S.C.A.R.P.A., v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001) (Wolf, J.). Thus, the City's designees must become familiar with the relevant materials and undertake to discover facts that are "clearly known to *someone* in the organization." *FDIC v. Butcher*, 116 F.R.D. 196 (E.D. Tenn. 1986); *see also Calzaturficio S.C.A.R.P.A.*, 201 F.R.D. at 37 (designees should "review prior fact witness deposition testimony as well as documents and deposition exhibits"); *Concerned Citizens v. Belle Haven Club,* 223 F.R.D. 39 (D. Conn. 2004) (ordering defendant

September 27, 2021
Page 5 of 5

homeowners club to produce deponent with knowledge about admissions practices going back 30 years, notwithstanding fact that documentation might be voluminous and different people affiliated with club might have held information). When a witness is unable to answer questions, the City has a "duty to substitute an appropriate deponent." *Alexander v. FBI,* 186 F.R.D. 137 (D.D.C. 1998). "The failure to produce a Rule 30(b)(6) designee who is adequately educated and prepared to testify on designated topics to bind the entity amounts to a nonappearance, which could [] warrant the imposition of sanctions." *Ballentine v. Las Vegas Metro. Police Dep't,* No. 2:14-cv-01584-APG-GWF, 2016 U.S. Dist. LEXIS 62362, at *16 (D. Nev. May 9, 2016); *see Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 2005 U.S. Dist. LEXIS 20271 (D. Md. 2005) (awarding attorney's fees to deposing party under Rule 37(d) where defendant union failed to meet its obligation when it produced two deposition witnesses who had no knowledge of corporation's positions or activities, and witnesses had not been prepared to testify). Our request that you produce substitute witnesses who can answer our questions is a modest one, given the time and expense of our preparation to depose witness after witness who proved unprepared and lacked relevant knowledge.

We have not had a witness designated, in the first instance, to discuss the EDP/mental health component of Topic 2 (training). In addition, we request that you produce substitute witnesses to address the outstanding questions detailed above. With regard to the time elapsed, we have used five hours of testimony up to this point. We anticipate covering the outstanding portion of the "training" topic within two hours. With regard to the questioning of substitute witnesses, our position is that additional time will be necessary because the City chose to designate so many witnesses to testify on its behalf but failed to prepare those witness or otherwise ensure that they had the relevant knowledge to answer our questions.

Please let us know your position as soon as possible, so that we can schedule further depositions or seek relief from the Court. Thank you in advance for your attention in this matter.

Sincerely,

*/s/ Amy Barsky*

cc:   William Fick, Esq.
      Daniel Marx, Esq.
      Oren Sellstrom, Esq.
      Sophia Hall, Esq.
      Batool Raza, Esq.
      Alexander Terry, Esq.



City of Boston
Law

September 29, 2021

***VIA E-MAIL***

Daniel N. Marx, Esq.
William W. Fick, Esq.
Amy Barsky, Esq.
Fick & Marx, LLP
100 Franklin Street – 7th Floor
Boston, MA  02110

Oren Sellstrom, Esq.
Sophia L. Hall, Esq.
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA  02110

RE:   Hope Coleman, individually and as the legal representative of the Estate of
Terrence J. Coleman v. City of Boston, Boston Public Health Commission, William
Evans, Sophia Dyer, M.D., Garrett Boyle, and Kevin Finn
**USDC Civil Action No. 18-cv-10646**

Dear Amy:

Please let this letter serve as response to your correspondence dated September 27, 2021.
In short, we disagree with your assertion that the City's witnesses were not prepared.  Witnesses
were prepared based upon the plain reading of the topics identified in Plaintiff's 30(b)(6)
deposition notice as well as the narrowed areas of inquiry identified in your July 24, 2021
correspondence.[1]  The only questions the witnesses could not answer were those outside the scope
of their designated 30(b)(6) topics.

---

[1] Following the issuance of the subpoena, on June 23 and June 28, the parties conferred in
compliance with the Federal rules to discuss what information, exactly, the Plaintiff was seeking
to obtain from the 30(b)(6) deposition.  At that time, the City expressed its concern that the topics
identified in the 30(b)(6) notice were extremely broad and would require the testimony of many
witnesses.  To that end, on July 24, 2021 Plaintiff sent a letter detailing exactly what information
the Plaintiff was seeking.  The City prepped its witnesses accordingly.  To date, the City has
produced five 30(b)(6) witnesses, with one more witness available to testify in October.

Amy Barsky, Esq.
September 29, 2021
Page 2

**Issues Concerning Sgt. Det. Pratt**

It is clear, from the plain reading of Plaintiff's 30(b)(6) notice, that Plaintiff intended the FDIT investigation into the shooting of Terrence Coleman to be a topic separate from FDIT investigations in general. Indeed, they are delineated as separate topics on the notice. To that end, Sgt. Det. Pratt was designated to testify about the Terrence Coleman FDIT investigation (Topic 1), and Sgt. Det. Sullivan was designated to testify regarding FDIT investigations in general (Topics 7 and 9).

In your correspondence dated July 14, 2021, you claim that Sgt. Det. Pratt was "unprepared to answer a number of questions." But the questions you claim Sgt. Det. Pratt could not answer concerned FDIT investigations[2] in general—a topic he was not designated to talk about:

- BPD rules, policies, directives, audits, "special orders," or other guidance concerning the investigation of officer-involved shootings
- Whether BPD officers who discharge firearms are supposed to be armed during the investigation into the discharge
- The issuance of firearms to officers involved in a shooting
- The Internal Affairs investigation conducted in this case

The first three questions concern FDIT investigations in general and, therefore, were not appropriate questions for Sgt. Det. Pratt. All of these questions were subsequently asked of Sgt. Det. Marc Sullivan—who was designated to testify regarding FDIT investigations in general—and they were fully answered. Questions concerning internal affairs investigations were likewise outside the scope of Topic 1. All of your questions concerning the internal affairs investigation were subsequently asked of Superintendent Jeffrey Walcott—who was designated to testify regarding internal affairs—and they were fully answered.

You also assert that Sgt. Det. Pratt could not answer the following question:

- Whether the FDIT investigation in this case considered potential violations of BPD rules

Sgt. Det. Pratt was not asked this question, specifically. Regardless, this question was answered by both Superintendent Walcott and Sgt. Det. Sullivan.

---

[2] You also expressed concern that Sgt. Det. Pratt could not answer questions regarding Internal Affairs. But Internal Affairs is a department separate and distinct from FDIT. Plaintiff seemed to appreciate this distinction, as "FDIT investigations" and "Internal Affairs investigations" are delineated as separate topics on the 30(b)(6) notice.

Amy Barsky, Esq.
September 29, 2021
Page 3


You also assert that Sgt. Det. Pratt could not answer the following question:

- Any review that has been done of BPD's Rule 303, FDIT procedures, and/or internal investigatory procedures, and any comparison to procedures used by other departments

This question is outside the scope of any topic identified on your 30(b)(6) notice, and certainly outside the scope of Topic 1.

As for the remaining questions concerning the Terrence Coleman FDIT investigation that you claim Sgt. Det. Pratt could not answer, we disagree:

- The collection of evidence in this case
- The guarding of the knife at 245 Shawmut Ave. after the shooting
- The procurement and execution of the search warrant in this case

Sgt. Det. Pratt answered all of these questions to the best of his ability.  He may not have remembered the name of the officer who performed each discrete task during the FDIT investigation (which makes sense, considering dozens of officers assist in gathering, collecting, and analyzing evidence during a FDIT investigation), but that does not mean he is "not prepared" for his deposition.  Indeed, Sgt. Det. Pratt indicated that the FDIT file contains the reports which detail which officer did what during the investigation.  Plaintiff has these records.  See Bates COB 658-829.  There is no obligation that a 30(b)(6) witness be able to answer every question that is asked during a deposition.

**Issues Concerning Sgt. Det. Sullivan**

Sgt. Det. Sullivan was designated to testify regarding FDIT investigations in general.   The questions you claim he could not answer were questions outside the scope of his designated topics:

- Whether the FDIT team investigating the Terrence Coleman shooting considered the issue of de-escalation
- When Rule 303 has been reviewed/modified
- Whether the City looked at national standards/best practices regarding police shootings
- Whether there was a sequestration or separation of witnesses after the shooting [of Terrence Coleman]

Additionally, Sgt. Det. Sullivan testified regarding the City's policies concerning issuing firearms to officers during the pendency of a shooting investigation.  To the extent you had additional questions regarding the specific circumstances surrounding the issuance of firearms to Officer Boyle and Det. Finn in this case, you already deposed Officer Boyle and Det. Finn—who would

Amy Barsky, Esq.
September 29, 2021
Page 4

be the best source of this information—and they answered all of your questions regarding how and when they were issued firearms.  They also described the union's involvement in the issuance of their firearms.  What is more, you already deposed Commissioner William Evans—the person responsible for issuing the firearms.  This topic—which is not even relevant to any of Plaintiff's claims—has been exhausted.

### Issues Concerning Sgt. Det. Boyle

Topic 11 concerns "BPD media communications (including public statements by Commissioner or other BPD representatives) regarding the shooting of Mr. Coleman."  The plain reading of this topic suggested that you were going to inquire about BPD's public communications regarding the shooting of Terrence Coleman.  Plaintiff has all of BPD's public communications regarding the shooting of Terrence Coleman.  See Bates COB 3740-3746.  Det. John Boyle, the commander of BPD's Office of Medial Relations, was designated to testify on the topic.

You raise the following concerns regarding his testimony:

- Whether the BPD rule governing Media Relations was updated since 2015

   This is outside the scope of Topic 11.

- Whether press releases or other emails were sent out about the shooting of Terrence Coleman

   Sgt. Det. Boyle answered this question.

- Whether there were communications between media relations and the Commissioner regarding the shooting of Terrence Coleman

   This is outside the scope of Topic 11.  Regardless, Commissioner Evans would be the best source of this information and he was already deposed and answered this question.

- Whether Media Relations was notified of the shooting of Terrence Coleman or communicated with command staff

   This is outside the scope of Topic 11.

- Whether anyone from Media Relations was at the scene of the shooting

   This is outside the scope of Topic 11.

Amy Barsky, Esq.
September 29, 2021
Page 4

- Where Commissioner Evans got the information used in his public comments to the media shortly after the shooting

  This is outside the scope of Topic 11. Regardless, Commissioner Evans would be the best source of this information and was already deposed and answered this question.

- Who Commissioner Evans spoke with on the night of the shooting

  This is outside the scope of Topic 11. Regardless, Commissioner Evans would be the best source of this information and was already deposed and answered this question.

Sgt. Det. Boyle answered all questions regarding BPD's media communications regarding the shooting of Terrence Coleman. This topic—which is also not relevant to any of Plaintiff's claims—has been exhausted.

## Issues concerning Officer Darryl Owens

Officer Owens was designated to testify regarding Topic 2 (BPD training), though only as to use of force/de-escalation.[3]  Officer Owens personally trained Officer Boyle and Det. Finn on these topics. He fully answered all of your questions regarding training on use of force/de-escalation. Again, there is no requirement that a 30(b)(6) witness know the answer to every question that is asked during a deposition.

Officer Owens was also designated to testify regarding BPD compliance with the ADA. The City is willing to designate an additional witness to answer the questions Officer Owens could not regarding the ADA.

## Issues concerning Jenna Savage

Dr. Savage was designated to testify regarding Topic 6 (BEST program) and Topic 13 (Office of Research and Development). Dr. Savage is the Deputy Director of the Office of Research and Development and was personally involved with establishing the BEST program at BPD. There is no better witness to testify regarding these topics, and Dr. Savage fully answered all of your questions. Again, there is no requirement that a 30(b)(6) witness know the answer to every question that is posed to them during a deposition. The City will supplement its document responses with the documents identified in Dr. Savage's deposition, to the extent they exist.

---

[3] Nancy Cellucci has been designated to testify regarding BPD training on EDPs/mental health.

Amy Barsky, Esq.
September 29, 2021
Page 5


**Issues concerning Superintendent Walcott**

Superintendent Walcott is currently the Superintendent of the Bureau of Professional Standards, which includes the Internal Affairs Division. Superintendent Walcott fully answered all of your questions regarding the internal affairs investigation into the Terrence Coleman incident and internal affairs investigations in general.

As noted above, the City is willing to produce an additional witness regarding the ADA. The City is not willing to produce any other "substitute" witnesses. We're happy to discuss these issues with you in further detail.

Very truly yours,

Nicole M. O'Connor
Senior Assistant Corporation Counsel
617-635-4039

cc:   Timothy Harrington
Batool Raza
Michael Barkley
Alexander Terry



City of Boston
Law

October 15, 2021

**_VIA EMAIL_**
William W. Fick, Esq.
Daniel N. Marx, Esq.
Amy Barsky, Esq.
Fick & Marx, LLP
100 Franklin Street – 7th Floor
Boston, MA  02110

Oren M. Sellstrom, Esq.
Sophia L. Hall, Esq.
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA  02110

Re:   <u>Hope Coleman (individually and as the legal representative of the Estate of Terrence J.</u>
<u>Coleman) v. City of Boston, Boston Public Health Commission, William Evans, Sophia</u>
<u>Dyer, M.D., Garrett Boyle, and Kevin Finn</u>
**USDC Docket No. 18-cv-10646**

Dear Amy:

Please let this correspondence serve as a response to your letter dated February 12, 2021 in which you sought information you believed to be responsive to your first set of discovery requests.  While some of the information you requested in your letter is responsive to your first set of discovery requests (and, accordingly, has been produced by way of supplemental responses served under separate cover), some of the information is not responsive to your first set of discovery requests.  A detailed response, indicating which requests we believe seek information that are not responsive to your first set of discovery requests, is set forth below.

Additionally, in various places you request that the City state "in writing" whether certain things occurred.  For example, you request that the City "state in writing" that there were no investigations into possible rule violations other than Rule 303.  The City has no obligation to provide this information in response to a document request.  That said, in an effort to expedite the conclusion of discovery and obviate the need for any unnecessary motion practice, I have offered clarifications, where appropriate, below.

Amy Barsky, Esq.
Fick & Marx, LLP
October 15, 2021
Page 2

---

## I.      DEFENDANT CITY OF BOSTON

Requests for Production of Documents

### Request Number 6 to COB

A.
  i.   The City has produced all responsive records in its possession, custody or control.  Superintendent Walcott testified that IAD did not investigate any violations other than Rule 303.  Depo Trx 14:17-20.
  ii.  No responsive records in the City's possession, custody or control.
  iii. The City has produced all responsive records in its possession, custody or control.  See COB 658-700.
  iv.  The City has produced all responsive records in its possession, custody or control.  See COB 3621-3628; 3747-3884 (which will be produced under separate cover).
  v.   The City has produced all responsive records in its possession, custody or control.  See COB 3621-3628.

B.   The information requested in this paragraph is not responsive to Request No. 6.
C.   The information requested in this paragraph is not responsive to Request No. 6.

### Request Number 8 to COB

A.   The City has produced all responsive records in its possession, custody or control. See COB 3740-3746.
B.   The City has produced all responsive records in its possession, custody or control. See COB 2783.
C.   The City has produced all responsive records in its possession, custody or control. See COB 3673-3675.
D.   The City has produced the subpoena responses it received from Verizon and AT&T. See COB 3633-3672. The City has not received a response from Instagram or Facebook.  We have followed up several times regarding the outstanding subpoena with no response.

### Request No. 11 to COB

A.   The City has produced all responsive records in its possession, custody or control. Sgt. Det. Sullivan testified that there are no rules that govern FDIT investigations other than Rule 303.  Depo Trx 18:16-21.
B.   The City has produced all responsive records in its possession, custody or control. See COB 24-32.

Amy Barsky, Esq.
Fick & Marx, LLP
October 15, 2021
Page 3

---

    C.    The City has produced all responsive records in its possession, custody or control
           See COB 32.

    D.    No responsive records in the City's possession, custody or control.

    E.    No responsive records in the City's possession, custody or control.

    F.    The City has produced all responsive records in its possession, custody or control.
           See COB 28-32; 3676-3682.

    G.    The information requested in this paragraph is not responsive to Request No. 11.

    H.    The information requested in this paragraph is not responsive to Request No. 11.

    I.    The information requested in this paragraph is not responsive to Request No. 11.

**Request No. 13 to COB**
    A.    The information requested in this paragraph is not responsive to Request No. 13.

    B.    The information requested in this paragraph is not responsive to Request No. 13.

Interrogatories

**Interrogatory No. 2 to COB**
    A.    This is a mischaracterization of Commissioner Evans' testimony.  He testified that there were only four witnesses to the actual incident (the two officers and the two EMTs).  He did not indicate he was briefed by four supervisors.

    B.    David Fredette, Legal Advisor to the Boston Police Department.

**Interrogatory No. 4 to COB**
    A.    Both Detective Finn and Officer Boyle testified extensively regarding their communications in connection with this incident.  Detective Finn has produced all responsive records in his possession, custody or control.  He did not indicate that he was aware of any other specific communications other than those that have been produced.  Officer Boyle testified that he may have received some voicemails or text messages regarding how he was doing following the incident (but not about the substance of the incident), but he does not know from whom and he no longer has these messages in his possession, custody, or control.  He did not destroy or delete the messages; rather he lost them when he got a new phone.

**Interrogatory No. 7 to COB**
    A.    Sgt. Det. Sullivan testified that there are no rules that govern FDIT investigations other than Rule 303.  Depo Trx 18:16-21.

    B.    The City's answer to Interrogatory 7 is fully responsive to this paragraph.

    C.    The information requested in this paragraph is not responsive to Interrogatory No. 7.

Amy Barsky, Esq.
Fick & Marx, LLP
October 15, 2021
Page 4

---

     D.      The information requested in this paragraph is not responsive to Interrogatory No. 7.

     E.      Rule 303; Rule 309.

     F.      Rule 303.

     G.      Rule 303.

     H.      Rule 303.

     I.      The information requested in this paragraph is not responsive to Interrogatory No. 7.

     J.      The information requested in this paragraph is not responsive to Interrogatory No. 7.

## II.   DEFENDANT WILLIAM EVANS

<u>Request for Production of Documents</u>

### Request No. 7 to Defendant Evans

     A.    Evans does not have any text messages or voicemails concerning the incident in his possession, custody or control.  The call log requested in this paragraph is beyond the scope of what is in Evans' possession, custody and control and he would object to producing it.

     B.    The information requested in this paragraph is not responsive to Request No. 7.

     C.    The information requested in this paragraph is not responsive to Request No. 7.

### Request No. 8 to Defendant Evans

     A.    Evans does not have any records in his possession, custody, or control regarding training that he received or remarks that he gave regarding EDPs, compliance with the ADA, the use of deadly force, or deescalation at either the Major City Chiefs Conference or any programs organized by the Police Executive Research Foundation.  The remainder of the information requested in this request is not responsive to Request No. 7.

     B.    The information requested in this request is not responsive to Request No 7.

     C.    The City has produced all responsive records in its possession, custody or control.  See COB 1533-2409.

<u>Interrogatories</u>

### Interrogatory No. 9 to Defendant Evans

     A.    Evans answered by way of objection to Interrogatory No. 9.  Evans maintains that objection.  Regardless, Evans testified at his deposition regarding his training.

Amy Barsky, Esq.
Fick & Marx, LLP
October 15, 2021
Page 5

---

### III.    DEFENDANTS BOYLE AND FINN

Request for Production of Documents

**Request Number 6 to Defendants Boyle and Finn**

A.  Defendants Boyle and Finn object to providing any medical records concerning their mental health treatment or physical injuries.   At their depositions they both testified generally about the treatment they received.

Interrogatories

**Interrogatory No. 10 to Defendants Boyle and Finn**

A.   The information requested in this interrogatory is not responsive to Interrogatory No. 10.

Please feel free to contact me with any questions, comments, or concerns.

Very truly yours,

*/s/ Nicole M. O'Connor*

Nicole M. O'Connor
Senior Assistant Corporation Counsel
617-635-4039

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

HOPE COLEMAN
     *Plaintiff*,

    v.

CITY OF BOSTON, et al.,
     *Defendants*.

No. 18-cv-10646-MLW

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS
## TO DEFENDANT GARRETT BOYLE

Plaintiff Hope Coleman hereby requests, pursuant to the Federal Rules of Civil

Procedure, that Defendant Garrett Boyle produce the following documents.

## DEFINITIONS AND INSTRUCTIONS

1.     These definitions and instructions shall apply in interpreting the scope of the

definitions and instructions as well as the individual specific requests below.

2.     The phrase "the matters described in the First Amended Complaint ('FAC')"

includes, but is not limited to, Defendants' interactions with Plaintiff Hope Coleman and

Plaintiff's son Terrence Coleman on October 30-31, 2016, including but not limited to every

interaction Defendants had with Terrence Coleman at his home, every interaction Defendants

had with Hope Coleman before and thereafter, and the investigation(s) thereof.

3.     "You" shall refer to Defendant Garrett Boyle and his attorneys, agents,

representatives, or anyone else acting on his behalf.

4.     "Communication" or "communications" shall mean any oral or written utterance,

notation, depiction, or statement of any nature whatsoever, including but not limited to

correspondence, personal conversations, telephone calls, facsimiles, dialogues, discussions,

1

interviews, consultations, emails, text-messages, voicemails, memoranda, agreements, and other verbal and non-verbal forms of exchange.

5.      "Concerning," "relating to," "regarding," "reflecting," and "evidencing" shall be construed in the broadest sense to mean discussing, referring to, reflecting upon, containing, concerning, mentioning, analyzing, constituting, embodying, pertaining to, or evidencing, in whole or in part and in any way, the subject matter of the particular request.

6.      "Document" or "documents" is intended to be interpreted in the broadest possible sense under Rule 34 of the Federal Rules of Civil Procedure and common law interpreting such rules, and includes but is not limited to, all originals, non-identical copies, and drafts of any written, printed, handwritten, recorded or graphic matter of any kind, however produced or reproduced, and regardless of where located, including but not limited to, electronic correspondence (including e-mail messages and text-messages), memoranda, notes, records of any sort of meetings, reports, charts, graphs, checklists, summaries, diaries, desk or pocket calendars, notebooks, invoices, financial statements, bank statements, financial calculations, reports of telephone conversations, any magnetic or other recording tape, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), photograph, microfiche, microfilm, videotape, record or motion picture, and electronic, mechanical, or electrical record or representation of any kind, including but not limited to, tape, cassette, disc, magnetic card or recording. You shall produce non-privileged documents from every personal and business source of potentially responsive information, including but not limited to: (a) physical files, (b) e-mail files, (c) computer hard drive files, (d) files stored on removable storage devices, and (e) shared server files. To the extent practicable, you shall produce all documents in their native format(s) containing original metadata.

7.      "Drafts" shall mean any formulation, outline, sketch, conceptualization, or version of a document created prior to the final version of that document.

8.      "Including" shall mean "including without limitation" or "including but not limited to."

9.      The term "person" means any natural person, group of natural persons, legal entity, corporation, partnership, government agency or board, association, proprietorship, organization, or any other business or entity.

10.      "Emotionally Disturbed Persons" or "EDPs" shall refer to persons suffering from any mental illness, mental health disability, or behavioral health disability, or persons in behavioral or mental health crises.

11.      No paragraph shall be construed with reference to any other paragraph for purposes of limitation.

12.      The documents to be produced shall encompass all documents in your possession, custody, or control, as well as all documents in the possession, custody, or control of your departments, employees, attorneys, agents, representatives, financial advisors, accountants, or consultants.

13.      A document shall be deemed to be within your control if you have the right to secure the Document or a copy of the document from another person or entity having possession or custody of the document.

14.      If any source of potentially responsive information maintained by you is no longer in your possession, custody or control, please state and specify in detail the information contained therein, date upon which it ceased to exist, disposition that was made of it, and identity of all persons having knowledge of the contents thereof or of the disposition.

15.    If any document or copy thereof was, but is no longer in, your possession, custody, or control, please state and specify in detail for each such document the: date, sender, recipient, persons to whom copies were provided (together with their job titles or badge numbers, as appropriate), information contained therein, date upon which it ceased to exist, disposition that was made of it, and identity of all persons having knowledge of the contents thereof.

16.    Each request for documents seeks production of each document in its entirety, including all attachments, all drafts, and non-identical copies of each document.

17.    If any document is withheld pursuant to a claim of privilege against disclosure, provide a log containing for each such document: (a) the document type (for example email communication, draft letter, etc.), (b) the date shown in or on the document, (c) the author of the document, (d) the identity of all recipients (included addresses and copy recipients), (e) the nature of the privilege against disclosure claimed, and (f) a summary of facts supporting the assertion of such privilege against disclosure. Notwithstanding the assertion of any objection based on a privilege against disclosure, any requested document that contains non-objectionable information responsive to this request should be produced, but that portion of the document for which the objection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

18.    An objection or claim of privilege against disclosure directed to part of a request does not constitute an excuse for failure to respond to the parts of a request for which no objection or claim of privilege against disclosure is made.

19.    Whenever necessary to bring within the scope of this request any information that otherwise might be construed to be outside: (i) the singular of every word shall include the plural, and the plural of any word shall include the singular; (ii) "and" as well as "or" shall be

construed disjunctively and conjunctively; (iii) the terms "any" and "all" shall be read as "any and all"; (iv) "including" shall be read as "including but not limited to"; and (v) the present tense shall include the past tense and future tense, the past tense shall include the present tense and future tense, and the future tense shall include the past tense and present tense.

20.     If there are no documents responsive to any particular request, you shall so state in writing.

21.     Plaintiff reserves the right to propound additional requests for production of documents based upon information subsequently obtained in discovery or for any other permissible reason. This is a continuing request for production of documents. If additional documents are received or discovered after the initial production, all such further documents should be produced as they are received.

## **SPECIFIC REQUESTS**

1.     All documents regarding the issuance of any firearm(s) to you by the BPD and/or the BPD Firearms Range ("the range") after the matters described in the FAC, including but not limited to related communications with any members of the BPD and/or any members of the Boston Police Patrolmen's Association.

2.     All documents regarding your license to carry firearms, including your application(s) to obtain such a license around the time of the matters described in the FAC.

3.     All documents concerning your clearance to return to active or full duty with the BPD after the matters described in the FAC. *See* Evans Tr. 278-86 (testifying, regarding the Defendants' return to duty, "if they came back, I would have signed"); *id*. at 285 ("I sign a lot of return to duties").

4.      Documents sufficient to identify all healthcare providers who provided treatment, including but not limited to medical care, mental health counseling, or physical therapy, to you in connection with any injury or ailment that you claim to have suffered in connection with the matters describes in the FAC.

Respectfully submitted,

**HOPE COLEMAN**

by her attorneys,

_/s/ Amy Barsky_
Amy Barsky (BBO# 601111)
Daniel N. Marx (BBO# 674523)
William W. Fick (BBO# 650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com
abarsky@fickmarx.com

Oren Sellstrom (BBO# 569045)
Sophia L. Hall (BBO# 684541)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 984-0274
osellstrom@lawyerscom.org
shall@lawyerscom.org

Dated:  October 28, 2021

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

HOPE COLEMAN
     *Plaintiff,*

    v.                                 No. 18-cv-10646-MLW

CITY OF BOSTON, et al.,
     *Defendants.*

**PLAINTIFF'S SECOND REQUEST FOR PRODUCTION**
**OF DOCUMENTS TO DEFENDANT CITY OF BOSTON**

    Plaintiff Hope Coleman hereby requests, pursuant to the Federal Rules of Civil

Procedure, that Defendant City of Boston produce the following documents.

**DEFINITIONS AND INSTRUCTIONS**

    1.     These definitions and instructions shall apply in interpreting the scope of the

definitions and instructions as well as the individual specific requests below.

    2.     The phrase "the matters described in the First Amended Complaint ('FAC')"

includes, but is not limited to, Defendants' interactions with Plaintiff Hope Coleman and

Plaintiff's son Terrence Coleman on October 30-31, 2016, including but not limited to every

interaction Defendants had with Terrence Coleman at his home, every interaction Defendants

had with Hope Coleman before and thereafter, and the investigation(s) thereof.

    3.     "Communication" or "communications" shall mean any oral or written utterance,

notation, depiction, or statement of any nature whatsoever, including but not limited to

correspondence, personal conversations, telephone calls, facsimiles, dialogues, discussions,

interviews, consultations, emails, text-messages, voicemails, memoranda, agreements, and other

verbal and non-verbal forms of exchange.

1

4.      "Concerning," "relating to," "regarding," "reflecting," and "evidencing" shall be construed in the broadest sense to mean discussing, referring to, reflecting upon, containing, concerning, mentioning, analyzing, constituting, embodying, pertaining to, or evidencing, in whole or in part and in any way, the subject matter of the particular request.

5.      "Document" or "documents" is intended to be interpreted in the broadest possible sense under Rule 34 of the Federal Rules of Civil Procedure and common law interpreting such rules, and includes but is not limited to, all originals, non-identical copies, and drafts of any written, printed, handwritten, recorded or graphic matter of any kind, however produced or reproduced, and regardless of where located, including but not limited to, electronic correspondence (including e-mail messages and text-messages), memoranda, notes, records of any sort of meetings, reports, charts, graphs, checklists, summaries, diaries, desk or pocket calendars, notebooks, invoices, financial statements, bank statements, financial calculations, reports of telephone conversations, any magnetic or other recording tape, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), photograph, microfiche, microfilm, videotape, record or motion picture, and electronic, mechanical, or electrical record or representation of any kind, including but not limited to, tape, cassette, disc, magnetic card or recording. You shall produce non-privileged documents from every personal and business source of potentially responsive information, including but not limited to: (a) physical files, (b) e-mail files, (c) computer hard drive files, (d) files stored on removable storage devices, and (e) shared server files. To the extent practicable, you shall produce all documents in their native format(s) containing original metadata.

6.      "Drafts" shall mean any formulation, outline, sketch, conceptualization, or version of a document created prior to the final version of that document.

2

7.      "Including" shall mean "including without limitation" or "including but not limited to."

8.      The term "person" means any natural person, group of natural persons, legal entity, corporation, partnership, government agency or board, association, proprietorship, organization, or any other business or entity.

9.      You" or "your" shall refer to the Defendant City of Boston and any of your departments, employees, attorneys, agents, representatives, financial advisors, accountants, or consultants.

10.     "Emotionally Disturbed Persons" or "EDPs" shall refer to persons suffering from any mental illness, mental health disability, or behavioral health disability, or persons in behavioral or mental health crises.

11.     No paragraph shall be construed with reference to any other paragraph for purposes of limitation.

12.     The documents to be produced shall encompass all documents in your possession, custody, or control, as well as all documents in the possession, custody, or control of your departments, employees, attorneys, agents, representatives, financial advisors, accountants, or consultants.

13.     A document shall be deemed to be within your control if you have the right to secure the Document or a copy of the document from another person or entity having possession or custody of the document.

14.     If any source of potentially responsive information maintained by you is no longer in your possession, custody or control, please state and specify in detail the information

contained therein, date upon which it ceased to exist, disposition that was made of it, and identity of all persons having knowledge of the contents thereof or of the disposition.

15.     If any document or copy thereof was, but is no longer in, your possession, custody, or control, please state and specify in detail for each such document the: date, sender, recipient, persons to whom copies were provided (together with their job titles or badge numbers, as appropriate), information contained therein, date upon which it ceased to exist, disposition that was made of it, and identity of all persons having knowledge of the contents thereof.

16.     Each request for documents seeks production of each document in its entirety, including all attachments, all drafts, and non-identical copies of each document.

17.     If any document is withheld pursuant to a claim of privilege against disclosure, provide a log containing for each such document: (a) the document type (for example email communication, draft letter, etc.), (b) the date shown in or on the document, (c) the author of the document, (d) the identity of all recipients (included addresses and copy recipients), (e) the nature of the privilege against disclosure claimed, and (f) a summary of facts supporting the assertion of such privilege against disclosure. Notwithstanding the assertion of any objection based on a privilege against disclosure, any requested document that contains non-objectionable information responsive to this request should be produced, but that portion of the document for which the objection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

18.     An objection or claim of privilege against disclosure directed to part of a request does not constitute an excuse for failure to respond to the parts of a request for which no objection or claim of privilege against disclosure is made.

19.     Whenever necessary to bring within the scope of this request any information that otherwise might be construed to be outside: (i) the singular of every word shall include the plural, and the plural of any word shall include the singular; (ii) "and" as well as "or" shall be construed disjunctively and conjunctively; (iii) the terms "any" and "all" shall be read as "any and all"; (iv) "including" shall be read as "including but not limited to"; and (v) the present tense shall include the past tense and future tense, the past tense shall include the present tense and future tense, and the future tense shall include the past tense and present tense.

20.     If there are no documents responsive to any particular request, you shall so state in writing.

21.     Plaintiff reserves the right to propound additional requests for production of documents based upon information subsequently obtained in discovery or for any other permissible reason. This is a continuing request for production of documents. If additional documents are received or discovered after the initial production, all such further documents should be produced as they are received.

## SPECIFIC REQUESTS

1.     All applications, progress reports, and other documents, including communications with "technical assistance" providers, concerning grants related to the BEST program, any other BPD co-response or crisis intervention program, and/or BPD interactions with EDPs, *excluding* dementia-related grants, whether the grant was ultimately funded or not, and any attachments or materials submitted in support thereof.

2.     All documents, including minutes, notes, or communications, concerning or comprising discussions of the BEST program, including without limitation documents concerning meetings referenced by Dr. Jenna Savage with the "Chief of Police," District

5

Captains, Bureau of Field Services, Boston Medical Center and/or BEST personnel, as well as with the City Council. *See* Savage Tr. 46-47, 56-57, 65, & 72-73.

3.      All documents, including minutes, notes, or communications, concerning or comprising testimony or public remarks by BPD officials concerning the BEST program, any other BPD co-response or crisis intervention program, or BPD interactions with EDPs.

4.      All documents, including minutes, notes, or communications, from or concerning meetings of the co-responder subcommittee of the Community Justice/Sequential Intercept Mapping Group. *See id*. 78-81 & 87-88.

5.      All documents, including minutes, notes, or communications, with or concerning BEST co-responding clinicians Millie Sheppard, Mat Salch, Jennifer Grieco, Melissa Reilly, and supervisor Lauren Sneider. *See id*. 65-66.

6.      All documents regarding the use of crisis intervention team ("CIT") training by the BPD or its officers, including but not limited to applications for grants or funding for any CIT program, materials, curriculum, program statements, and communications, *see id*. 9-11, as well as the same documents for outside CIT training which BPD officers have attended, *see id*. 36-38.

7.      All Commissioner Memos concerning the BEST program since 2011, including any updated version(s) of the Commissioner's Memo dated [*INSERT MONTH AND DAY*] 2011.

8.      All documents related to the research, writing, publication or production of Melissa S. Morabito, Jenna Savage, Lauren Sneider & Kellie Wallace, "Police Response to People with Mental Illnesses in a Major U.S. City: The Boston Experience with the Co-Responder Model," 13:8 *Victims & Offenders* 1093-1105 (2018).

9.     From 2010 through 2016, all documents concerning or comprising public records requests to the BPD for data concerning BPD's interactions with EDPs, as well as the BPD's responses to those requests for data.

10.     For each year from 2010 through 2016, documents, including without limitation stored data, sufficient to identify the race, gender, and disability/EDP status of each person subjected to a use of force by any BPD officer(s), as well as the district in which each incident occurred and the type of call that resulted in the use of force, including but not limited to:

  a.   The number of people fatally shot by any BPD officer(s) and the number of such people who were identified as EDPs (or if BPD does not track that specific data, the number of calls coded as EDP that resulted in a fatal shooting);

  b.   The number of people non-fatally shot by any BPD officer(s) and the number of such people who were identified as EDPs (or if BPD does not track that specific data, the number of calls coded as EDP that resulted in a non-fatal shooting);

  c.   The number of people tased by any BPD officer(s) and the number of such people who were identified as EDPs (or if BPD does not track that specific data, the number of calls coded as EDP that involved the use of a taser);

  d.   The number of people "pepper-sprayed" or subjected to OC spray by any BPD officer(s) and the number of such people who were identified as EDPs (or if BPD does not track that specific data, the number of calls coded as EDP that involved the use of pepper or OC spray);

e.   The number of people struck with batons by any BPD officer and the number of such people who were identified as EDPs (or if BPD does not track that specific data, the number of calls coded as EDP that involved a baton strike or strikes);

f.   The number of BPD officers injured while on duty by civilians; and

g.   The number of BPD officers injured while on duty by EDPs.

If the BPD does not track the specific data requested, please affirmatively so state for each sub-part above.

11.   For each year from 2010 through 2016, documents, including without limitation stored data, sufficient to establish the resolution of all EDP calls for service (i.e., the numbers of calls that resulted in arrests, hospitalizations, citations, etc.).

12.   For each year from 2010 through 2016, documents, including without limitation stored data, sufficient to identify all uses of force against persons with disabilities, including EDPs, and all documents concerning these incidents.

13.   All documents, including without limitation stored data, concerning BPD's auditing, assessment, analysis or tracking of the quality or outcomes of its interactions with EDPs.

14.   All documents concerning the issuance of firearms to Defendants Boyle and Finn by the BPD and/or the BPD Firearms Range ("the range"), following the matters described in the FAC, including but not limited to communications involving Defendant William Evans, former BPPA President Pat Rose, and/or BPD officer and BPPA representative Thomas Antonino regarding such firearms, as well as Defendants Finn and Boyle's licenses to carry firearms and their applications to obtain such licenses around the time of the matters described in the FAC.

*See* Pratt Tr. 59 ("someone would need an order before a weapon was handed out. They just wouldn't hand out a firearm to somebody").

15.     All BPD rules, regulations, or policies concerning the issuance (or re-issuance) of firearms to BPD officers after an Officer-Involved-Shooting ("OIS"). If the BPD has no rules, regulations, or policies concerning the issuance (or re-issuance) of firearms to officers after an OIS, please affirmatively so state in writing. *See id*.

16.     All documents concerning Defendants Boyle's and Finn's return to full duty after the matters described in the FAC, and any BPD rules, policies, or procedures concerning officers' mental, emotional, physical, and psychological fitness to return to duty after an OIS. *See* Evans Tr. 278-86 (testifying, regarding the Defendant-officers' return to duty, "if they came back, I would have signed"); *id*. at 285 ("I sign a lot of return to duties"). If the BPD has no rules, regulations, or policies concerning officers' return to duty after an OIS, please affirmatively so state in writing.

17.     All BPD rules, policies, or guidance concerning the rendering of first aid or emergency medical assistance to civilians injured during an OIS.

18.     All BPD rules, policies, or guidance concerning the writing of BPD incident reports and/or "Form 26" reports. *See* Evans Tr. 223-26, 228.

19.     All documents concerning or comprising BPD training materials addressing how to conduct FDIT investigations, as well as attendance and test records for Sgt. Det. Thomas Pratt from such training. *See* Pratt Tr. 25 ("we all went through…. I believe it's 160 hours of comprehensive curriculum in investigations"; "we also had a 40-hour in-service training at the police academy with the FDIT team"); *id.* 26 ("after the 160 hours…. [t]here was another 40

hours for … people who were going to be put on the FDIT team"); *id.* 29-31 (referencing a training at the "Haige school").

20.      All documents concerning the factual statement accompanying the presentation of the Walter Scott medal concerning the events in the FAC.

21.      All documents, including communications, concerning interviews by Sgt. Det. John Broderick of Defendant Boyle, Defendant Finn, EMT Terrence Mentele, and/or EMT Kyle MacKinnon at the Boston Medical Center on October 31, 2016, after the shooting of Mr. Coleman. *See* MacKinnon Tr. at 213 ("I remember speaking with a Boston police detective in the ER…. [T]hey just asked me some basic details about what had happened").

22.      All documents from any lawsuit, from 2000 to the present, against the BPD or against the City concerning the BPD, alleging inappropriate treatment of persons with disabilities (including EDPs), the inappropriate use of force, and/or discrimination against civilians (non-BPD employees or applicants for employment) based on race.

23.      All documents concerning any audit, site visit, inquiry, or investigation of the BPD or BEMS by the United States Department of Justice, the Massachusetts Attorney General's Office, or any other *external* body, concerning civil rights violations by the BPD or BEMS, BPD or BEMS compliance with the ADA or section 504, and/or BPD or BEMS use of force.

24.      All documents concerning any *internal* investigations by the BPD or BEMS, or any other entity engaged by the BPD or BEMS, concerning the BPD or BEMS's record on civil rights issues, use of force, compliance with the ADA or section 504, or interactions with people with disabilities.

25.     All rules, policies, and procedures for the City, the BPD, or BEMS concerning the filing of ADA and/or section 504 complaints.

26.     All documents concerning or comprising ADA or section 504 complaints or requests for accommodation filed with or concerning the BPD or BEMS, from 2005 to the present.

27.     All documents concerning or comprising BPD training materials concerning the ADA and/or accommodations for EDPs, including any training simulations involving EDPs.

28.     Documents sufficient to identify all healthcare providers who provided treatment, including but not limited to medical care, mental health counseling, or physical therapy, to Defendants Finn and Boyle, in connection with any injury or ailment they claim to have suffered in connection with the matters describes in the FAC.

29.     All documents concerning or comprising the in-service EDP training referenced by Nancy Cellucci.

30.     All documents concerning or comprising communications between the City or the City's ADA Coordinator and the BPD, concerning ADA and/or section 504 compliance.

31.     All documents concerning the ADA Coordinator McCosh's attendance at monthly BEST meetings, as well as all documents concerning or comprising ADA training(s) given by ADA Coordinator McCosh at meeting(s) of the "department heads," as indicated in her testimony.

32.     All documents, including without limitation emails and attachments, concerning or comprising communication between the New England ADA Technical Assistance Center and ADA Coordinator McCosh in preparation for her testimony on October 13, 2021.

11

33.     All communications and data from Defendant Evans' BPD-issued cell phone, including text messages, chats, emails, and voicemails, regarding the events at issue in the FAC, from the date of the shooting until the end of Evans' tenure at the BPD, and a call log from Defendant Evans' BPD-issued cell phone for the 48-hour period following the shooting.

34.     All documents concerning the "ongoing discussions" between the BPD and BEMS regarding the reluctance of EMS personnel to respond to 911 calls concerning EDPs, due to safety concerns, as testified to by Defendant Evans. *See* Evans Tr. 21-23.

35.     All documents concerning meetings between Defendant Evans and the director of the Massachusetts Department of Mental Health ("DMH") regarding BPD interactions with EDPs, including but not limited to agendas, presentations, notes, and calendar entries related to such meetings, as well as communications between Defendant Evans (or his designees) and DMH regarding BPD's interactions with EDPs. *See id*. 19.

36.     All documents, including conference agendas and materials, remarks, calendar entries, expense reports, and travel receipts, from or concerning all conferences, events, publications or trainings, from 2006 through 2016, that Defendant Evans attended or participated in concerning police interactions with EDPs, including but not limited to the Major City Chiefs Conference, programs organized by the Police Executive Research Foundation, and programs organized by the Ruderman Foundation. *See* Evans Tr. 147-48 & 152-156.


Respectfully submitted,

**HOPE COLEMAN**

by her attorneys,


    */s/ Amy Barsky*
Amy Barsky (BBO# 601111)

12

Daniel N. Marx (BBO# 674523)
William W. Fick (BBO# 650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com
abarsky@fickmarx.com


Oren Sellstrom (BBO# 569045)
Sophia L. Hall (BBO# 684541)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 984-0274
osellstrom@lawyerscom.org
shall@lawyerscom.org

Dated:  October 28, 2021

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

HOPE COLEMAN
        *Plaintiff*,

        v.

CITY OF BOSTON, et al.,
        *Defendants*.

No. 18-cv-10646-MLW

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT KEVIN FINN

Plaintiff Hope Coleman hereby requests, pursuant to the Federal Rules of Civil Procedure, that Defendant Kevin Finn produce the following documents.

## DEFINITIONS AND INSTRUCTIONS

1.      These definitions and instructions shall apply in interpreting the scope of the definitions and instructions as well as the individual specific requests below.

2.      The phrase "the matters described in the First Amended Complaint ('FAC')" includes, but is not limited to, Defendants' interactions with Plaintiff Hope Coleman and Plaintiff's son Terrence Coleman on October 30-31, 2016, including but not limited to every interaction Defendants had with Terrence Coleman at his home, every interaction Defendants had with Hope Coleman before and thereafter, and the investigation(s) thereof.

3.      "You" shall refer to Defendant Kevin Finn and his attorneys, agents, representatives, or anyone else acting on his behalf.

4.      "Communication" or "communications" shall mean any oral or written utterance, notation, depiction, or statement of any nature whatsoever, including but not limited to correspondence, personal conversations, telephone calls, facsimiles, dialogues, discussions,

1

interviews, consultations, emails, text-messages, voicemails, memoranda, agreements, and other verbal and non-verbal forms of exchange.

5.      "Concerning," "relating to," "regarding," "reflecting," and "evidencing" shall be construed in the broadest sense to mean discussing, referring to, reflecting upon, containing, concerning, mentioning, analyzing, constituting, embodying, pertaining to, or evidencing, in whole or in part and in any way, the subject matter of the particular request.

6.      "Document" or "documents" is intended to be interpreted in the broadest possible sense under Rule 34 of the Federal Rules of Civil Procedure and common law interpreting such rules, and includes but is not limited to, all originals, non-identical copies, and drafts of any written, printed, handwritten, recorded or graphic matter of any kind, however produced or reproduced, and regardless of where located, including but not limited to, electronic correspondence (including e-mail messages and text-messages), memoranda, notes, records of any sort of meetings, reports, charts, graphs, checklists, summaries, diaries, desk or pocket calendars, notebooks, invoices, financial statements, bank statements, financial calculations, reports of telephone conversations, any magnetic or other recording tape, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), photograph, microfiche, microfilm, videotape, record or motion picture, and electronic, mechanical, or electrical record or representation of any kind, including but not limited to, tape, cassette, disc, magnetic card or recording. You shall produce non-privileged documents from every personal and business source of potentially responsive information, including but not limited to: (a) physical files, (b) e-mail files, (c) computer hard drive files, (d) files stored on removable storage devices, and (e) shared server files. To the extent practicable, you shall produce all documents in their native format(s) containing original metadata.

2

7.      "Drafts" shall mean any formulation, outline, sketch, conceptualization, or version of a document created prior to the final version of that document.

8.      "Including" shall mean "including without limitation" or "including but not limited to."

9.      The term "person" means any natural person, group of natural persons, legal entity, corporation, partnership, government agency or board, association, proprietorship, organization, or any other business or entity.

10.      "Emotionally Disturbed Persons" or "EDPs" shall refer to persons suffering from any mental illness, mental health disability, or behavioral health disability, or persons in behavioral or mental health crises.

11.      No paragraph shall be construed with reference to any other paragraph for purposes of limitation.

12.      The documents to be produced shall encompass all documents in your possession, custody, or control, as well as all documents in the possession, custody, or control of your departments, employees, attorneys, agents, representatives, financial advisors, accountants, or consultants.

13.      A document shall be deemed to be within your control if you have the right to secure the Document or a copy of the document from another person or entity having possession or custody of the document.

14.      If any source of potentially responsive information maintained by you is no longer in your possession, custody or control, please state and specify in detail the information contained therein, date upon which it ceased to exist, disposition that was made of it, and identity of all persons having knowledge of the contents thereof or of the disposition.

3

15.     If any document or copy thereof was, but is no longer in, your possession, custody, or control, please state and specify in detail for each such document the: date, sender, recipient, persons to whom copies were provided (together with their job titles or badge numbers, as appropriate), information contained therein, date upon which it ceased to exist, disposition that was made of it, and identity of all persons having knowledge of the contents thereof.

16.     Each request for documents seeks production of each document in its entirety, including all attachments, all drafts, and non-identical copies of each document.

17.     If any document is withheld pursuant to a claim of privilege against disclosure, provide a log containing for each such document: (a) the document type (for example email communication, draft letter, etc.), (b) the date shown in or on the document, (c) the author of the document, (d) the identity of all recipients (included addresses and copy recipients), (e) the nature of the privilege against disclosure claimed, and (f) a summary of facts supporting the assertion of such privilege against disclosure. Notwithstanding the assertion of any objection based on a privilege against disclosure, any requested document that contains non-objectionable information responsive to this request should be produced, but that portion of the document for which the objection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

18.     An objection or claim of privilege against disclosure directed to part of a request does not constitute an excuse for failure to respond to the parts of a request for which no objection or claim of privilege against disclosure is made.

19.     Whenever necessary to bring within the scope of this request any information that otherwise might be construed to be outside: (i) the singular of every word shall include the plural, and the plural of any word shall include the singular; (ii) "and" as well as "or" shall be

construed disjunctively and conjunctively; (iii) the terms "any" and "all" shall be read as "any and all"; (iv) "including" shall be read as "including but not limited to"; and (v) the present tense shall include the past tense and future tense, the past tense shall include the present tense and future tense, and the future tense shall include the past tense and present tense.

20.     If there are no documents responsive to any particular request, you shall so state in writing.

21.     Plaintiff reserves the right to propound additional requests for production of documents based upon information subsequently obtained in discovery or for any other permissible reason. This is a continuing request for production of documents. If additional documents are received or discovered after the initial production, all such further documents should be produced as they are received.

## SPECIFIC REQUESTS

1.     All documents regarding the issuance of any firearm(s) to You by the BPD and/or the BPD Firearms Range ("the range") after the matters described in the FAC, including but not limited to related communications with any members of the BPD and/or any members of the Boston Police Patrolmen's Association.

2.     All documents regarding your license to carry firearms, including your application(s) to obtain such a license around the time of the matters described in the FAC.

3.     All documents concerning your clearance to return to active or full duty with the BPD after the matters described in the FAC. *See* Evans Tr. 278-86 (testifying, regarding the Defendants' return to duty, "if they came back, I would have signed"); *id*. at 285 ("I sign a lot of return to duties").

5

4.     Documents sufficient to identify all healthcare providers who provided treatment, including but not limited to medical care, mental health counseling, or physical therapy, to you in connection with any injury or ailment that you claim to have suffered in connection with the matters describes in the FAC.

Respectfully submitted,

**HOPE COLEMAN**

by her attorneys,

_/s/ Amy Barsky_
Amy Barsky (BBO# 601111)
Daniel N. Marx (BBO# 674523)
William W. Fick (BBO# 650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com
wfick@fickmarx.com
abarsky@fickmarx.com


Oren Sellstrom (BBO# 569045)
Sophia L. Hall (BBO# 684541)
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110
(617) 984-0274
osellstrom@lawyerscom.org
shall@lawyerscom.org

Dated:  October 28, 2021



City of Boston
Law

January 21, 2022

<u>**VIA EMAIL**</u>
Daniel N. Marx, Esq.
William W. Fick, Esq.
Rebecca N. Chapman, Esq.
Fick & Marx, LLP
100 Franklin Street – 7th Floor
Boston, MA  02110

Timothy J. Harrington, Esq.
Batool Raza, Esq.
Boston Public Health Commission
1010 Massachusetts Avenue, 6th Floor
Boston, MA 02118

Oren Sellstrom, Esq.
Sophia L. Hall, Esq.
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA  02110

Michael B. Barkley, Esq.
Alexander E. Terry, Esq.
Adler, Cohen, Harvey, Wakeman & Guekguezian LLP
75 Federal Street, 10th Floor
Boston, MA 02110

Re:   <u>Hope Coleman, individually and as the legal representative of the Estate of</u>
<u>Terrence J. Coleman v. City of Boston, Boston Public Health Commission, William</u>
<u>Evans, Sophia Dyer, M.D., Garrett Boyle, and Kevin Finn</u>
**USDC Civil Action No. 18-cv-10646**

Dear Counsel:

Enclosed please find the City of Boston, William Evans, Kevin Finn, and Garrett Boyle's Responses to Plaintiff's 2nd Request for the Production of Documents, along with accompanying documents COB 3885-4616 that have been shared on a Google drive.

Please feel free to contact me with any questions, comments, or concerns.

Very truly yours,

*/s/ Nicole M. O'Connor*

Nicole M. O'Connor
Senior Assistant Corporation Counsel
617-635-4039

Enclosures

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION NO. 18-cv-10646**

HOPE COLEMAN, individually and as the legal
representative of the ESTATE OF TERRENCE J.
COLEMAN,

      Plaintiff,

v.

CITY OF BOSTON, et al.,

      Defendants.

**DEFENDANT GARRETT BOYLE'S RESPONSES TO PLAINTIFF'S SECOND
REQUEST FOR PRODUCTION OF DOCUMENTS**

Defendant, Garrett Boyle ("Boyle"), hereby provides the following response to Plaintiff's Second Request for the Production of Documents:

**REQUEST NO. 1**

All documents regarding the issuance of any firearm(s) to you by the BPD and the BPD Firearms Range ("the range") after the matters described in the FAC, including but not limited to related communications with any members of the BPD and/or any members of the Boston Police Patrolmen's Association.

**RESPONSE NO. 1**

Objection.  Boyle objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  Notwithstanding and without waiving these objections, see bates COB 3885-3886.

**REQUEST NO. 2**

All documents regarding your license to carry firearms, including your application(s) to obtain such a license around the time of the matters described in the FAC.

**RESPONSE NO. 2**

Objection.  Boyle objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  To that end, Boyle is not searching for any documents that may be responsive to this request.

**REQUEST NO. 3**

All documents concerning your clearance to return to active or full duty with the BPD after the matters described in the FAC.  *See* Evans Tr. 278-86 (testifying, regarding the Defendants' return to duty, "if they came back, I would have signed"), *id.* at 285 ("I sign a lot of return to duties").

**RESPONSE NO. 3**

Objection.  Boyle objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  Notwithstanding and without waiving these objections, see COB 3885-3886.

**REQUEST NO. 4**

Documents sufficient to identify all healthcare providers who provided treatment, including but not limited to medical care, mental health counseling, or physical therapy, to you in connection with any injury or ailment that you claim to have suffered in connection with the matters describes [sic] in the FAC.

**RESPONSE NO. 4**

Objection.  Boyle objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  Boyle further objects to the extent this request seeks documents that may be covered by the patient/psychotherapist privilege.  To that end, Boyle is not searching for any documents that may be responsive to this request.

Respectfully submitted:

**DEFENDANT, GARRETT BOYLE**

By his attorneys:

Adam N. Cederbaum
Corporation Counsel


*/s/ Nicole M. O'Connor*
Nicole M. O'Connor (BBO#675535)
Erika P. Reis (BBO# 669930)
Senior Assistants Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4031 (Reis)
Nicole.OConnor@boston.gov
Erika.Reis@boston.gov


## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document, the Garrett Boyle's Responses to Plaintiff's Second Request for the Production of Documents, upon all parties of record via email on the date listed below.


Date: January 21, 2022                     */s/ Nicole M. O'Connor*
                                           Nicole M. O'Connor

3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 18-cv-10646

HOPE COLEMAN, individually and as the legal
representative of the ESTATE OF TERRENCE J.
COLEMAN,

      Plaintiff,

v.

CITY OF BOSTON, et al.,

      Defendants.

## DEFENDANT KEVIN FINN'S RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant Kevin Finn ("Finn"), hereby provides the following response to Plaintiff's Second Request for the Production of Documents:

## REQUEST NO. 1

All documents regarding the issuance of any firearm(s) to You by the BPD and/or the BPD Firearms Range ("the range") after the matters described in the FAC, including but not limited to related communications with any members of the BPD and/or any members of the Boston Police Patrolmen's Association.

## RESPONSE NO. 1

Objection.  Finn objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  Notwithstanding, and without waiving these objections, see bates COB 3887-3888.

## REQUEST NO. 2

All documents regarding your license to carry firearms, including your application(s) to obtain such a license around the time of the matters described in the FAC.

**RESPONSE NO. 2**

<u>Objection.</u>  Finn objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  To that end, Finn is not searching for any documents that may be responsive to this request.

**REQUEST NO. 3**

All documents concerning your clearance to return to active or full duty with the BPD after the matters described in the FAC.  *See* Evans Tr. 278-86 (testifying, regarding the Defendants' return to duty, "if they come back, I would have signed"); *id.* At 285 ("I sign a lot of return to duties").

**RESPONSE NO. 3**

<u>Objection.</u>  Finn objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  Notwithstanding, and without waiving these objections, see COB 3887-3888.

**REQUEST NO. 4**

Documents sufficient to identify all healthcare providers who provided treatment, including but not limited to medical care, mental health counseling, or physical therapy, to you in connection with any injury or ailment that you claim to have suffered in connection with the matters describes [sic] in the FAC.

**RESPONSE NO. 4**

<u>Objection.</u>  Finn objects to this request because it seeks information that is not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  Finn further objects to the extent this request seeks documents that may be covered by the patient/psychotherapist privilege.  To that end, Finn is not searching for any documents that may be responsive to this request.

Respectfully submitted:

**DEFENDANT, KEVIN FINN**

By his attorneys:

Adam N. Cederbaum
Corporation Counsel


/s/ Nicole M. O'Connor
Nicole M. O'Connor (BBO#675535)
Erika P. Reis (BBO# 669930)
Senior Assistants Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4031 (Reis)
Nicole.OConnor@boston.gov
Erika.Reis@boston.gov




**CERTIFICATE OF SERVICE**

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document, Kevin Finn's Responses to Plaintiff's Second Request for the Production of Documents, upon all parties of record via email on the date listed below.


Date: January 21, 2022                    /s/ Nicole M. O'Connor
                                          Nicole M. O'Connor

3

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 18-cv-10646

HOPE COLEMAN, individually and as the legal
representative of the ESTATE OF TERRENCE J.
COLEMAN,

      Plaintiff,

v.

CITY OF BOSTON, et al.,

      Defendants.

## DEFENDANT WILLIAM EVANS' RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant William Evans ("Evans"), hereby provides the following response to Plaintiff's Second Request for the Production of Documents:

**REQUEST NO. 1**

All communications and data from Defendant Evans' BPD-issued cell phone, including text messages, chats, emails, and voicemails, regarding the events at issue in the FAC, from the date of the shooting until the end of Evans' tenure at BPD.

**RESPONSE NO. 1**

No responsive records in Evans' possession, custody or control.

**REQUEST NO. 2**

Call logs from Defendant Evans' BPD-issued cell phone for the 48-hour period following the October 30, 2016 shooting.

**RESPONSE NO. 2**

Objection.  Evans objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs

of this case.  Notwithstanding, and without waiving this objection, no responsive records in Evans'
possession, custody or control.

## REQUEST NO. 3

All documents concerning the "ongoing discussions" between the BPD and BEMS, regarding the
reluctance of EMS personnel to respond to 911 calls concerning EDPs due to safety concerns.  *See*
Evans Tr. 21-23.

## RESPONSE NO. 3

No responsive records in Evans' possession, custody or control.

## REQUEST NO. 4

All documents concerning meetings between Defendant Evans and the director of the
Massachusetts Department of Public Health ("DMH") regarding BPD interactions with EDPs,
including but not limited to agendas, presentations, notes, and calendar entries related to such
meetings, as well as communications between Defendant Evans (or his designees) and DMH
regarding BPD's interactions with EDPs.  *See* Evans Tr. 19.

## RESPONSE NO. 4

To the extent this request seeks email communications, Evans invites the Plaintiff to provide search
terms for any email search.  Otherwise, no responsive records in Evans' possession, custody or
control.

## REQUEST NO. 5

All documents, including conference agendas and materials, calendar entries, expense reports, and
travel receipts, from or concerning all conferences, events, or trainings from 2006 through 2016
that Defendant Evans attended concerning police interactions with EDPs, including but not limited
to those events that Defendant Evans recalls attending:  the Major City Chiefs Conference,
programs organized by the Police Executive Research Foundation, and programs organized by the
Ruderman Foundation.  *See* Evans Tr. 152-156.

## RESPONSE NO. 5

Objection.  Evans objects to this request on grounds that it seeks information that is not relevant
to any claims or defenses in this matter, is not likely to lead to the discovery of admissible evidence,
and is not proportional to the needs of this case.  Notwithstanding, and without waiving this
objection, Evans is currently searching for documents that may be responsive to this request and
will supplement this response accordingly.

**REQUEST NO. 6**

All documents regarding any remarks or training(s) that Defendant Evans delivered at any conferences, events, or trainings from 2006 through 2016, including but not limited to any remarks or training that Defendant Evans delivered at an event (or events) by the Ruderman Foundation, or that Defendant Evans created in connection with the Ruderman [sic] foundation. *See* Evans Tr. 147-148.

**RESPONSE NO. 6**

No responsive records in Evans' possession, custody or control.

Respectfully submitted:

**DEFENDANT, WILLIAM EVANS**

By his attorneys:

Adam N. Cederbaum
Corporation Counsel

*/s/ Nicole M. O'Connor*
Nicole M. O'Connor (BBO#675535)
Erika P. Reis (BBO# 669930)
Senior Assistants Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4031 (Reis)
Nicole.OConnor@boston.gov
Erika.Reis@boston.gov

**CERTIFICATE OF SERVICE**

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document, the William Evans' Responses to Plaintiff's Second Request for the Production of Documents, upon all parties of record via email on the date listed below.

Date: January 21, 2022

*/s/ Nicole M. O'Connor*
Nicole M. O'Connor

3

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 18-cv-10646

HOPE COLEMAN, individually and as the legal
representative of the ESTATE OF TERRENCE J.
COLEMAN,

      Plaintiff,

v.

CITY OF BOSTON, et al.,

      Defendants.

## DEFENDANT CITY OF BOSTON'S RESPONSES TO PLAINTIFF'S SECOND
## REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant City of Boston ("City"), hereby provides the following responses to Plaintiff's
Second Request for the Production of Documents:

### REQUEST NO. 1

All applications, progress reports, and other documents, including communication with "technical
assistance" providers, concerning grants related to the BEST program, any other BPD co-response
or crisis intervention program, and/or BPD interactions with EDPs, excluding dementia-related
grants, whether the grant was ultimately funded or not, and any attachments or materials submitted
in support thereof.

### RESPONSE NO. 1

Objection. The City objects to this request on grounds that it seeks information that is not relevant,
is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs
of this case. The City further objects on grounds that the request is overly broad in time and scope.
To that end, the City has limited its response to documents between 2010-2017. Further, to the
extent this request seeks email communications, the City invites Plaintiff to provide search terms
for any email search. Notwithstanding, without waiving these objections, and with the
understanding that only those documents from 2010-2017 are being produced, see COB 3929-
4255; 4289.

**REQUEST NO. 2**

All documents, including minutes, notes, or communications, concerning or comprising discussion of the BEST program, including without limitation documents concerning meetings referenced by Dr. Jenna Savage with the "Chief of Police," District Captains, Bureau of Field Services, Boston Medical Center and/or BEST personnel, as well as with the City Council. *See* Savage Tr. 46-47, 56-57, 65, & 72-73.

**RESPONSE NO. 2**

Objection. The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. The City further objects on grounds that the request is overly broad in time and scope. To that end, the City has limited its response to documents between 2010-2017. Further, to the extent this request seeks email communications, the City invites Plaintiff to provide search terms for any email search. Notwithstanding, without waiving these objections, and with the understanding that only those documents from 2010-2017 are being produced, see COB 3889-4289.

**REQUEST NO. 3**

All documents, including minutes, notes, or communications, concerning or comprising testimony or public remarks by BPD officials concerning the BEST program, any other BPD co-response or crisis intervention program, or BPD interactions with EDPs.

**RESPONSE NO. 3**

Objection. The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. The City further objects on grounds that the request is overly broad in time and scope. To that end, the City has limited its response to providing documents between 2010-2017. Further, to the extent this request seeks email communications, the City invites Plaintiff to provide search terms for any email search. Notwithstanding, without waiving these objections, and with the understanding that only those documents from 2010-2017 are being produced, see COB 4256-4288.

**REQUEST NO. 4**

All documents, including minutes, notes, or communications, from or concerning meetings of the co-responder subcommittee of the Community Justice/Sequential Intercept Mapping Group. *See id.* 78-81 & 87-88.

**RESPONSE NO. 4**

Objection. The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs

of this case.  The City further objects on grounds that the request is overly broad in time and scope.
To that end, the City has limited its response documents between 2010-2017.  Further, to the extent
this request seeks email communications, the City invites Plaintiff to provide search terms for any
email search.  Notwithstanding, without waiving these objections, and with the understanding that
only those documents from 2010-2017 are being produced, see COB 3889-3895; 3904-3917;
3918-4255.
.

**REQUEST NO. 5**

All documents, including minutes, notes, or communications with or concerning BEST co-
responding clinicians Millie Sheppard, Mat Salch, Jennifer Grieco, Melissa Reilly, and supervisor
Lauren Sneider, *See id*. 65-66.

**RESPONSE NO. 5**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant,
is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs
of this case.  The City further objects on grounds that the request is overly broad in time and scope.
To that end, the City has limited its response to documents between 2010-2017.  Further, to the
extent this request seeks email communications, the City invites Plaintiff to provide search terms
for any email search.  Notwithstanding, without waiving these objections, and with the
understanding that only those documents from 2010-2017 are being produced, see COB 3889-
4255.

**REQUEST NO. 6**

All documents regarding the use of crisis intervention team ("CIT") training by the BPD or its
officers, including but not limited to applications for grants or funding for any CIT program,
materials, curriculum, program statements, and communications, *see id.* 9-11, as well as the same
documents for outside CIT training which BPD officers have attended, *see id.* 36-38.

**RESPONSE NO. 6**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant,
is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs
of this case.  The City further objects on grounds that the request seeks documents that are not in
its possession, custody, or control (i.e., documents for outside CIT training which BPD officers
have attended).  The City further objects on grounds that the request is overly broad in time and
scope.   To that end, the City has limited its response documents between 2010-2017.
Notwithstanding, without waiving these objections, and with the understanding that only those
documents from 2010-2017 are being produced, no responsive documents in the City's possession,
custody, or control.

**REQUEST NO. 7**

All Commissioner Memos concerning the BEST program since 2011, including any updated version(s) of the Commission's Memo dated {INSERT MONTH AND DAY] 2011.

**RESPONSE NO. 7**

See COB 3896-3903.

**REQUEST NO. 8**

All documents related to the research, writing, publication or production of Melissa S. Morabito, Jenna Savage, Lauren Sneider & Kellie Wallace, "Police Response to People with Mental Illnesses in a Major U.S. City: The Boston Experience with the Co-Responder Model."  13:8 *Victims & Offenders* 1093-1105 (2018).

**RESPONSE NO. 8**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects to this request on grounds that it is unduly burdensome to compile all of these research materials.  To that end, the City is not conducting a search for any records that may be responsive to this request.

**REQUEST NO. 9**

From 2010 through 2016, all documents concerning or comprising public records requests to the BPD for data concerning BPD's interaction with EDPs, as well as the BPD's response to those requests for data.

**RESPONSE NO. 9**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects on grounds that searching for these materials would be unduly burdensome because the City's public records tracking software was not installed until late 2016 and the City would need to manually review every public records request between 2010 and 2016 to comply with this request.  To that end, the City is not conducting a search for any records that may be responsive to this request.

**REQUEST NO. 10**

For each year from 2010 through 2016, documents, including without limitation stored data, sufficient to identify the race, gender, and disability/EDP status of each person subjected to a use of force by any BPD officer(s), as well as the district in which each incident occurred and the type of call that resulted in the use of force, including but not limited to:

4

a. The number of people fatally shot by any BPD officer(s) and the number of such people who were identified as EDP's (or if BPD does not track that specific data, the number of calls coded as EDP that resulted in a fatal shooting);

b. The number of people non-fatally shot by any BPD officer(s) and the number of such people who were identified as EDPs (or if BPD does not track that specific data, the number of calls coded as EDP that resulted in a non-fatal shooting);

c. The number of people tased by any BPD officer(s) and the number of such people who were identified as EDPs (or if BPD does not track that specific data, the number of calls coded as EDP that involved the use of a taser);

d. The number of people "pepper-sprayed" or subjected to OC spray by any BPD officer(s) and the number of such people who were identified as EPDs (or if BPD does not track that specific data, the number of calls coded as EDP that involved the use of pepper or OC spray);

e. The number of people struck with batons by any BPD officer and the number of such people who were identified as EPDs (or if BPD does not track that specific data, the number of calls coded as EDP that involved a baton strike or strikes);

f. The number of BPD officers injured while on duty by civilians; and

g. The number of BPD officers injured while on duty by EPDs.

If the BPD does not track the specific data requested, please affirmatively so state for each sub-part above.

## RESPONSE NO. 10

<u>Objection.</u>  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case, particularly to the extent it asks for 1) information regarding every type of use of force as well as the race and gender of the persons involved and 2) the number of BPD officers injured on duty by civilians.  The City further objects on grounds that searching for responsive documents would be unduly burdensome in that every police report written between 2010 and 2016 would need to be reviewed in order to determine whether force was used and whether the matter involved an EDP.  The City further objects on grounds that the request asks the City to create documents. To that end, the City is not searching for documents that may be responsive to this request.

## REQUEST NO. 11

For each year 2010 through 2016, documents, including without limitation stored data, sufficient to establish the resolution of all EDP calls for service (i.e. the numbers of calls that resulted in arrests, hospitalizations, citations, etc.).

## RESPONSE NO. 11

<u>Objection.</u>  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs

of this case.  The City further objects on grounds that the request is unduly burdensome in that every police report between 2010 and 2016 would need to be reviewed to determine whether it involved an EDP and how it resolved.  To that end, the City is not searching for documents that may be responsive to this request.

**REQUEST NO. 12**

For each year from 2010 through 2016, documents, including without limitation stored data, sufficient to identify all uses of force against persons with disabilities, including EDPs, and all documents concerning these incidents.

**RESPONSE NO. 12**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects on grounds that searching for responsive documents would be unduly burdensome, if not impossible, because the City does not inquire about the disability status of each person with whom it interacts.  The City further objects on grounds that searching for responsive documents would be unduly burdensome because every police report between 2010 and 2016 would need to be reviewed. To that end, the City is not searching for any responsive documents that may be responsive to this request.

**REQUEST NO. 13**

All documents, including without limitation stored data, concerning BPD's auditing, assessment, analysis or tracking of the quality or outcomes of its interactions with EDPs.

**RESPONSE NO. 13**

See 3889-4289.

**REQUEST NO. 14**

All documents concerning the issuance of firearms to Defendants Boyle and Finn by the BPD and/or the BPD Firearms Range ("the range"), following the matters described in the FAC, including but not limited to communications involving Defendant William Evans, former BPPA President Pat Rose, and/or BPD officer and BPPA representative Thomas Antonio regarding such firearms, as well as Defendants Finn and Boyle's licenses to carry firearms and their application to obtain such licenses around the time of matters described in the FAC.  *See* Pratt Tr. 59 ("someone would need an order before a weapon was handed out.  They just wouldn't hand out a firearm to somebody").

**RESPONSE NO. 14**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs

of this case.  To that end, the City is not searching for any records regarding personal license to carry firearms applications that were submitted by Finn or Boyle.  Notwithstanding and without waiving these objections, and with that understanding that personal applications for LTCs are not being produced, see COB 3885-3888.

## REQUEST NO. 15
All BPD rules, regulations, or policies concerning the issuance (or re-issuance) of firearms to BPD officers after an Officer-Involved-Shooting ("OIS").  If the BPD has no rules, regulations, or policies concerning the issuance (or re-issuance) of firearms to officers after an OIS, please affirmatively state so in writing.  *See id*.

## RESPONSE NO. 15
Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects on grounds that this request asks the City to create a document in response to this request.  Notwithstanding, and without waiving these objections, no responsive documents in the City' possession, custody, or control.

## REQUEST NO. 16
All documents concerning Defendants Boyle's and Finn's return to full duty after the matters described in the FAC, and any BPD rules, policies, or procedures concerning officers' mental, emotional, physical, and psychological fitness to return to duty after an OIS.  *See* Evans Tr. 278-86 (testifying, regarding the Defendant-officers' return to duty, "if they came back, I would have signed"); *id.* At 286 ("I sign a lot of return to duties").  IF the BPD has no rules, regulations, or policies concerning officers' return to duty after an OIS, please affirmatively so state in writing.

## RESPONSE NO. 16
Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects to the extent this request asks it to create a document.  The City further objects to the extent this request seeks medical records of Finn or Boyle regarding their return to work.   Notwithstanding, without waiving these objections, and with the understanding that any medical records are not being produced, see 3885-3888.

## REQUEST NO. 17
All BPD rules, polices, or guidance concerning the rendering of first aid or emergency medical assistance to civilians injured during an OIS.

## RESPONSE NO. 17
See COB 4290-4292.

**REQUEST NO. 18**

All BPD rules, policies, or guidance concerning the writing of BPD incident reports and/or "Form 26" reports.  *See* Evans Tr. 223-26, 228.

**RESPONSE NO. 18**

See COB 4293-4467.

**REQUEST NO. 19**

All documents concerning or comprising BPD training materials addressing how to conduct FDIT investigations, as well as attendance and test records for Sgt. Det. Thomas Pratt from such training. *See* Pratt Tr. 25 ("we all went through….I believe it's 160 hours of comprehensive curriculum in investigation"; "we also had a 40-hour in-service training at the police academy with the FDIT team"); *id.* 26 ("after the 160 hours….[t]here was another 40 hours for … people who were going to be put on the FDIT team"); *id.* 29-31 (referencing a training at the "Haige school").

**RESPONSE NO. 19**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  To that end, the City is not searching for any responsive documents that may exist.

**REQUEST NO. 20**

All documents concerning the factual statement accompanying the presentation of the Walter Scott medal concerning the events in the FAC.

**RESPONSE NO. 20**

No responsive records in the City's possession, custody, or control other than what has already been produced.

**REQUEST NO. 21**

All documents, including communications, concerning interviews by Sgt. Det. John Broderick of Defendant Boyle, Defendant Finn, EMT Terrence Mentele, and/or EMT Kyle MacKinnon at the Boston Medical Center on October 31, 2016, after the shooting of Mr. Coleman.  *See* MacKinnon Tr. At 213 ("I remember speaking with a Boston police detective in the ER….[T]hey just asked me some basic details about  what had happened").

**RESPONSE NO. 21**

No responsive records in the City's possession, custody, or control other than what has already been produced.

**REQUEST NO. 22**

All documents from any lawsuit, from 2000 to the present, against the BPD or against the City concerning the BPD, alleging inappropriate treatment of persons with disabilities (including EDPs), the inappropriate use of force, and/or discrimination against civilians (non-BPD employees or applicants for employment) based on race.

**RESPONSE NO. 22**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case, particularly to the extent it seeks lawsuits concerning race discrimination and use of force that do not involve a firearm discharge.  The City further objects on grounds that this request is overly broad in time and scope.  The City further objects on grounds that this request seeks information that falls under attorney/client privilege or constitutes attorney work product.  The City further objects on grounds that the request is unduly burdensome to the extent it asks the City to produce every document associated with every lawsuit alleging inappropriate treatment of persons with disabilities, inappropriate use of force and/or discrimination based on race.  The City further objects on grounds that the request is unduly burdensome because the City would need to review every lawsuit ever filed to determine if there was an allegation that the person was disabled.  To that end, the City has limited its response to filed complaints regarding officer-involved shootings between 2010-present.  Notwithstanding and without waiving these objections, and with the understanding that only filed complaints regarding officer-involved shootings between 2010-present are being produced, see COB 4468-4616.

**REQUEST NO. 23**

All documents concerning any audit, site visit, inquiry, or investigation of the BPD or BEMS by the United States Department of Justice, the Massachusetts Attorney General's Office, or any other *external* body, concerning civil rights violations by the BPD or BEMS, BPD or BEMS compliance with the ADA or section 504, and/or BPD or BEMS use of force.

**RESPONSE NO. 23**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects on grounds that the request seeks documents that are not in its possession custody or control (i.e., documents concerning BEMS).  The City further objects on grounds that this request is overly broad in time and scope.  To that end, the City is only producing responsive records from 2013-2017.  The City is currently searching for documents that may be responsive to this request and will supplement accordingly.

**REQUEST NO. 24**

All documents concerning any *internal* investigation by the BPD or BEMS, or any other entity engaged by the BPD or BEMS, concerning the BPD or BEMS's record on civil rights issues, use of force, compliance with the ADA or section 504, or interactions with people with disabilities.

**RESPONSE NO. 24**

<u>Objection.</u>  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects on grounds that the request seeks documents that are not in its possession custody or control (i.e., documents concerning BEMS).  The City further objects on grounds that this request is overly broad in time and scope.  To that end, the City is only producing responsive records from 2013-2017.  The City is currently searching for documents that may be responsive to this request and will supplement accordingly.

**REQUEST NO. 25**

All rules, policies, and procedures for the City, the BPD, or BEMS concerning the filing of ADA and/or section 504 complaints.

**RESPONSE NO. 25**

The procedure for filing an ADA complaint is publicly available online and can be found at: https://www.boston.gov/departments/disabilities-commission/how-file-ada-grievance-boston

**REQUEST NO. 26**

All documents concerning or comprising ADA or section 504 complaints or requests for accommodation filed with or concerning the BPD or BEMS, from 2005 to the present.

**RESPONSE NO. 26**

<u>Objection.</u>  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects on grounds that this request is overly broad in time and scope. The City further objects on grounds that this request seeks confidential medical information of non-parties.  Notwithstanding, without waiving these objections, and with the understanding that only ADA complaints concerning BPD from 2010-2017 are being produced, the City is currently searching for responsive records and will supplement this response accordingly.

**REQUEST NO. 27**

All documents concerning or comprising BPD training materials concerning the ADA and/or accommodations for EDPs, including any training simulations involving EDPs.

**RESPONSE NO. 27**

No responsive records in the City's possession, custody or control other than what has already been produced.

**REQUEST NO. 28**

Documents sufficient to identify all healthcare providers who provided treatment, including but not limited to medical care, mental health counseling, or physical therapy, to Defendants Finn and Boyle, in connection with any injury or ailment they claim to have suffered in connection with the matters describes [sic] in the FAC.

**RESPONSE NO. 28**

Objection. The City objects to Request No. 28 on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. The City further objects to the extent the request seeks records governed by the patient/psychotherapist privilege. Notwithstanding, and without waiving these objections, no responsive records in the City's possession, custody or control.

**REQUEST NO. 29**

All documents concerning or comprising the in-service EDP training referenced by Nancy Cellucci.

**RESPONSE NO. 29**

No responsive records in the City's possession, custody or control other than what has already been produced.

**REQUEST NO. 30**

All documents concerning or comprising communications between the City or the City's ADA Coordinator and the BPD, concerning ADA and/or section 504 compliance.

**RESPONSE NO. 30**

Objection. The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. The City further objects on grounds that the request is overly broad in time and scope. To that end, the City agrees only to search for any responsive records between 2010 and 2017. The City is currently searching for documents that may be responsive to this request and will supplement accordingly.

**REQUEST NO. 31**

All documents concerning the ADA Coordinator McCosh's attendance at monthly BEST meetings, as well as all documents concerning or comprising ADA training(s) given by ADA Coordinator McCosh at meeting(s) of the "department heads," as indicated in her testimony.

**RESPONSE NO. 31**

Objection.  The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case.  The City further objects on grounds that the request is overly broad in time and scope. To that end, the City agrees only to search for any responsive records between 2010 and 2017. The City is currently searching for documents that may be responsive to this request and will supplement accordingly.

**REQUEST NO. 32**

All documents, including without limitation emails and attachments, concerning or comprising communications between the New England ADA Technical Assistance Center and ADA Coordinator McCosh in preparation for her testimony on October 13, 2021.

**RESPONSE NO. 32**

The City is currently searching for documents that may be responsive to this request and will supplement accordingly.

**REQUEST NO. 33**

All communications and data from Defendant Evans' BPD-issued cell phone, including text messages, chats, emails, and voicemails regarding the events at issue in the FAC, from the date of the shooting until the end of Evans' tenure at the BPD, and a call log from Defendant Evans' BPD-issued cell phone for the 48-hour period following the shooting.

**RESPONSE NO. 33**

No responsive records in the City's possession, custody or control.

**REQUEST NO. 34**

All documents concerning the "ongoing discussions" between the BPD and BEMS regarding the reluctance of EMS personnel to respond to 911 calls concerning EDPs, due to safety concerns, as testified to by Defendant Evans.  *See* Evans Tr. 21-23.

**RESPONSE NO. 34**

No responsive records in the City's possession, custody or control.

**REQUEST NO. 35**

All documents concerning meetings between Defendant Evans and the director of the Massachusetts Department of Mental health ("DMH") regarding BPD interactions with EDPs, including but not limited to agendas, presentations, notes, and calendar entries related to such meetings, as well as communications between Defendant Evans (or his designees) and DMH regarding BPD's interactions with EDPs. *See id.* 19.

**RESPONSE NO. 35**

Objection. The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. The City further objects on grounds that this request is overly broad in time and scope. To the extent this request seeks email communications, the City invites Plaintiff to provide search terms for any email search. Otherwise, notwithstanding and without waiving these objections, no responsive documents in the City's possession, custody or control.

**REQUEST NO. 36**

All documents, including conference agendas and materials, remarks, calendar entries, expense reports, and travel receipts, from or concerning all conferences, events, publications or trainings, from 2006 through 2016, that Defendant Evans attended or participated in concerning police interactions with EDPs, including but not limited to the Major City Chiefs Conference, programs organized by the Police Executive Research Foundation, and programs organized by the Ruderman Foundation. *See* Evans Tr. 147-48 & 152-156.

**RESPONSE NO. 36**

Objection. The City objects to this request on grounds that it seeks information that is not relevant, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case. The City further objects on grounds that this request is overly broad in time and scope. Notwithstanding, and without waiving these objections, the City is searching for documents that may be responsive to this request and will supplement this response accordingly.

Respectfully submitted:

**DEFENDANT, CITY OF BOSTON**

By its attorneys:

Adam N. Cederbaum
Corporation Counsel


*/s/ Nicole M. O'Connor*
Nicole M. O'Connor (BBO#675535)
Erika P. Reis (BBO# 669930)
Senior Assistants Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4031 (Reis)
Nicole.OConnor@boston.gov
Erika.Reis@boston.gov



## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document, the City of Boston's Responses to Plaintiff's Second Request for the Production of Documents, upon all parties of record via email on the date listed below.


Date: January 21, 2022                    */s/ Nicole M. O'Connor*
                                          Nicole M. O'Connor

14



# FICK & MARX LLP

24 Federal Street, Fourth Floor, Boston, MA 02110

**Amy Barsky**
TEL: 857-321-8360
FAX: 857-321-8361
ABARSKY@FICKMARX.COM

February 2, 2022

<u>**BY EMAIL**</u>

Nicole M. O'Connor, Esq.
Nieve Anjomi, Esq.
City of Boston Law Department
One City Hall Plaza, Room 615
Boston, MA 02201

> Re:  ***Coleman v. City of Boston, et al.*, 18-cv-10646-MLW**

Dear Counsel:

Having reviewed your responses (dated January 21, 2022) to our Second Request for Production of Documents (2d RFP) to Defendants City of Boston (City or COB), William Evans, Kevin Finn, and Garrett Boyle (dated October 28, 2021), we write to bring to your attention a number of remaining discovery issues. If we cannot reach agreement to resolve these issues within the next week, we will need to raise them by motion to the Court given the current discovery deadlines. We address four categories of discovery: (A) discovery you have declined to provide; (B) discovery you agreed to provide but have not yet produced; and (C) discovery you produced on January 21,2022, but which is incomplete and/or we believe should have been produced sooner, prior to individual witness and/or 30(b)(6) depositions; and (4) deficiencies in deposition witness testimony.

## A. DISCOVERY YOU DECLINED TO PROVIDE.

### 1. *Defendants Finn and Boyle's medical/mental health treatment providers and records.* (2d RFP 28 to COB; 2d RFP 4 to Boyle & Finn; 1st RFP 7 to COB; 1st RFP 6 to Boyle & Finn)

In response to 2d RFP 28 to COB and 2d RFP 4 to Boyle & Finn, you declined to produce Boyle and Finn's treatment records on the grounds that they are "not relevant.... [and] may be covered by the patient/psychotherapist privilege." We disagree.

The documents are relevant in two respects. Plaintiff Hope Coleman claims Defendants Finn and Boyle are responsible for the homicide of her son, Terrence

Coleman. Finn and Boyle claim, as does the City, that they were forced to shoot Mr. Coleman because he was attacking them and the EMTs with a knife. Both Finn and Boyle claim they were injured during a physical struggle with Mr. Coleman in the foyer, immediately before Boyle fired his service weapon. Both officers testified to physical injuries they sustained during the incident and weeks of time they were out on medical leave from the BPD. Fed. R. Civ. P. 26 makes discoverable information that is "relevant to any party's claim or defense." The nature and extent of the officers' injuries is probative of what actually happened in the foyer with Mr. Coleman. Moreover, the records may either corroborate or discredit the officers' account of the events of October 30, 2016, and are therefore relevant to document their alleged injuries and to their credibility. The treatment records are also relevant to Plaintiff's claims that the BPD reached pre-ordained conclusions about what happened, Evans made unfounded statements to the media, and the investigation of the events in the FAC was inadequate. Notably, the documents concerning the reissuance of firearms to the officers on November 2, 2016, state that each officer had "passed a physical/medical and/or psychological exam" and was cleared for a full return to duty as of that date. Both officers testified, however, that they were out on medical leave for at least several weeks. *See* Finn T.83-88; Boyle T.123-24. This discrepancy is also a relevant subject of inquiry.

The protective order in this case prevents any dissemination of the officers' treatment records thus addressing privacy concerns. Any claim of privilege should be logged with sufficient detail to assess the factual and legal basis of the claim.

### 2. Defendants Finn and Boyle's License to Carry (LTC) paperwork, filled out shortly after the events in the FAC.<br>(2d RFP to COB 16; 2d RFP to Boyle and Finn 2)

The COB, Boyle, and Finn declined to provide the officers' LTC paperwork on the stated grounds that it is "not relevant to any claims or defenses asserted in this matter, is not likely to lead to the discovery of admissible evidence, and is not proportional to the needs of this case." Finn and Boyle Resp. to 2d RFP 2.

The BPD issued firearms to Finn and Boyle within 72 hours of Boyle shooting and killing Mr. Coleman. The officers testified that they were contacted by Pat Rose, the now-disgraced former head of the Boston Police Patrolmen's Association (BPPA), and told that notwithstanding their separation from their service weapons pursuant to the investigation, the BPD Firing Range would "give [them] a gun." Finn T.186. They testified that Pat Rose personally escorted them downstairs, after their FDIT interviews, to fill out the LTC paperwork. *See* Finn T.244-45; Boyle T.137-40. At the same time, the City asserts the officers did not need LTCs because they were authorized to possess the firearms in their capacity as police officers, even though they were not reporting to work, because they were out on medical leave. The paperwork authorizing the issuance of the firearms states that they were

medically cleared to return to duty. The LTC applications are relevant and probative of the chronology of events, including when they applied for the LTCs, who assisted them in applying, who received the applications, when they were processed, and when any licenses were granted, which information can then be compared to when they were given weapons by the BPD. The officers did not apply for the LTCs on their own, in their personal capacity. They did so at the direction of the BPPA president and then-officer Pat Rose, immediately after their FDIT interviews, in the same building and to the same entity.

### 3. *BPD communications related to the re-issuance of firearms to the officers after the events in the FAC.* (3d RFP to COB 14)

Plaintiff's 2d RFP 14 to COB sought "all documents concerning the issuance of firearms to Defendants Boyle and Finn... following the matters described in the FAC, including but not limited to communications involving Defendant William Evans, ... Pat Rose, and/or ... Thomas Antonino regarding such firearms." No communications concerning the re-issuance of firearms have been produced. Has the City searched for such communications? We request an explanation of the efforts the City has undertaken to search for communications. We are willing to limit the timeframe for any such communications to the period from October 30, 2016 to January 31, 2017.

### 4. *Data about the BPD's use of force.* (2d RFP to COB 10.a-g)

Plaintiff requested seven sub-categories of information about the BPD's use of force against people of color, EDPs, and people with disabilities, from 2010-2016. *See* 2d RFP10.a-g to COB. The City expressly declined to search for records, stating that the request is "unduly burdensome" and "not proportional to the needs of this case." COB Resp. to 2d RFP 10 ("To that end, the City is not searching for documents that may be responsive to this request"). This response is unsatisfactory.

At minimum, the City must identify the volume of responsive records available and the length of time it would take to compile and produce them. *See* Fed. R. Civ. P. 26 Advs. Cmt. n. 2006 ("[t]he responding party has the burden as to one aspect of the inquiry— [identify] whether the identified sources are not reasonably accessible in light of the burdens and costs required to search for, retrieve, and produce whatever responsive information may be found"). Moreover, as communicated previously, Plaintiff has sought similar information through a public records request to the BPD. The BPD is in the process of compiling at least some of this data. Thus, the City could work with the BPD's "data arm," Savage T.6, to compile and produce the requested information. *Cf. Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 2008 U.S. Dist. LEXIS 25915 (D. Conn. 2008)

(compelling requested discovery where responding party had not demonstrated that producing requested documents would have imposed undue burden, particularly in view of fact that it presumably relied on these same documents in creating chart of its sales that it previously produced).

Plaintiff recognizes the request imposes a burden. Some burden, however, is to be expected. *See, e.g., See Hinton v. Conner*, No. 04-cv-04, 225 F.R.D. 513, 2005 U.S. Dist. LEXIS 94 (M.D.N.C. Jan. 5 2005) (in whistleblower case against city/employer, production of certain discipline records of other city employees that would take city's staff 16 hours to review and copy was not unduly burdensome under FRCP 26(b)(2)). The question is whether the burden is *undue*, in light of the circumstances of the case. *See* Fed. R. Civ. P. 26 Advs. Com. n. 2006 (listing five factors that go into "whether th[e] burdens and costs can be justified in the circumstances of the case").

Plaintiff's 2d RFP 10 to COB seeks documents showing the number of times the BPD has, respectively: fatally shot, non-fatally shot, tased, OC sprayed, and struck civilians with batons. 2d RFP 10.a-e. The City states it would have to review "every police report written between 2010 and 2016 to determine whether force was used and whether the matter involved an EDP." With respect to the contention the City would have to manually read every police report in order to capture or track uses of force, that blanket statement is clearly overbroad. We would expect that the BPD tracks *some* data about its uses of force. At minimum, BPD rules require the investigation and reporting of any discharge of a firearm, taser, or "less lethal shotgun," and any "strik[e] with an[] object" or use of an "incapacitating agent." BPD Rules 303, 303A, 303B, 403. And even if the BPD did not track aggregated data on its uses of force (which Plaintiff doubts), at minimum it should produce the limited number of reports concerning all fatal and non-fatal shootings over a six-year period of time requested.

Plaintiff is willing to work with the City to narrow the request or accept data in the form in which it is available, but the City has not stated what efforts have been undertaken to determine (a) what data is tracked and therefore readily available, and (b) the volume of records at issue for each sub-category. *See* Savage T.6 (describing the "data arm" of the BPD's Office of Research and Development and her handling of "a lot of the externally received informational requests, be it from The Globe or from... someone doing a research project ...").

The City further objects that it would have to manually read every report to determine "whether the matter involved an EDP." But to the extent the BPD does not track EDP status, Plaintiff requested that the City use "calls coded as EDP" as a proxy. We would expect that *some* information about the outcome of 911 calls to the BPD would be tracked. And Jenna Savage testified that the BPD tracked the outcome of EDP calls in connection with the BEST program. *See* Savage T.94-96.

Thus, we ask that you promptly determine what data is available, the volume of records at issue, and the amount of time it would take the City to respond to Plaintiff's 2d Request 10.a-e. *Cf. Hinton*, 225 F.R.D. 513, 517, 2005 U.S. Dist. LEXIS 94 ("the fact that it might take sixteen hours to obtain the records for the years 2000 through 2002 is not shocking or otherwise extraordinary").

With regard to the request for information about officer injuries, 2d RFP 10.f-g, we would expect the BPD to keep track of the safety of its officers, in accordance with its obligation to provide a safe workplace and its interest in officer safety. Again, we ask the City to inquire about what information is available and determine how long it would take the City to search for, compile, and produce responsive records. It is unacceptable for the City to simply decline to search for responsive documents.

The requested data is relevant to Plaintiff's *Monell* claim against the City. Given the need for the information, and in the absence of any effort by the City to quantify the burden of responding, Plaintiff maintains that the burden on the City is not *undue*. *See* Fed R. Civ. P. 26 Adv. Cmt. n. 2006 (even information that is not "readily available" must be produced if "th[e] burdens and costs can be justified in the circumstances").

### 5. *Documents related to the Morabito & Savage article about the BEST program.*
   **(2d RFP to City 8)**

Dr. Jenna Savage and Dr. Melissa Morabito conducted a study of the BPD's BEST co-responder program and published its findings in the article cited. The City declined to produce any documents related to the production of the article on the ground that it would be "unduly burdensome to compile all of these research materials." COB Resp. to 2d RFP 8. But the City has not identified any efforts it has undertaken to determine the scope or volume of materials available or how long it would take to retrieve them.

## B. DISCOVERY YOU AGREE TO PROVIDE BUT HAVE NOT YET PRODUCED.

The City's recent responses indicate that it is searching and will supplement its production with:

- External investigations regarding civil rights, ADA/504, use of force (2d RFP 23 to COB)
- Internal investigations regarding civil rights, ADA/504, use of force (2d RFP 24 to COB)

- ADA/504 complaints concerning the BPD or BEMS, from 2005-present (2d RFP 26 to COB)
- Communications and trainings by and involving the ADA Coordinator ((2d RFPs 30-32 to COB)
- Evans conference attendance and materials (2d RFP 36 to COB, 2d RFP 5 to Evans)

Please produce these materials right away. The firm deadline agreed to by the City and ordered by the Court was January 21, 2022. [*See* D.E. 105, 106] We served our second set of requests on October 28, 2021 – more than 90 days ago. And some of these materials, like Evans' conference attendance materials, we have requested for nearly a year. *See* First RFP 8 to Evans (Sept. 6, 2019) (seeking "documents concerning or comprising training in which you participated related to interactions with disabled persons...."); Evans T.147-48 (Oct. 28, 2020) (Q. What did you do with the Ruderman Foundation? A. ... I think I was a keynote speaker at one of their events on mental health in policing.... . I think I spoke at an event on the importance of mental health training for our police officers"); Pl. Deficiency Ltr, 2.12.21, RFP 8A & ROG 9 to Evans (explicitly referencing Evans' testimony and seeking materials from conferences and events). Please refer to our deficiency letter of February 12, 2021, addressing RFP 8, for the specific material sought.

## C. DISCOVERY YOU PRODUCED ABOUT WHICH SERIOUS QUESTIONS REMAIN.

Some of the materials in your January 21, 2022 production appear either incomplete and/or raise questions about why they were not produced sooner.

### 1. *Firearms re-issuance paperwork, COB 3885-88.*

COB 3885-88 should have been produced years ago. These documents contain attestations by both occupational health and Internal Affairs (IA) at the BPD that Boyle and Finn were physically and mentally cleared to return to full duty and that "a review of IAD records and other information supplied" led to the conclusion that these officers should be re-issued firearms, within 72 hours of the events in the FAC. The documents are relevant to both what happened during the incident in the foyer and the BPD's investigation. The documents should have been turned over as part of the City's automatic discovery obligations in 2019 and its continuing duty to supplement. *Cf.* COB Auto. Discl., Mar. 12, 2019 at 11-12 (omitting from the list of reports *any* report by IA). They should have been turned over in response to Plaintiff's First RFP 6, which sought "all documents relating to the matters described in the FAC and any investigation thereof." (Sept. 6, 2019). Plaintiff deposed Commissioners Evans and Gross without having seen an IA report. Then, in the middle of the questioning of Gross about any IA investigation, Attorney Reis stated, for the first time: "Just to be clear, I can represent that there is an Internal

Affairs investigation on this case. I don't know if there's some confusion there, but that's not the case here. So there is an Internal Affairs investigation. Whether it's pending or not is a different story." Gross T.241 (Dec. 4, 2020).

On December 12, 2020 – nearly two years after the FAC was filed – the City turned over the IA report. *See* Pl. Ltr., Feb. 12, 2021. By letter, Plaintiff again explicitly requested a full set of all records possessed and/or reviewed by IA. *See id.*, RFP 6.A.i-v, B, C. The officers were deposed on March 9 & 11, 2021, wherein the testimony surfaced about the re-issuance of firearms in early November, 2016. Plaintiff then explicitly requested all documents concerning the issuance of those firearms. *See* Pl. Ltr., Apr. 22, 2021. It is very concerning that the City waited nearly three years into this litigation to produce these documents. This precluded Plaintiff from questioning any of the witnesses about the documents, from the individual officers, to Evans, to the witnesses on the City's behalf.

Moreover, the documents themselves appear to be incomplete and suggest that further documents exist. For instance:

- The attestation by the Bureau of Administration and Technology on each page of COB 3885-88 references an "attached sheet." Please produce it.
- The Bureau of Professional Standards, on each of the four pages, attests that its Chief has "review[ed] IAD records and other information supplied to me." Where are those records and information? The only IA document that has been produced to Plaintiff is dated April 30, 2018 – more than a year after COB 3885-88 were signed.
- The City has not provided any documents concerning the issuance of specific firearms to Finn and Boyle identifying, for instance, the serial number of the weapon, the date and place of issuance, and a signature from the recipient. We would expect such documents to exist. *Cf.* Finn T.250 ("There's a logbook of every firearm that moves in and out of there. It would have been signed out at the range").

Please respond this week identifying what additional documents exist and, for each, either produce them or identify with specificity the grounds for refusal.

### 2. *Grant materials, meetings, notes, and communications regarding BEST program, COB 3889-3917, 3929-4255.*

The BEST program – BPD's only program to address the needs of EDPs – has been at issue in this case for at least a year. Plaintiff's 1st RFP 18 to the City sought all audits, reviews or assessments of the BPD's provision of service to EDPs.[1]

_____

[1] Specifically, RFP 18 requested: "All documents concerning or comprising, for the last 10 years, all audits, reviews, and/or assessments of your rules, regulations,

February 2, 2022
Page 8 of 9

Plaintiff's March 27, 2020 deficiency letter specifically called the BEST grant to the City's attention. At the Rule 30(b)(6) deposition of the City on this topic, Dr. Jenna Savage testified to the existence of many of these materials, including minutes, agendas and notes from multiple meetings with multiple participants. She further testified that she was not asked to review any of these materials in preparation for the deposition. *See* Pl. Ltr., Sept. 27, 2021. The failure to adequately prepare the witness and the failure to disclose the documents compound each other and prevented a full and complete discussion of this topic. We request to re-open her deposition.

### D. RULE 30(b)(6) DEPOSITION ISSUES.

In a letter dated September 27, 2021, we brought to your attention a number of deficiencies in the testimony of the City's Rule 30(b)(6) witnesses. We incorporate the entirety of that letter here. Of particular importance, we still have not been able to obtain a clear answer to the very basic question of what training Finn and Boyle received on the topics of de-escalation, use of force, and mental health/ EDP issues, and which materials were used in the training(s) they received. *See* Sept. 27 Ltr. at 3; Owens T.46-47. This issue could either be resolved by the City in writing, or by the re-opening of the deposition on the training topic. Similarly, a number of questions about to the Terrence Coleman shooting and investigation thereof (Topic 1) remain unanswered, as highlighted in our letters of July 14, 2021, and September 27, 2021.

In addition to the deficiencies previously brought to your attention in our September 27 letter, deponent Nancy Cellucci, designated to address the topic of EDP training on October 13, 2021, was unable to answer questions concerning:

- Whether any written materials were given out during EDP training to class of 54-14, Cellucci T.22;
- Whether in service EDP training would be reflected on an officer's transcript, *id.* 36-38;
- What Boyle and Finn's in-service consisted of in 2015 and 2016, *id.* 37-38; and

---

policies, customs, practices, programs, and/or procedures concerning police and/or EMT interactions with disabled and/or emotionally disturbed persons, response to 911 or emergency calls for medical assistance relating to such persons, use of force, and/or ADA compliance." "Documents" was defined to include "electronic correspondence (including e-mail messages and text-messages), memoranda, notes, records of any sort of meetings, reports, charts, graphs, checklists, summaries, ... reports of telephone conversations, ... [and] computer data." Inst. 5 to Pl. First RFPs to COB, Sept. 6, 2019.

February 2, 2022
Page 9 of 9

- Whether in-service training concerning EDPs was ever required, *id*.
  39.

We request that you designate a witness prepared to answer those questions.

Finally, we seek a reopening of the Rule 30(b)(6) deposition to permit examination concerning the late-disclosed documents identified in section C, above: the "re-issuance of firearms" documents and the BEST/grant materials.

Please let us know your position on these issues as soon as possible. We will reach out to confer with you this week, in advance of filing motions with the Court. Thank you for your prompt attention in this matter.

Sincerely,

*/s/ Amy Barsky*

cc:   William Fick, Esq.
      Daniel Marx, Esq.
      Sophia Hall, Esq.
      Batool Raza, Esq.
      Alexander Terry, Esq.



*City of Boston*
*Mayor Michelle Wu*
*Law*

February 9, 2022

<u>*VIA EMAIL*</u>
William W. Fick, Esq.
Daniel N. Marx, Esq.
Amy Barsky, Esq.
Fick & Marx, LLP
100 Franklin Street – 7th Floor
Boston, MA  02110

Oren M. Sellstrom, Esq.
Sophia L. Hall, Esq.
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA  02110

Re:    <u>Hope Coleman (individually and as the legal representative of the Estate of Terrence J. Coleman) v. City of Boston, Boston Public Health Commission, William Evans, Sophia Dyer, M.D., Garrett Boyle, and Kevin Finn</u>
       **USDC Docket No. 18-cv-10646**

Dear Amy:

       Please let this letter serve as a response to your letter dated February 2, 2022.

**<u>DISCOVERY YOU DECLINED TO PROVIDE</u>**

**<u>*Defendant Finn and Boyle's medical/mental health treatment providers and records*</u>**
While Finn and Boyle maintain their objection that their treatment for physical injuries is not relevant, for the sake of avoiding motion practice, Finn and Boyle will provide their medical treatment for their physical injuries.  These records will need to be subpoenaed from their providers and will be produced upon receipt.  Finn and Boyle testified that they did not seek any mental health treatment.  Finn and Boyle object to producing any medical records concerning their psychological fitness for duty with the Department's physician.  These records are privileged.

**<u>*Defendant Finn and Boyle's LTC paperwork, filled out shortly after the events in the FAC*</u>**
Finn and Boyle maintain their objection to producing these documents.  They are not relevant.

**<u>*BPD communications related to the re-issuance of firearms to the officers after the events in the FAC*</u>**
The City maintains its objection to producing these documents.  They are not relevant.



*City of Boston*
*Mayor Michelle Wu*
*Law*

*__Data about BPD's use of force__*
BPD can provide the following information:
All calls for service for EDPs from 2010 to 2016 and the dates of all uses of OC spray, batons, and tasers between 2010 to 2016.  BPD does not track the EDP status of the person involved in a use of force incident.  BPD does not track information regarding the number of BPD officers injured on duty by civilians or EDPs.

*__Documents relating to the Morabito & Savage article about the BEST program__*
These documents will be produced.

## DISCOVERY AGREED TO BE PRODUCED

The City will produce responses regarding external investigations, internal investigations, communications between the City and the City's ADA coordinator, and Evans' conference attendance and materials today.  The remaining items concerning ADA complaints (2nd RFP 26 to COB) and trainings by the ADA coordinator have been requested.  The City anticipates receiving those materials by next Wednesday, February 16, 2021.

## DISCOVERY PRODUCED ABOUT WHICH QUESTIONS REMAIN

*__Firearms re-issuance paperwork, COB 3885-88__*
The City maintains its position that the firearms re-issuance paperwork is irrelevant.  Documents marked bates COB 3885-88 were produced only in the spirit of expediting discovery and avoiding motion practice.  The City objects to re-opening any deposition regarding these documents.

The internal affairs report was produced to all parties in December 2020, within days of undersigned counsel receiving a copy.  The internal affairs report could not have been produced with the City's initial disclosures or document responses because the investigation was still pending.  Pending investigations are privileged.  Undersigned counsel did not even have a copy of the internal affairs report while the investigation was still pending.

*__Grant materials, meetings, notes, and communications regarding BEST program, COB 3889-3917, 3929-4255__*
Jenna Savage was designated to testify regarding topic 6 of Plaintiff's 30(b)(6) deposition notice to the City: "BPD BEST program".  This topic is extremely broad.  Following an initial conference call regarding the 30(b)(6) deposition notice and the City's concerns regarding the breadth of topics, Plaintiff sent a letter dated July 14, 2021, in which she specified exactly what information she was looking for regarding certain topics.  Plaintiff did not offer any specifics regarding topic 6.  Plaintiff did not indicate that she would be seeking information regarding grant materials, meetings, notes, or communications.  Dr. Savage testified fully and extensively regarding the BEST program, and the City agreed to produce additional written materials following the deposition.  The City has satisfied its obligations and objects to reopening Jenna Savage's deposition.



*City of Boston*
*Mayor Michelle Wu*
*Law*

## RULE 30(b)(6) DEPOSITION ISSUES

The City objects to re-opening any 30(b)(6) deposition or designating any additional witnesses for the reasons identified in its letter dated September 29, 2021.  Regarding the deposition of Nancy Cellucci, Ms. Cellucci answered all questions to the best of her ability.  There is no obligation that a 30(b)(6) witness know the answer to every question that is asked during a deposition.  That said, in the spirit of avoiding motion practice, the City will inquire as to the name of the courses not identified on Finn and Boyle's in-service training list in 2015 and 2016.

Please feel free to contact me with any questions, comments, or concerns.

Very truly yours,

*/s/ Nicole M. O'Connor*

Nicole M. O'Connor
Senior Assistant Corporation Counsel
617-635-4039

cc:     Timothy Harrington
        Batool Raza
        Michael Barkley
        Alexander Terry