UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-cv-10646

HOPE COLEMAN, individually and as the legal
representative of the ESTATE OF TERRENCE J.
COLEMAN,

      Plaintiff,

v.

CITY OF BOSTON, et al.,

      Defendants.

## CITY DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

In her motion to compel, Plaintiff seeks to discover information that is not relevant to any of her claims.  Indeed, Plaintiff's entire motion concerns her quest for information regarding events that took place after the incident described in her Amended Complaint: more information regarding the City's post-incident investigation; more information regarding the City's post-incident decision to issue firearms to the involved officers; more information regarding the City's post-incident decision to return the officers to active duty; more information regarding the City's training on how to investigate officer-involved shootings.

Missing from Plaintiff's motion, however, is any explanation as to how this information is relevant to her claims of excessive force or unlawful seizure against the individual officers. Equally lacking is any explanation as to how this information is relevant to her Monell, ADA, or negligence claims against the City, which are premised entirely upon the City's alleged failure to provide adequate training to its officers on how to respond "to 911 calls involving persons who

suffer from mental health disabilities and requests for medical assistance" and alleged failure to "train [its] employees to make reasonable accommodations to serve persons with mental health disabilities." See Plaintiff's Amended Complaint, attached hereto as Exhibit 1, at ¶¶ 121; 149. Likewise, Plaintiff offers no explanation for how this information is relevant to her supervisory liability claim against former Boston Police Commissioner William Evans, which is premised entirely upon his purported "deliberate[] indiffer[ence] to the substantial risk of harm to persons…who suffer from mental health disabilities and who are the subject of 911 calls to request medical assistance."[1]  Exhibit 1, at ¶ 135.

Instead, Plaintiff suggests that the information she seeks is relevant to her theory that there was "post-shooting collusion."  Plaintiff posits that the City's post-shooting investigation was somehow compromised because the Plaintiff was interviewed before the officers, or because the EMTs had the same lawyers as the officers, among other things.  And she seeks the information identified in her motion to bolster her "post-shooting collusion" argument.  But this lawsuit is not about the adequacy of the City's post-shooting investigation.  It is not about whether the officers returned to work too soon or whether the officers should have been issued firearms during the pendency of the investigation.  Even if Plaintiff could prove that there was "post-shooting collusion" in this case (which she cannot), it would have no bearing on any of Plaintiff's claims—which hinge entirely upon what was known to the officers and the City at the time of the shooting.

In short, Plaintiff is trying to use evidence of an allegedly deficient post-shooting investigation or what she considers to be post-shooting "bad acts" to establish that a constitutional violation occurred on October 30, 2016.  This is impermissible because there can be no causal

---

[1] Plaintiff's Amended Complaint also asserts claims for loss of consortium, intentional infliction of emotional distress, and negligent infliction of emotional distress, among others.  The relevance of the records Plaintiff seeks to these claims is even more tenuous.

link—which is required for municipal and supervisory liability—between what happened after-the-fact and what happened on October 30, 2016.  See Canton v. Ohio, 489 U.S. 378, 385 (1989) ("our first inquiry in any case alleging municipal liability is whether there is a direct causal connection between a municipal policy or custom and the alleged constitutional deprivation"); see also Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (noting that "evidence of a single event alone cannot establish a municipal custom or policy").

The City, Officer Garrett Boyle, Officer Kevin Finn, and William Evans (the "City Defendants") nonetheless respond to the particulars of Plaintiff's motion as follows:

## A. Plaintiff's request for an "adequately prepared" 30(b)(6) witness concerning BPD's investigation of and response to the Coleman shooting.

As an initial matter, the Boston Police Department's ("BPD") post-facto investigation into the shooting of Terrence Coleman on October 30, 2016, is irrelevant in and of itself.[2]  As with any officer-involved shooting, BPD investigates whether its officer violated its internal rule governing the use of deadly force (Rule 303).  These investigations are conducted by BPD's Firearm Discharge Investigation Team and are called "FDIT" investigations.  Here, the FDIT investigation into whether Officer Boyle[3] violated Rule 303 has no bearing on whether Officer Boyle used excessive force in violation of the Fourth Amendment—that is for the fact-finder in this case to conclude.  See Graham v. Connor, 490 U.S. 386, 396 (1989) (noting that in assessing reasonableness under the Fourth Amendment, only facts that were known to the officer at the time

---

[2] To be clear, the Plaintiff is entitled to discovery regarding the City's post-shooting investigation to the extent it might lead to the discovery of admissible of evidence.  To that end, the City produced its entire investigatory file and, as described below, produced its lead investigator for deposition.  But the conclusions of the investigation, as well as the sufficiency of the investigation, are irrelevant.

[3] Plaintiff repeatedly (and, hopefully, inadvertently) misrepresents in her motion that Officer Finn also shot Terrence Coleman.  It is undisputed that Officer Finn did not discharge his firearm on October 30, 2016.  Officer Boyle is the only officer who discharged his firearm that day.

are relevant).  To the extent Plaintiff argues that the FDIT investigation is somehow relevant to her Monell claim, that argument likewise fails because the investigation has no bearing on the "custom or policy" at issue in this case—whether the City failed to train its officers on how to respond to mental health calls.  See Foley v. City of Lowell, 948 F.2d 10, 14 (1st Cir. 1991) (holding that post-event evidence is not admissible in a Section 1983 "custom or policy" case unless the evidence "provides reliable insight into the policy in force at the time of the incident") (emphasis added).  Plaintiff's municipal liability claims here do not concern the City's purported failure to adequately investigate officer-involved shootings.

That said, upon receipt of Plaintiff's 30(b)(6) deposition notice in which she sought a witness to testify regarding the City's investigation into the Terrence Coleman matter, the City designated Sgt. Det. Thomas Pratt—the City's lead investigator on the Terrence Coleman matter. Though Sgt. Det. Pratt was deposed for approximately 6 hours and 17 minutes, Plaintiff complains in her motion that he was not "adequately prepared" because he could not answer two questions:

- Whether FDIT investigations concern rule violations other than Rule 303;
- Whether Rule 303 has ever been "reevaluated" or "reexamined"

But Sgt. Det. Pratt was not designated to testify regarding FDIT investigations and Rule 303 in general.  That was an entirely separate topic on Plaintiff's 30(b)(6) notice and the City designated a separate witness to answer these questions.[4]  See e-mail exchange dated August 30, 2020,

---

[4] Sgt. Det. Marc Sullivan was designated to testify regarding FDIT investigations in general and he answered these two questions at his deposition.  Plaintiff laments in her motion that Sgt. Det. Sullivan could not answer questions regarding the Coleman investigation in particular, but again, that is because he was not designated to testify regarding the Coleman investigation—Sgt. Det. Pratt was.  Plaintiff, in her motion, seems to insist that both witnesses should have been prepared to testify about both topics, despite the fact that the City designated separate witnesses for each topic.  In any event, Plaintiff's concerns are moot because she ultimately got the information she seeks from one witness or the other—Sgt. Det. Pratt answered all questions about the Coleman investigation, while Sgt. Det. Sullivan answered all questions about FDIT investigations in general.

attached hereto as Exhibit 2.  In her motion Plaintiff does not identify a single question that Sgt.

Det. Pratt could not answer regarding the topic he was designated to testify about—the FDIT

investigation into the Terrence Coleman shooting in particular.[5]  Because Sgt. Det. Pratt answered

all of Plaintiff's questions concerning the Terrence Coleman investigation, and because Plaintiff

received answers to the remaining questions through a separate witness, Plaintiff's request for an

order "compelling the City to designate an adequately prepared witness to answer questions

pursuant to Rule 30(b)(6) concerning the BPD's investigation of and response to the Coleman

shooting" should be denied.

### B. Plaintiff's request for documents concerning BPD's decision to permit Boyle and Finn to return to duty and to re-issue firearms to these officers.

Plaintiff states, in conclusory fashion, that the "City's actions in the aftermath of the

shooting of Terrence Coleman are important for evaluating what happened during the shooting

and the City and Evans' role in and liability for what happened."  Plaintiff's Memorandum, at p.

15.  But she offers no explanation as to how the City's decision to re-issue firearms to Officers

Boyle and Finn after the shooting has any bearing on whether they used excessive force or

unlawfully seized Terrence Coleman on October 30, 2016.  Likewise, she offers no explanation as

to how the City's decision to re-issue firearms to Offices Boyle and Finn has any bearing on

whether the City failed to train its officers, or whether Commissioner Evans failed to supervise his

officers, on how to respond to 911 calls regarding persons with mental health issues.  Again,

Plaintiff's municipal liability claims are not premised upon whether the City re-issues firearms or

---

[5] Plaintiff also claims that Sgt. Det. Pratt could not answer questions regarding the reissuance of firearms to Officers Boyle and Finn after the shooting.  But these questions do not relate to the Coleman FDIT investigation either.  Sgt. Det. Pratt testified that whether officers are reissued firearms after an officer involved shooting is "not [his] decision".  See Deposition Transcript of Pratt, attached hereto as Exhibit 3: 89:19-24; 90:1-8.

requires its officers to return to work too soon after an officer-involved shooting.  There can be no causal link between the City's decision to return the officers to active duty and/or to reissue them firearms after-the-fact and the constitutional violation that allegedly occurred several weeks earlier on October 30, 2016.  See Canton, 489 U.S. at 385.

As Plaintiff points out in her motion, the City has repeatedly maintained that documents concerning Officer Boyle or Officer Finn's fitness to return to duty, and documents concerning the City's re-issuance of firearms to them or their subsequent applications for licenses to carry firearms, are not relevant.[6]  In the absence of any explanation as to how documents pertaining to the City's decision to return Officers Finn or Boyle to active duty after the shooting or to re-issue them firearms is relevant to her claims, Plaintiff's request for "documents concerning Boyle and Finn's return to duty, receipt of replacement firearms from BPD, or license to carry such firearms", should be denied.

**C.  Plaintiff's request for Boyle and Finn's medical and mental health records, including evaluation(s) by BPD provider(s) in connection with their return to duty**

Officer Boyle and Officer Finn's medical records are not relevant to any of Plaintiff's claims or defenses.  Neither officer has ever claimed that he was stabbed by Terrence Coleman. Officer Boyle testified that he "hurt [his] knee and kind of strained [his] back during the incident." See Deposition Transcript of Boyle, attached hereto as Exhibit 4, at 119:3-5.  Officer Finn, for his part, injured his right knee during the incident.  See Deposition Transcript of Finn, attached hereto as Exhibit 5, at 80:3-4.  No one disputes that the officers engaged in some sort of struggle with Terrence Coleman on October 30, 2016 where these injuries could have been sustained.  The

---

[6] Nonetheless, though it maintained that the documents were irrelevant, in the spirit of compromise and in an effort to obviate the need for motion practice, in January 2022 the City produced its paperwork authorizing the re-issuance of firearms to Officers Finn and Boyle after the incident. Still not satisfied, Plaintiff has filed the instant motion.

officers have not put their physical injuries in dispute in this lawsuit.  Additionally, neither officer

testified that he suffered any "psychological injury" as a result of this incident, and neither officer

treated with any mental health professional.  To that end, no "mental health records" exist.

Nonetheless, again in the spirit of compromise and in an attempt to obviate the need for

motion practice, the officers agreed to produce their medical records for treatment that they

received for their physical injuries.[7]  Still not satisfied, the Plaintiff has filed the instant motion to

compel the officers to produce their records from their examination by the Department's physician.

The officers' examination by the Department's physician was not for medical treatment—it was a

fitness for duty examination to evaluate whether the officers were able to perform the functions of

their jobs, both mentally and physically.  As part of that examination, the Department's physician

necessarily examines the officers' psychological fitness to return to duty.  The officers refuse to

produce these records because, again, they are not relevant, and any documents concerning the

psychological examination would be privileged.  Plaintiff has offered no explanation for how

records pertaining to the officers' fitness to return to duty after the shooting has any bearing on

whether they used excessive force or committed an unlawful seizure on October 30, 2016 or

whether the City failed to train its officers on how to respond to 911 calls for mental health crises.

Accordingly, Plaintiff's motion to compel these records should be denied.

**D.  Requests for BPD's training materials concerning FDIT investigations**

For the same reasons described above, the adequacy of the City's training on how to

conduct FDIT investigations is not relevant to Plaintiff's municipal liability claim, which concerns

---

[7] The officers have subpoenaed their records from their medical providers.  The officers have received responses from some, but not all, of their providers.  Those records that have been received have been produced, and the officers will produce the remaining records to the Plaintiff upon receipt.

only the adequacy of the City's training on how to respond to 911 calls for persons with mental health issues. Plaintiff's request for these training records should be denied.

## CONCLUSION

The City Defendants have produced over 6,000 documents in this case, including the entire FDIT investigation. They have answered two sets of written discovery. Officers Finn and Boyle were each deposed for nearly seven hours, as was former Boston Police Commissioner William Evans. The City has produced <u>seven</u> witnesses to testify regarding Plaintiff's Rule 30(b)(6) deposition notice. The officers have agreed to produce their medical records concerning their treatment for physical injuries. But the City Defendants refuse to produce documents pertaining to post-shooting events that have no relevance to any of Plaintiff's claims—namely, they refuse to produce records pertaining to the officers' fitness to return to duty or the City's decision to reissue them firearms. The City Defendants likewise refuse to produce records pertaining to the City's training on how to conduct FDIT investigations which, again, have no bearing on Plaintiff's claims. In the absence of any argument as to how these records are relevant to her claims, Plaintiff's motion to compel should be denied.

Respectfully submitted:

**DEFENDANTS, CITY OF BOSTON, GARRETT BOYLE, KEVIN FINN, AND WILLIAM EVANS**

By their attorneys:

Adam N. Cederbaum
Corporation Counsel


*/s/ Nicole M. O'Connor*
Nicole M. O'Connor (BBO#675535)
Nieve Anjomi (BBO#651212)
Senior Assistants Corporation Counsel
City of Boston Law Department

City Hall, Room 615
Boston, MA 02201
(617) 635-4039 (O'Connor)
(617) 635-4098 (Anjomi)
Nicole.OConnor@boston.gov
Nieve.Anjomi@boston.gov

## CERTIFICATE OF SERVICE

I, Nicole M. O'Connor, hereby certify that I served a true copy of the above document upon all counsel of record via this court's electronic filing system on the date listed below.

Date: March 31, 2022                           */s/ Nicole M. O'Connor*
                                               Nicole M. O'Connor