# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HOPE COLEMAN<br>        *Plaintiff,*<br><br>        v.<br><br>CITY OF BOSTON, et al.,<br>        *Defendants.* | No. 18-cv-10646-MLW |

## AFFIDAVIT REGARDING DISCOVERY EFFORTS

I, Sarah McAteer, counsel for the City of Boston (the "City") and William Evans in the above captioned case, make the following affidavit regarding discovery efforts made in response to the Court's March 3 and March 15, 2023 Orders, instructing the City to complete a renewed search and produce any documents not previously produced that are responsive to all of Plaintiff's prior document requests. ECF 160, 165.

1.  Counsel for the City – including attorney Elizabeth Bostwick and I – contacted members of the Boston Police Department ("BPD") in response to the Court's March 3 and March 15 Orders and requested that they redo efforts to find documents responsive to all of Plaintiff's prior document requests within their respective departments or personal possession.

2.  Attached are 14 affidavits reflecting work done by members of BPD who conducted significant work in furtherance of these efforts. These are not the only individuals at BPD contacted regarding these efforts, but rather those most significantly involved in the production of documents. Due to significant personnel changes at BPD in recent years, some of these individuals were previously involved in discovery efforts relating to this case and some were not.

3.   As part of these efforts, counsel for the City met in person with many BPD employees and personally reviewed and copied certain BPD files at BPD Headquarters.

4.   In the course of redoing its discovery efforts, counsel for the City contacted at least the following individuals in its search for responsive documents:

|   |   |
|---|---|
| i. | Marc Sullivan |
| ii. | James Blake |
| iii. | Garrett Boyle |
| iv. | Kevin Finn |
| v. | Chanel Bryant-Alexander |
| vi. | William Evans |
| vii. | John Boyle |
| viii. | Kathy Kearney |
| ix. | Joseph King |
| x. | Jennifer Maconochie |
| xi. | Adam Mammone |
| xii. | Lisa O'Brien |
| xiii. | Thomas Pratt |
| xiv. | Jenna Savage |
| xv. | James Miller |
| xvi. | Paul McLaughlin |
| xvii. | Richard Lewis |
| xviii. | Robert Ciccolo |
| xix. | David Fredette |
| xx. | James McGee |
| xxi. | Andrew Doherty |
| xxii. | Sharon Dottin |
| xxiii. | Kristen McCosh |
| xxiv. | Teresa Anderson |
| xxv. | Robert Mullaly |
| xxvi. | Kelly Brown-Barrows |
| xxvii. | Shawn Romanoski |
| xxviii. | Daryl Owens |
| xxix. | Jeffrey Walcott |
| xxx. | Shawn Williams |
| xxxi. | Stephen Sutliff |
| xxxii. | Laura Palmer |
| xxxiii. | Anthony Williams |
| xxxiv. | Richard Moriarty |
| xxxv. | Melvin Ruiz |
| xxxvi. | Garrett Mitchell |
| xxxvii. | Marc Sullivan |
| xxxviii. | John Broderick |

| | |
|---|---|
| xxxix. | Timothy Murray |
| xl. | Vance Mills |
| xli. | Michael Sullivan |
| xlii. | James Morrissey |
| xliii. | Charles Cellucci |
| xliv. | John Hynes |
| xlv. | Kevin Zarnoch |
| xlvi. | Amyleigh DeVito |
| xlvii. | John Feeney |
| xlviii. | Daniel McMorrow |
| xlix. | Michael Maloney |
| l. | Kyle Holmes |
| li. | Thomas Antonino |
| lii. | Zachary MacInnis |
| liii. | Jason Hessler |
| liv. | Brian Yandle |
| lv. | Mark Holbrook |
| lvi. | Christopher Keaton |
| lvii. | Edward Boudreau |
| lviii. | Michael Andrade |
| lix. | Nicholas Litterio |
| lx. | Ciro Feliciano |
| lxi. | Seth Housman |
| lxii. | Karl Truong |
| lxiii. | Patrick Creavin |
| lxiv. | Jerome Hall |
| lxv. | Jessica Gardner |
| lxvi. | Shawn MacIver |
| lxvii. | Daniel Murphy |
| lxviii. | Terrique Chambers |
| lxix. | Timothy Warren |
| lxx. | Alex Misiaszek |
| lxxi. | Sean OConnor |
| lxxii. | Sean Cullen |
| lxxiii. | Sean Obrien |
| lxxiv. | Michael Paillant |
| lxxv. | Lisa Venus |
| lxxvi. | Sharon Woods |

5.  The City undertook a review of all documents provided by BPD, or otherwise located by

counsel, in an effort to remove documents previously produced. Where there was any

uncertainty that the exact version of a document was the version previously produced, the

document was produced again. The City risked overproduction and/or duplication in an

effort to ensure to the extent possible Plaintiff is in possession of all documents responsive to their requests.

6. The City located some documents that were responsive to Plaintiff's original document request that do not appear to have been previously disclosed by the City. Given the time and personnel changes in both the City's Law Department and BPD, counsel for the City makes an educated guess – not a factual assertion – that the version of the FDIT file from which the City originally produced documents relating to the Terrence Coleman officer-involved shooting investigation may have been missing a thumb drive containing some files relating to the investigation.[1] Discovery was completed in the early days of the COVID-19 pandemic when people were not meeting in person, so this may be how this error was not caught. In their current efforts, counsel for the City reviewed every version of the original FDIT file they could locate – in paper and electronic copy, including the file maintained by the Suffolk County District Attorney's Office – to ensure that Plaintiff had all files associated with this investigation.

7. The majority of the volume of the City's recent production – putting aside electronic communications and attachments – comes from documents that either (1) were created after discovery was originally done on the case, or (2) were originally subject to objections that requests were overbroad, unduly burdensome, or unlikely to lead to the discovery of admissible evidence. In light of recent Court Orders, the City endeavored to take as broad an approach as possible to Plaintiff's requests as possible and produced

---

[1] These files include some miscellaneous EMS forms, photos of bruising on the EMTs, a PowerPoint relating to the use of OC spray, flashcards with EMS coding and medical response information, a preliminary FDIT report, and transcripts of several FDIT interviews that were previously produced.

documents despite properly made objections. This has led to significant volume in the

City's document production resulting from its renewed search.[2]

8.  Finally, the City produced a significant amount of email communications. The City and

    Plaintiff's counsel worked collaboratively to come up with search terms to be used in a

    search of the City's email database. These terms produced 26,556 documents with

    potential to be responsive to Plaintiff's requests.

9.  The City identified over 6,000 documents in this email search most likely to be

    responsive and has reviewed these emails in depth. The City produced approximately

    3,022 of these documents.

10. The City identified over 20,000 emails that may, depending on Plaintiff's view of their

    discovery requests – be responsive. Plaintiff has access to all of these emails and is in the

    process of marking which documents they would like the City to produce with

    appropriate redactions.

Dated:  5/15/2023                              X _____

                                               Print name:  Sarah McAteer

---

[2] For example, the City produced the following documents that were not disclosed originally: (1) 2001
Commissioner's Memo that modifies the rule relating to ballistic evidence; (2) 2011 Special Order regarding the
North Star Personal Alert Program – a program for parents or guardians who care for individuals with a tendency to
wander or who are a flight risk; (3) March 2016 suicide prevention briefing; (4) updated training resumes and
personnel files; (5) 2022/2023 CIT training schedule and materials; (5) materials relating to BPD grants through
2020; and (6) materials relating to Section 12 commitment.