UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOPE COLEMAN, individually and as the legal representative of the ESTATE of TERRENCE J. COLEMAN,<br>    *Plaintiff*,<br><br>v.<br><br>CITY OF BOSTON *et al.*,<br>    *Defendants*. | No. 18-cv-10646-MLW |

**DEFENDANT CITY OF BOSTON'S BRIEF REGARDING ATTORNEY FEES RELATING TO DISCOVERY VIOLATIONS**

**I.   INTRODUCTION**

As stated in the Joint Response to the Court's June 1, 2023, the City of Boston (the "City") hereby submits this brief seeking clarification as to the scope of the attorneys fees the Court deems appropriately awarded as sanction for the City's discovery errors at this point in the litigation. *See* ECF 228. On June 23, 2023, Plaintiff filed with the Court a lodestar calculation of attorney fees Plaintiff believes relate "to the Defendant City of Boston's failure to obey the Court's September 15, 2022 and November 10, 2022 Orders." ECF 229. The City seeks clarity from the Court on what fees relate to the City's failure to obey these two orders so that the City can engage in a meaningful conversation with Plaintiff regarding their lodestar calculation.

**II.   FACTUAL BACKGROUND**

On September 15, 2022, following a hearing on Plaintiff's motion to compel, the Court issued an order directing the City to do the following relating to the motion to compel findings:

1

> "(a) produce all documents concerning discussions defendants Boyle and Finn had with the Boston Police Department ("BPD") evaluators regarding their fitness to return to duty; (b) produce all documents concerning training for the BPD's Firearm Discharge Investigation Team ("FDIT"); (c) produce all documents concerning the policies, practices, or training concerning the return of firearms to police officers following shootings resulting in death, and all documents concerning the reissuance of firearms to Boyle and Finn, including, but not limited to, the related applications for licenses to carry firearms and documents related to Exhibit 1 of the Motion; and (d) identify one or more witnesses sufficiently knowledgeable to answer questions of the issues of (i) the FDIT investigation of Boyle and Finn, (ii) the finding that Boyle and Finn were fit to return to duty and the reissuance of firearms to them, and (iii) whether the BPD has ever reexamined its Rule 303 concerning the use of deadly force." ECF 127 (September 15, 2022 Order).

The City understands and appreciates that this Court has found that the City violated the Court's orders in at least three substantive ways: (1) the City did not produce Thomas Pratt as a 30(b)(6) witness within the time frame ordered; (2) the Court believes that William Evans was inadequately prepared for his 30(b)(6) deposition; and (3) the City failed to turn over records relating to Officers Finn and Boyle's license to carry applications. *See* ECF 186, p. 4 (Transcript of March 29, 2023 hearing).

On October 19, 2022, the Parties requested that the Court "(1) order the City to produce any additional responsive documents from Dr. Mullaly concerning his evaluation of Finn; (2) set a deadline of December 12, 2022, for the Parties to re-open and complete the depositions of the City, through its Rule 30(b)(6) designees, and Evans; and (3) order the Parties to submit a further report concerning the status of discovery in this matter by December 12, 2022…." ECF 139. On November 10, 2022, the Court ordered that these requests were granted. ECF 140.

III.   **LEGAL BRIEF**

The City appreciates that parties and counsel may be held liable for expenses, including attorney's fees, caused by the failure to comply with discovery orders. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763 (1980); Fed. R. Civ. P. 37. Because the Court "can shift only those attorney's fees incurred because of the misconduct at issue," the City seeks to clarify what fees

2

were "caused by the [City's] failure to comply with" the above-referenced discovery orders and what fees should remain to be litigated should Plaintiff prevail on her claims. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

Attorneys fees as a sanction for failure to comply with discovery orders should "track[] the loss resulting from that wrong." *See id*. Such sanctions must be "calibrated to the damages caused by the bad-faith acts on which it is based." *Id*. (internal quotations omitted). An award that "extends further than that – to fees that would have been incurred without the misconduct – then it crosses the boundary from compensation to punishment." *Id*. Therefore, when the Court uses its inherent sanction authority, it must "establish a causal link – between the litigant's misbehavior and legal fees paid by the opposing party." *See id*. At this juncture, Plaintiff may only recover "the portion of [her] fees that [she] would not have paid but for the misconduct." *See id*.; (citing *Fox v. Vice*, 563 U.S. 826, 836 (2011); *Paroline v. United States*, 572 U.S. ––––, ––––, 134 S.Ct. 1710, 1722 (2014) ("The traditional way to prove that one event was a factual cause of another is to show that the latter would not have occurred 'but for' the former")).

   a. **Fees fairly attributed to the discovery failures found by the Court**

Looking at the September 15, 2022 and November 10, 2022 Orders (the "Orders"), as well as the hearing transcripts, the City understands and respects that – in awarding Plaintiff sanctions including attorney fees – the Court found that the City had violated its orders by failing to produce certain documents relating to the return of firearms, failing to adequately prepare William Evans as 30(b)(6) witness, and failing to produce its remaining 30(b)(6) witness within the time frame ordered. Pursuant to the Federal Rules of Civil Procedure and relevant case law, the City understands the Court's order regarding the payment of attorney fees to encompass those fees  where there is a causal link between the City's failure to comply with the Court's

3

Orders and the work subsequently done by Plaintiff's counsel that would not have needed to be done but for these violations. *See Goodyear Tire & Rubber Co*, 581 U.S. at 108. This would logically include fees reasonably related to (1) reviewing documents concerning the officers' fitness for duty and/or return of firearms – not including files retained by Dr. Mullaly[1] which were not in the City's control or possession until the same day they were produced to Plaintiff; (2) reviewing documents concerning the evolution of Rule 303 not produced in response to the Orders; (3) reviewing FDIT training documents not produced in response to the Orders, if any; and (4) the preparation and taking of deposition(s) that need to be re-opened because of the delay in producing prepared and/or timely witnesses, or late disclosure of documents.

### b. Fees not causally linked to violations of the Court's Orders

In contrast to documents that fall into the aforementioned categories that relate to the Court's Orders, the majority of discovery turned over following the City's efforts to "redo" discovery was either subject to proper objection originally or was disclosed as supplemental materials.[2] Fees relating to review of these materials <u>for the first time</u> were not incurred because of the City's noncompliance at issue in the Court's September 15 or November 10 Orders. While attorneys' fees for this work may ultimately be paid if Plaintiff prevails on her claims, there is no causal link between the City's failure to comply with the Court's September 15 and November 10 orders and a significant amount of work presently being done by Plaintiff's counsel. *See Goodyear Tire & Rubber Co*, 581 U.S. at 108.

For example, a significant volume of email correspondence was produced on May 1, 2023. Prior to 2023, the City conducted more limited searches for email correspondence – producing

---

[1] Dr. Robert Mullaly is not, and was not, a City employee and was equally available to all parties.
[2] The City understands the ongoing obligation to supplement discovery responses. The City supplemented its responses to Plaintiff's First Set of Requests for Production of Documents five times and supplemented its responses to Plaintiff's Second Set of Requests for Production of Documents twice.

4

769 pages of emails – and invited Plaintiff to propose search terms if they sought additional emails. No such terms were ever proposed and the lack of a more comprehensive search of the City's email server was <u>not</u> the subject of Plaintiff's numerous "deficiency letters" or Plaintiff's motion to compel. That this collaboration and production happened in 2023 and not in 2021 does not make it a but-for result of the City's failure to obey the Court's Orders. Plaintiff would have had to review these emails regardless of when in the litigation they did so if they fell within the orbit of Plaintiff's original requests. Importantly, the City appreciates that should a deposition need to be re-opened because of delayed disclosure, fees associated with that deposition would very likely be appropriate for the City to pay as sanction because but-for the City's late disclosure the re-opened deposition would not have been necessary. This is a key distinction and highlights where the City seeks clarity of what work constitutes a but-for result of the City's violation of the Court's September 15 and November 10 Orders.

Examples of supplemental production – fees for the review of which could not be the result of the City's discovery violations – include: (a) CIT Training materials from December 2022 through March 2023 (COB 23802-26782); (b) notes obtained from Dr. Mullaly obtained by the City and produced on May 4, 2023; (c) charts with updated statistics, such as calls for service from the BRIC (e.g., COB 26887); and (d) minutes from meetings that occurred after discovery was originally done and previously supplemented (e.g., COB 20777-20779). Examples of documents produced in response to requests that were originally objected to as overly broad, unduly burdensome, or unlikely to lead to discovery of admissible evidence, include: (a) a 2016 presentation on the use of O.C. spray (COB 20151-20206); (b) numerous drafts of an article published relating to police response to 911 calls to Boston Public Schools (COB 20207-20776); (c) special orders and commissioners memos from 2008 through 2023 on topics including

discovery, Narcan use, assisting the homeless, police officers assigned to traffic duty, protection of abused persons, and the North Star Personal Alert Program – a program for those with a tendency to wander from their location (COB 22206-22249); and (d) materials relating to a 2018 hearing on suicide prevention (COB 22369-22619). As the City understands the controlling case law, attorney fees for the review of these documents and others like them are not appropriately awarded as sanctions at this junction because they are unrelated to the City's failure to obey the Court's September 15 and November 10 Orders.

Since the City's May 15, 2023 discovery-related filing, Plaintiff submitted a memo to the City entitled "Memo 1" seeking additional documents and clarifications on June 6, 2023. Some of these requests – including the time spent considering and/or drafting the memo and the time spent reviewing documents produced by the City in response – demonstrate additional examples of fees that should ultimately be litigated should the Plaintiff prevail as they were not (and will not going forward) be accrued as a but-for result of the City's discovery Order violations. As a first example, Plaintiff seeks metadata of emails produced in 2022 – before the City ever could have violated the Court's September and November 2022 orders. If Plaintiff was unsatisfied with the format of the documents produced – despite them being in searchable bates-stamped PDF format – she could have raised the issue then. The City should not be obligated to pay fees relating to this request merely because the Plaintiff waited over a year to raise the issue of metadata. Similarly, Plaintiff requested in Memo 1 metadata of a video and photos that were produced on September 22, 2020 in bates stamped PDF format. This issue of metadata relating to these items has not been raised in the last two and a half years.[3] That the Plaintiff waited to raise

---

[3] In granting an extension for discovery on October 8, 2021 to allow for additional depositions and discovery requests to be served by Plaintiff, the Court noted that it was unlikely that any further extensions would be granted. ECF 101. Knowing this, Plaintiff did not raise the issue of metadata, and other issues like it, until June 2023 despite relating to years-old discovery productions. In a February 21, 2022 request to extend discovery deadlines,

the issue – which the City does not believe is necessary or appropriate particularly given the photos and video at issue – does not mean that the City should be paying the attorney fees for work they are now doing relating to items produced nearly three years ago. This work would have been done but-for the City's violation of the Court's 2022 discovery orders and, therefore, fees relating to this work and other similar work should be left for when the case ultimately concludes.

To be clear, the City has every desire to engage with Plaintiff in a meaningful discussion regarding their lodestar calculation and reach an agreement on appropriate attorneys fees as previously done. However, in order to have this discussion, the City seeks clarity on what fees the Court expects it to pay now as sanctions for violating the Court's September 15 and November 10 Orders, versus fees should be left for the ultimate resolution of the litigation, using the relevant statutes and case law as guidance.

## IV.   CONCLUSION

Based upon the foregoing, the City believes that the work Plaintiff is doing needs to be parsed out between work that would not have occurred but-for the City's violation of the Court's September 15 and November 10 Orders, and work the Plaintiff would have done regardless of any such violations. It cannot be the case based upon the controlling case law that the City is responsible for all fees accrued from the time of a discovery order violation onward – where this

---

the Parties note that "Plaintiff and the City have conferred multiple times, in a good faith effort to narrow areas of disagreement…. They have resolved numerous disputes through this process." ECF 110. Plaintiff noted that those issues that remained after their collaboration with the City would be raised in their motion to compel. *Id*. In her motion to compel discovery, Plaintiff sought: (1) a 30(b)(6) witness (or witnesses) to address BPD's investigation of and response to the Coleman shooting; (2) documents concerning the reissuance of firearms to Finn and Boyle; (3) medical records relating to BPD's fitness for duty evaluations of Finn and Boyle; and (4) training materials concerning FDIT investigations. ECF 113. The City is left wondering how – *if* the issues Plaintiff now raises were "plainly responsive" to their requests and of consequence to this litigation as she now claims – why they were not the subject of their "good faith effort to narrow areas of disagreement" or their motion to compel in areas that were well known to Plaintiff at the time issues were being raised and could have been addressed in a collaborative nature years ago.

line is appropriately drawn is what the City seeks clarification on. With an understanding of what fees the Court expects the City to pay on an ongoing basis, the City intends to engage with Plaintiff to work toward an agreeable amount for attorney's fees relating to the City's discovery violations.

WHEREFORE, the City respectfully requests a fuller understanding of the Court's view on what fees should appropriately be paid to Plaintiff as sanctions for the City's failure to obey the Court's September 15 and November 10 Orders.

Respectfully submitted,

**CITY OF BOSTON**

by its attorneys,

*/s/ Sarah J. McAteer*

Sarah McAteer (BBO# 706403)
Elizabeth Bostwick (BBO# 644498)
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4048
SARAH.MCATEER@BOSTON.GOV
ELIZABETH.BOSTWICK@BOSTON.GOV

## CERTIFICATE OF SERVICE

I, Sarah J. McAteer, hereby certify that I served a true copy of the above document upon all parties via this court's electronic filing system on July 17, 2023.


*/s/ Sarah J. McAteer*
Sarah J. McAteer


## 7.1 CERTIFICATION

I, Sarah J. McAteer, hereby certify that I conferred with Plaintiff's counsel about the issues addressed herein in an effort to narrow the issues before the Court.


*/s/ Sarah J. McAteer*
Sarah J. McAteer