UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HOPE COLEMAN, individually and as the legal representative of the ESTATE OF TERRENCE J. COLEMAN,<br>    *Plaintiff*,<br><br>v.<br><br>CITY OF BOSTON, MICHAEL COX in his official capacity as Commissioner of the Boston Police Department, BOSTON PUBLIC HEALTH COMMISSION, WILLIAM EVANS, SOPHIA DYER, M.D., GARRETT BOYLE, and KEVIN FINN,<br>    *Defendants*. | No. 18-cv-10646-MLW |

## PLAINTIFF HOPE COLEMAN'S MOTION FOR INTERIM ATTORNEYS' FEES

Pursuant to Fed. R. Civ. P. 37 and this Court's Orders, Plaintiff Hope Coleman respectfully requests that this Court order Defendant City of Boston to pay the disputed portion—**$74,890**—of her request for interim reasonable attorneys' fees and expenses relating to the City's discovery violations for the period from October–December 2023.

### Background

On January 5, 2024, Ms. Coleman sent a spreadsheet to the City containing detailed timekeeping and expense records for the period October–December 2023 in the amount of $294,431.76 relating to the City's discovery violations (*excluding* time for work unrelated to the discovery "re-do" such as settlement discussions, communications with counsel for non-City defendants, legal research concerning claims and defenses, etc.). *See* Fourth Declaration of William W. Fick, Esq. in Support of Lodestar Calculation of Attorneys' Fees Related to Plaintiff Hope Coleman's Motion for Sanctions ("Fick Decl."), ¶ 2.

1

In the course of ensuing discussions with the City, Ms. Coleman removed certain time entries and clarified others. On January 19, 2023, Ms. Coleman submitted a final revised spreadsheet to the City reflecting fees and expenses totaling $290,576.76. Of this amount, the City has agreed to pay $215,686.76 ($214,690 in fees plus $996.76 in expenses) and represents that payment will be made no later than Friday, February 2. *See* Fick Decl., ¶ 3.

However, the City objects to paying **$74,890** of the requested fees. *See* Fick Decl., ¶ 4. The spreadsheet attached as Exhibit A contains color-coded line items—"green" reflecting time entries and expenses for which the City has agreed to pay, and "red" reflecting time entries to which it objects. *See* Fick Decl., ¶ 5.

Almost all of the disputed amount ("red" entries) consists of time Ms. Coleman's counsel have spent performing their ongoing review and analysis of voluminous materials (over 80,000 pages)[1] that the City has belatedly produced in connection with the Court-ordered "re-do" of document discovery. The City contends that, *if* it had had timely produced these materials several years ago in response to Ms. Coleman's original requests, then Ms. Coleman's counsel would have had to review them at that time, anyway. Accordingly, the City reasons, its discovery violations did not "cause" Ms. Coleman to incur these costs—it merely shifted them in time—and, thus, the City should not be required to pay them now. In other words, the City takes the categorical position that it should not have to pay fees for *reviewing* (as distinguished from *obtaining*, by motion or otherwise) "new" discovery.

---

[1] *See* Ex. B (Summary chart of City document productions entered at the hearing on December 14, 2023).

The City also objects to two time entries for work relating to the requests to bifurcate lodged by Attorney Kesten on behalf of Defendants Garrett Boyle and Kevin Finn, which the City likewise contends were not "caused" by its discovery violations.

The City's arguments are not persuasive. For the reasons described below, Ms. Coleman requests that the Court order the City to pay for all of the disputed entries, in addition to the amount is has already agreed to pay.

## Argument

Fed. R. Civ. P. 37(b)(2)(C) states, in regard to sanctions for failure to obey a discovery order: "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust" (emphasis added). Separately, Fed. R. Civ. P. (c)(1)(A) states, in relevant part, "[i]f a party fails to provide information … as required by Rule 26(a) or (e) … the court … may order payment of the reasonable expenses, including attorney's fees, caused by the failure."

Both subsections of Rule 37 are plainly applicable here. And this Court's "chosen scope for [a] fee award" relating to discovery misconduct is reviewable only for abuse of discretion. *NuVasive, Inc. v. Day*, 77 F. 4th 23, 31-32 (1st Cir. 2023) ("We reject out-of-hand [defendant's] assertion that the court should have awarded only fees 'directly related to [plaintiff's] motion for spoliation of evidence'" where the fees "were a predictable result of the spoliation").

The Court's statements at the many hearings in this matter have been clear and consistent with Ms. Coleman's understanding about the broad scope of the City's obligation to pay her fees relating to the City's discovery failures:

- 3/2/23 Tr. at 64 ("[W]hat I am going to do is order that you pay promptly the reasonable expenses, including attorney's fees of the plaintiff[ ], *relating*

3

> *to* the motion for sanctions. If you look at Rule 37(b) … in addition to other sanctions, or if I don't impose other sanctions anyway, I must impose reasonable expenses, including attorney's fees, unless the failure to obey the discovery order is substantially justified, and I find that in this case it wasn't.") (emphasis added);

- 3/29/23 Tr. at 50 ("To the extent, if any, [Ms. Coleman] want[s] to question Finn and Boyle based on documents that [she] didn't have when [her counsel] first questioned them that should have been produced earlier, the City will pay the expense of that.");

- 3/29/23 Tr. at 51 ("*To the extent there's added expense due to the production of documents that should have been produced previously* — this will help you keep your time, you should do it as it goes on — *the City has to pay for it.*") (emphasis added);

- 5/5/23 Tr. at 7 ("I haven't decided what sanction, if any, to impose, but I did order that all expenses *relating to* those violations, including the attorneys' fees of the Plaintiff, be paid by the City.") (emphasis added);

- 6/27/23 Tr. at 50-51 ("If you say, 'Oh, we found this in supplementation,' but didn't make a reasonable inquiry to begin with, I'm likely — I think you would have a problem persuading me that [the City] didn't have to pay for [Ms. Coleman's] expenses getting those documents …. [T]he fact that something was found — was not found until I ordered [the City] to do it all again, I'm not inclined to think that would relieve [the City] of the responsibility for paying those fees. It'll go back to the reasonableness of what was done originally.").

- 12/14/23 Tr. at 8 ("And as I said … being colloquial, the meter is still running and I expect — although if there's a dispute I'll resolve the dispute — that *the City's going to be required to pay all of the Plaintiff's reasonable attorneys' fees and expenses for the remainder of this case, since what we're doing results from the failure to obey the September 15th and I think it's a November 10 order* that also wasn't obeyed.") (emphasis added).

The factual record concerning the City's extensive and ongoing discovery failures caused this Court to order, essentially, a full "re-do" of document discovery (and likely, if the case continues, depositions of multiple fact-witnesses and Rule 30(b)(6) designees) as one form of interim relief while it considers possible sanctions. That "re-do," in turn, has resulted in disclosure of an enormous quantity of documents—over 80,000 pages—responsive to Ms. Coleman's

4

requests that should have been produced years ago. Ms. Coleman has always understood that *all* of her substantial fees and expenses associated with the "re-do" effort—including her *review* and analysis of the voluminous discovery productions precipitated by the "re-do"—are also "caused by the failure[s]" and, therefore, subject to payment by the City. Put another way, "but for" the City's discovery failures and its violations of this Court's Orders, there would be no discovery "re-do." And "but for" the "re-do," Ms. Coleman would not have incurred the substantial fees and expenses she now seeks to recover.

The City's argument against paying for review of late-produced discovery falters on its opening premise. "*If*" the City had timely all produced responsive documents, Ms. Coleman's counsel likely would have reviewed them years ago without reimbursement. But that is *not* what happened. Indeed, there is no reason to believe the City would have produced any of these materials absent Ms. Coleman's motions and this Court's Orders. When the documents were finally produced, Ms. Coleman's counsel had to devote substantial resources to review those voluminous materials as rapidly as possible, at the expense of other work for other clients. That review was further complicated by the need to figure out how the new productions relate to the old ones and what materials, even now, remain missing. Accepting the City's argument would create a terrible incentive, allowing a "producing" party to withhold discovery confident that, even if compelled to produce the documents later, the receiving party would still bear the core costs associated with reviewing that material.

Ms. Coleman's review and analysis also gave rise to more questions and follow-up correspondence, leading to multiple supplemental productions.[2] If this case does not settle or end

---

[2] As reflected in Exhibit B and noted at the December 14 hearing, the City had produced 27,056 pages of documents between March and May 2023, when it first declared the "re-do" project "complete." But then, substantially in response to follow-up memoranda and inquiries from

in default judgment, Ms. Coleman expects to engage in further follow-up communications with the City concerning questions and issues that emerge from the ongoing review she has been conducting since October 2023, at issue in this interim fee request. Thus, even if the distinction mattered (it should not), there is no feasible way to distinguish between "reviewing" as opposed to "obtaining" the "new" discovery because the process has been iterative—Ms. Coleman's review of each "new" production has yielded follow-up questions and requests that resulted in still further "new" productions.

Finally, while *Red Wolf Energy Trading, LLC v. BIA Capital Management, LLC*, No. 19-cv-10119-MLW (D. Mass.), apparently settled before this Court entered a fee award, the lodestar submissions in that case were replete with time entries for "review and analysis" of the defendant's document productions. *See, e.g.*, *Red Wolf*, D.E. 339 at 4-5; D.E. 340 at 2-3. Neither this Court nor defense counsel suggested in *Red Wolf* that *review* of belatedly produced discovery should be categorically excluded from the scope of a fee award arising from discovery misconduct.

With regard to the time entries in dispute relating to "bifurcation," that issue likewise was precipitated by the City's discovery misconduct and the ensuing motion practice concerning possible sanctions. In their Opposition to Ms. Coleman's Motion for Default Judgment, Boyle and Finn argued that the Court should "stay the *Monell* discovery"—that is, bifurcate ongoing discovery—and proceed immediately to trial on the claims against them, alone. D.E. 270 at 2; *see also* D.E. 284. Accordingly, the delays caused by the City's discovery malfeasance are the "but for" cause of the modest amount of time that Ms. Coleman's counsel have been forced to devote to the issue.

---

Ms. Coleman based on her ongoing review, the City went on to produce an additional 55,931 pages of documents between July and December 2023. *See id*; *see also* 12/14/23 Tr. at 88-89.

6

For the foregoing reasons, the Court should order the City to pay the disputed portion of her interim request for reasonable attorneys' fees and expenses—**$74,890**—in addition to the amount the City has already agreed to pay ($215,686.76).

        Respectfully submitted,

        **HOPE COLEMAN**

        by her attorneys,

        */s/ William W. Fick*
        Daniel N. Marx (BBO# 674523)
        William W. Fick (BBO# 650562)
        Amy Barsky (BBO# 601111)
        FICK & MARX LLP
        24 Federal Street, 4th Floor
        Boston, MA 02110
        (857) 321-8360
        WFICK@FICKMARX.COM
        ABARSKY@FICKMARX.COM

        Oren Sellstrom (BBO# 569045)
        Sophia L. Hall (BBO# 684541)
        Lawyers for Civil Rights
        61 Batterymarch Street, 5th Floor
        Boston, MA 02110
        (617) 984-0274
        OSELLSTROM@LAWYERSFORCIVILRIGHTS.ORG
        SHALL@LAWYERSFORCIVILRIGHTS.ORG

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that counsel for Ms. Coleman and counsel for the City have conferred in a good faith effort to resolve or narrow the issue presented in this motion.

        */s/ William W. Fick*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system, and accompanying attachments/exhibits, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 25, 2024.

/s/ *William W. Fick*